**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **ERVIN CABLE CONSTRUCTION, LLC** | § | |
| | § | **ADMIRALTY RULE 9(H)** |
| **V** | § | |
| | § | **CIVIL ACTION NO. _____** |
| **LIBERTY MUTUAL INSURANCE** | § | |
| **COMPANY** | § | |

**INDEX OF MATERIALS ATTACHED TO NOTICE OF REMOVAL**

| <u>No.</u> | <u>Date Filed/Entered</u> | <u>Document Description</u> |
|---|---|---|
| A. | 11-05-19 | Correspondence regarding compensation benefits |
| B. | 10-02-19 | Plaintiff's Original Petition and Request for Disclosure |

      -   Exhibits
      -   Citation

Liberty Mutual Insurance Company's Original Answer

List of Counsel of Record

CAUSE NO.   201972194

RECEIPT NO.                    75.00      CTM
**********                TR # 73688786

PLAINTIFF: ERVIN CABLE CONSTRUCTION LLC            In The  151st
        vs.                                       Judicial District Court
DEFENDANT: LIBERTY MUTUAL INSURANCE COMPANY       of Harris County, Texas
                                                  151ST DISTRICT COURT
                                                  Houston, TX

CITATION (CERTIFIED)

THE STATE OF TEXAS
County of Harris

TO: LIBERTY MUTUAL INSURANCE COMPANY (AN INSURANCE COMPANY) MAY BE
    SERVED THROUGH ITS REGISTERED AGENT CORPORATION SERVICE COMPANY

    211  EAST 7TH STREET SUITE 620    AUSTIN  TX  78701

    Attached is a copy of PLAINTIFF'S ORIGINAL PETITION AND REQUEST FOR DISCLOSURE

This instrument was filed on the 2nd day of October, 2019, in the above cited cause number
and court. The instrument attached describes the claim against you.

    YOU HAVE BEEN SUED, You may employ an attorney. If you or your attorney do not file a
written answer with the District Clerk who issued this citation by 10:00 a.m on the Monday
next following the expiration of 20 days after you were served this citation and petition,
a default judgment may be taken against you.

TO OFFICER SERVING:
    This citation was issued on 23rd day of October, 2019, under my hand and
seal of said Court.



                                                  MARILYN BURGESS, District Clerk
Issued at request of:                             Harris County, Texas
MORRIS, MICHAEL PATRICK                           201 Caroline, Houston, Texas 77002
1221 MCKINNEY, SUITE 4300                          (P.O. Box 4651, Houston, Texas 77210)
HOUSTON, TX  77010
Tel: (713) 222-9542
Bar No.:  14495800                                Generated By: HILL, MARCELLA  DBG//11345583

CLERK'S RETURN BY MAILING

Came to hand the _____ day of _____, _____, and executed by
mailing to Defendant certified mail, return receipt requested, restricted delivery, a true
copy   of   this   citation   together   with   an   attached   copy   of
 PLAINTIFF'S ORIGINAL PETITION AND REQUEST FOR DISCLOSURE
to the following addressee at address:

_____          ADDRESS

                                          Service was executed in accordance with Rule 106
(a) ADDRESSEE                                (2) TRCP, upon the Defendant as evidenced by the
                                             return receipt incorporated herein and attached
_____              hereto at

                                          on _____ day of _____, _____
                                          by U.S. Postal delivery to _____
                                          _____

                                          This citation was not executed for the following
                                          reason: _____
                                          _____

                                          MARILYN BURGESS, District Clerk
                                          Harris County, TEXAS

                                          By _____, Deputy

N.INT.CITM.P                    *73688786*

**EXHIBIT B**

10/2/2019 1:50 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 37320263
By: Charlie Tezeno
Filed: 10/2/2019 1:50 PM

## 2019-72194 / Court: 151

CAUSE NO. _____

| | | |
|---|---|---|
| ERVIN CABLE CONSTRUCTION, LLC | § | IN THE DISTRICT COURT OF |
| *Plaintiff,* | § | |
| | § | |
| vs. | § | HARRIS COUNTY, TEXAS |
| | § | |
| LIBERTY MUTUAL | § | |
| INSURANCE COMPANY | § | |
| *Defendant.* | § | _____JUDICIAL DISTRICT |

### PLAINTIFF'S ORIGINAL PETITION AND REQUEST FOR DISCLOSURE

TO THE HONORABLE JUDGE AND JURY OF SAID COURT:

COMES NOW, Plaintiff Ervin Cable Construction, LLC ("Ervin"), hereinafter sometimes referred to as Plaintiff, and files this Original Petition and Request for Disclosure against Defendant Liberty Mutual Insurance Company, and for cause of action would show the Court as follows:

### I.

### DISCOVERY PLAN

1. Pursuant to Texas Rule of Civil Procedure 190.1, Plaintiff requests that this case be designated as a Level 3 case in accordance with the discovery control plan tailored to the circumstances of this specific suit.

2. Pursuant to Texas Rule of Civil Procedure 194, Plaintiff requests that Defendant disclose, within fifty (50) days of service of this request, the information set forth in Rule 194.2.

### II.

### PARTIES

3. Plaintiff is a foreign company authorized to do business and doing business in the state of Texas with its principal place of business in Texas located at 4405 Reese Drive, Erving, Dallas County Texas 75063.

4. Defendant Liberty Mutual Insurance Company ("Liberty Mutual") is an insurance company incorporated in the state of Massachusetts, admitted, authorized, and eligible to write liability insurance coverage and issuing liability insurance policies in the state of Texas. Liberty Mutual was and is engaged in the business of insurance in the state of Texas and may be served with process by serving Corporation Service Company, 211 East 7th Street, Ste. 620, Austin, Texas 78701. Issuance of citation and service of process is requested at this time.

### III.

### JURISDICTION AND VENUE

5. This Court has jurisdiction over the subject matter of this lawsuit because the amount in controversy is within the jurisdictional limits of this Court. Additionally, the district court has residual jurisdiction of suits for declaratory relief as the amount in controversy is in excess of the minimum jurisdictional limits of this Court but not exceeding $75,000.00. The Court has both general and specific personal jurisdiction over Defendant. Defendant Liberty Mutual is an authorized and admitted liability insurance carrier authorized and eligible to issue liability insurance policies to Texas insureds doing business in the state of Texas. Defendant's business activities were purposefully directed to the state of Texas and the disputes between Plaintiff and Defendant arise from and are related to those business activities. Further, Defendant Liberty Mutual's contacts with Texas are purposeful, continuous, and systematic in that Defendant Liberty Mutual has issued numerous liability insurance policies to multiple Texas insureds since it was authorized, eligible, and/or admitted to conduct the business of insurance in Texas, including the issuance of a liability policy to Quality Construction & Production, LLC who contractually agreed to make Plaintiff an additional insured on its liability insurance policy

issued by Defendant Liberty Mutual for work performed by Quality Construction & Production, LLC in Houston, Harris County, Texas.

6. Venue is proper in Harris County, Texas pursuant to the provisions of Section 15.002(a)(1) of the Texas Civil Practice & Remedies Code because all or a substantial part of the events giving rise to this dispute occurred in Harris County, Texas; the insurance coverage in dispute was provided pursuant to a contract for work performed in Harris County, Texas; and the underlying bodily injury damage claim was based on work performed by Quality Construction & Production, LLC in Harris County, Texas. Further, Plaintiff seeks coverage from Defendant Liberty Mutual as a result of the bodily injury damage claim of Martin Villarreal arising from an accident that occurred in Harris County, Texas.

7. Any attempt to remove this case to Federal District Court would be improper as Plaintiff Plaintiff's claim does not exceed the sum of $75,000, exclusive of interest permitted by law and costs. Accordingly, 28 U.S.C. §1332 does not apply as a matter of law.

8. Plaintiff's damages are within the jurisdictional limits of this Court. Pursuant to Texas Rule of Civil Procedure 47, Plaintiff affirmatively pleads that it is seeking monetary relief of less than and not more than $75,000, exclusive of pre-judgment and post-judgment interest permitted by law and taxable court costs.

**IV.**

## CHOICE OF LAW

9. Plaintiff and Quality Construction & Production, LLC ("Quality Construction") entered into a subcontract agreement which provided that the interpretation, construction, and enforcement of the subcontract shall be governed by the laws of the jurisdiction where the work is to be performed under the agreement. The work under the agreement was being performed in

3

the state of Texas. Further, the subcontract with Quality Construction supports Plaintiff's demand for recognition of additional insured status on a liability policy issued by Defendant Liberty Mutual.

10. Further, the dispute between Plaintiff and Defendant Liberty Mutual is directly related to a policy of liability insurance issued by Defendant Liberty Mutual, an insurance company admitted, authorized and/or eligible to issue liability policies to Texas named insureds and additional insureds and concerns whether the policy of liability insurance provides coverage to Plaintiff, an additional insured against whom a claim was made for bodily injury occurring in the state of Texas. Article 21.42 of the Texas Insurance Code provides:

> (a) Any contract of insurance payable to any citizen or inhabitant of this State by any insurance company or corporation doing business within this State shall be held to be a contract made and entered into under and by virtue of the laws of this State relating to insurance, and governed thereby, notwithstanding such policy or contract of insurance may provide that the contract was executed and the premiums and policy (in case it becomes a demand) should be payable without this state or at the home office of the company or corporation issuing same.

Accordingly, Texas law governs this dispute between Plaintiff and Defendant.

## V.

## **FACTUAL BACKGROUND**

11. On or about June 12, 2017, Plaintiff entered into an agreement (hereinafter, the "Subcontract") with Quality Construction under which Quality Construction would perform certain subcontract work pursuant to Plaintiff's agreement with MCImetro Access Transmission

Services Corp. (hereinafter, "MCImetro"). A true and correct copy of the Subcontract between Plaintiff and Defendant Quality Construction is attached hereto as Exhibit A.

12. Additionally, Quality Construction agreed to make Plaintiff and MCImetro additional insureds on Quality Construction's liability insurance policy issued by Defendant Liberty Mutual and issued a Certificate of Insurance ("COI") representing that coverage. A true and correct copy of the June 12, 2017 COI issued on behalf of Quality Construction is attached hereto as Exhibit B.

13. On or about September 21, 2017 while performing the Work, Quality Construction struck a gas service line belonging to CenterPoint Energy Resources Corporation (hereinafter "CenterPoint Energy").

14. Martin Villarreal, who was employed by CenterPoint Energy, was dispatched along with his crew to repair the gas line. In the process of making the repair, Martin Villarreal claims he sustained bodily injury on or about September 22, 2017.

15. Martin Villarreal filed suit seeking damages for alleged bodily injuries allegedly caused by Plaintiff and MCImetro. Plaintiff properly made a demand on Defendant Liberty Mutual for coverage including defense of the claims asserted by Martin Villarreal. A true and correct copy of the August 7, 2019 demand to Defendant Liberty Mutual is attached hereto as Exhibit C.

16. Thereafter, Martin Villarreal amended his petition to name Quality Construction & Production, LLC as a Defendant. Once again, Plaintiff made a demand for defense of Plaintiff and MCImetro against the bodily injury damage claims asserted by Martin Villarreal. A true and correct copy of the September 30, 2019 demand to Defendant Liberty Mutual is attached hereto as Exhibit D.

17. Defendant Liberty Mutual has failed and refused to defend Plaintiff and MCImetro with regard to Martin Villarreal's bodily injury claims and lawsuit.

18. Defendant Liberty Mutual continues to fail to defend Plaintiff and MCImetro or otherwise recognize Plaintiff's and MCImetro's additional insured status on Defendant Liberty Mutual's policy issued to Quality Construction. As a result of Defendant Liberty Mutual's breach of its duty to defend, Plaintiff has been forced to incur attorneys' fees to defend itself and MCImetro against the bodily injury claims asserted by Martin Villarreal in Cause No. 2019-48050; *Martin Villarreal vs. MCImetro Access Transmission Services Corp., et al* pending in the 151st Judicial District Court of Harris County, Texas (hereafter "Underlying Lawsuit").

**VI.**

## BREACH OF CONTRACT AGAINST DEFENDANT LIBERTY MUTUAL

19. Plaintiff realleges and reincorporates by reference the allegations set forth in proceeding paragraphs as though fully set forth herein.

20. Plaintiff made a timely and appropriate demand upon Defendant Liberty Mutual for recognition of Plaintiff's and MCImetro's additional insured status; for coverage of the Martin Villarreal bodily injury lawsuit; and defense and indemnity against the bodily injury claims of Martin Villarreal.

21. Defendant Liberty Mutual wrongfully disclaimed and denied its obligation for such coverage, defense, or indemnification against bodily injury claims asserted by Martin Villarreal.

22. Indeed, Defendant Liberty Mutual did not respond within a reasonable time to Plaintiff's demand for coverage causing Plaintiff to incur attorneys' fees and expenses and is deemed to have denied coverage to Plaintiff and MCImetro under the Texas Insurance Code.

23. Specifically, Plaintiff made a demand for coverage for MCImetro and Plaintiff and protection against the Martin Villarreal claim and Underlying Lawsuit on Defendant Liberty Mutual's policy no. TRC-407521. This policy unambiguously required Defendant Liberty Mutual to defend Plaintiff and MCImetro as additional insureds for bodily injury claims asserted by Martin Villarreal in the Underlying Lawsuit. Alternatively, the policy is ambiguous and must be construed in favor of coverage for Plaintiff and MCImetro.

24. Defendant Liberty Mutual wrongfully denied coverage on its policy no. TRC-407521 leaving its additional insureds Plaintiff and MCImetro to fend for themselves against the bodily injury claims asserted by Martin Villarreal in the Underlying Lawsuit.

25. Plaintiff has incurred costs and attorneys' fees to defend the bodily injury damage claims asserted by Martin Villarreal in the Underlying Lawsuit.

26. Plaintiff and MCImetro are additional insureds under policy no. TRC-407521 issued by Defendant Liberty Mutual. Under that policy, Defendant Liberty Mutual had a duty to defend Plaintiff and MCImetro against the claims asserted by Martin Villarreal in the Underlying Lawsuit.

27. Plaintiff and MCImetro have made proper notification to and demand for coverage and defense upon Defendant Liberty Mutual.

28. Plaintiff has complied with all necessary conditions and other terms of the policy or is otherwise excused from the performance of those conditions and terms on the basis of waiver and/or estoppel.

29. Defendant Liberty Mutual's policy provides coverage for Plaintiff and MCImetro against all bodily injury damage claims asserted by Martin Villarreal in the Underlying Lawsuit and no exclusions apply.

7

30. Defendant Liberty Mutual breached its policy by wrongfully denying coverage to Plaintiff and MCImetro. Indeed, knowing full well that Plaintiff had been left on the door step, hat in hand, to fend for itself, Defendant Liberty Mutual failed to respond in good faith.

**VII.**

## DAMAGES

31. As a result of Defendant Liberty Mutual's breach of its policy of liability insurance, Plaintiff has suffered damages in the amount of attorneys' fees and costs of defense and prosecution of this claim to date not to exceed $75,000. Plaintiff has therefore been damaged in the amount up to but not exceeding $75,000 as a proximate result of Defendant Liberty Mutual's breach of its policy and contract.

32. As a proximate result of Defendant Liberty Mutual's breach of contract, Plaintiff has been required to retain attorneys and incur fees and expenses to prosecute its rights and recover its damages. Plaintiff has previously presented its demands to Defendant including demands for coverage on Defendant Liberty Mutual. Accordingly, Plaintiff seeks to recover all attorneys' fees and expenses to prosecute its breach of contract calls of action against Defendant pursuant to Section 38.001 of the Texas Civil Practice & Remedies Code and/or Chapters 541 and 542 of the Texas Insurance Code.

**VIII.**

## DECLARATORY JUDGMENT AGAINST DEFENDANT LIBERTY MUTUAL

33. Plaintiff incorporates by reference each and every allegation set forth in the proceeding paragraphs as though fully alleged herein.

34. Pursuant to Chapter 37 of the Texas Civil Practice & Remedies Code, Plaintiff requests the Court to declare rights, status and other legal relations as between Plaintiff and Defendant

Liberty Mutual under the Subcontract between Plaintiff and Quality Construction as well as the liability insurance policy issued by Defendant Liberty Mutual with respect to the additional insured status of Plaintiff and MCImetro, and coverage for defense against the Martin Villarreal bodily injury damage claims asserted in the Underlying Lawsuit.

35. Specifically, Plaintiff requests a declaration that:

                    (a) Plaintiff and MCImetro are additional insureds under the liability insurance policy no. TRC-407521 issued by Defendant Liberty Mutual;

                    (b) Defendant Liberty Mutual owes a duty to defend Plaintiff and MCImetro against the bodily injury claims asserted by Martin Villarreal in the Underlying Lawsuit.

36. Plaintiff further requests a declaration that it is entitled to court costs, together with reasonable and necessary attorneys' fees as are equitable and just, pursuant to Section 37.009 of the Texas Civil Practice & Remedies Code and for such other declaratory judgment or decree as may be necessary and proper.

## IX.

## SELF-AUTHENTICATION OF DOCUMENTS

37. Pursuant to Texas Rule of Civil Procedure 193.7, Plaintiff hereby gives notice of its intent to utilize documents produced by Defendants at pre-trial proceedings and at trial as self-authenticated documents.

## X.

## DEMAND FOR JURY

38. Pursuant to Texas Rule of Civil Procedure 216(a), Plaintiff respectfully requests a trial by jury. A jury fee is being paid by Plaintiff simultaneously with this request for jury trial.

## XI.

## CONCLUSION AND PRAYER

9

39. Plaintiff Ervin Cable Construction, LLC respectfully requests that Defendant Liberty Mutual Insurance Company, be cited to appear and answer, and that upon final jury trial, Plaintiff have judgment against Defendant for all relief requested. Further, Plaintiff seeks an award of reasonable attorneys' fees as well as pre-judgment and post-judgment interest at the maximum rate allowed by law together with taxable court costs.

40. Finally, Plaintiff requests such other and further relief, whether in law or at equity, to which it shows itself justly entitled.

Respectfully submitted,

**Taylor, Book, Allen & Morris, L.L.P.**

Mike Morris
State Bar No. 14495800
1221 McKinney, Suite 4300
Houston, Texas 77010
(713) 222-9542
(713) 655-7727 - Fax
mmorris@taylorbook.com

10

DocuSign Envelope ID: 3C7B513F-F0C4-4D02A008-END44C522B1

2019-72194 / Court: 151

## SUBCONTRACT AGREEMENT

This Subcontract Agreement ("Agreement") is effective as of the date an authorized representative from Ervin Cable Construction, LLC has executed said Agreement. This Agreement is by and between ERVIN CABLE CONSTRUCTION, LLC, a Delaware limited liability company, 450 Pryor Boulevard, P. O. Box 10, Sturgis, Kentucky 42459 ("Contractor"),

and _____Quality Construction & Production, L.L.C._____ ("Subcontractor"), for the purpose of performing certain subcontract work under Contractor's primary contract (the "Primary Contract") with the project owner, including any project owner identified in the Primary Contract and any Exhibit B executed by the parties, ("Project Owner"). The subcontractor work includes, but is not limited to, the services identified in Exhibit B, and/or the following services:

_____Underground_____ (the "Work").

In consideration of the foregoing and the mutual promises and obligations set forth herein, Contractor and Subcontractor agree and bind themselves as follows:

**Section 1.     Contract Documents:**

(a)     The Contract Documents include this Agreement and any amendments or modifications thereto; any exhibits, annexes or attachments to this Agreement and the Primary Contract, including all the conditions, covenants, drawings, specifications and other documents forming or by reference made a part of the Primary Contract; any subsequent addenda, amendments or modifications to the Primary Contract issued prior to the execution of this Agreement; and all modifications issued subsequent thereto(collectively, the "Contract Documents").

(b)     The Contract Documents, other than this Agreement, are a part of this Agreement the same as if attached to or repeated in this Agreement. Subcontractor is bound to Contractor by all of the terms and conditions in the Contract Documents that apply to the Work in the same manner that Contractor is bound to Owner under the Contract Documents. Contractor shall have the benefit of all rights, remedies and redress against Subcontractor that Owner has against Contractor under the Primary Contract. In the event of any conflict between this Agreement and the other Contract Documents, the provisions in this Agreement shall in all events govern and prevail.

(c)     All of the Contract Documents are available for inspection by Subcontractor at Contractor's address identified herein. Copies of the Contract Documents applicable to the Work shall be made available to Subcontractor upon request. Subcontractor shall have no defense to a breach of a provision of any Contract Document on the ground that Subcontractor has not read such Contract Document. Subcontractor acknowledges that it has had a sufficient and reasonable opportunity to review and consider the Contract Documents.

**Section 2.     Performance Obligations of Subcontractor.**  Subcontractor shall:

(a)     perform the Work within the time established by Contractor and in strict conformity with the Contract Documents;

(b)     supervise and direct the performance of the Work by its employees, contractors, and vendors in strict conformity with means and methodologies appropriate for the performance of the Work

For Use in TX/Revision Date: April 19, 2017



DocuSign Envelope ID: 3C7B513F-F0C4-4D09-A2C8-ED0444C532B7

at its location at the time of year prevailing and otherwise to avoid conflict, delay or interference with the work of others;

(c)      have a sufficient number of qualified personnel with supervision of the Work at all times during its operations to effectively prosecute the Work, shall keep supervisory personnel on the project until completion of the Work, and shall remove unsatisfactory personnel at the request of Contractor;

(d)      make all submissions required by the Contract Documents with reasonable promptness and in such sequence as to cause no delay to the Work or to the work of others;

(e)      unless provided for by Contractor, furnish the vehicles, materials, equipment and tools necessary to perform the Work in accordance with the specifications set forth in the Contract Documents, and pay promptly for all materials, equipment and labor furnished or to be furnished to the location of the Work and furnish evidence thereof to Contractor. If materials are provided by Contractor or Owner, Subcontractor shall only use such materials in connection with the Work. Subcontractor is responsible for the materials until the Work is completed in accordance with the Contract Documents and is accepted by Contractor and Owner. Any unused materials provided by Contractor shall be returned to Contractor (unless Contractor specifies another location) at the conclusion of the Work in the same condition as when provided. Subcontractor will be responsible for any damaged or missing materials;

(f)      turn all Work over to Contractor free and clear of all liens, claims (including any claim related to a construction defect), or encumbrances. Subcontractor agrees it shall promptly notify Contractor of and thereafter defend, indemnify, and save harmless Contractor, Contractor's sureties, and Owner from all liens, claims and encumbrances, claim of lien or suit filed or maintained by any of Subcontractor's sub-subcontractors or suppliers. Without limiting the foregoing, Subcontractor, upon notice by Contractor, shall cause any such lien to be discharged or satisfied. If Subcontractor fails to have any such lien or encumbrance discharged or satisfied, Contractor shall have the right but not the obligation to satisfy any such lien or encumbrance whether the lien or encumbrance is valid or not and Contractor shall be indemnified from all losses and costs, including attorneys' fees, incurred as a result of such lien or encumbrance;

(g)      take reasonable and prudent precautions to protect the Work and the work of others from damage or adulteration, and shall repair or pay the cost of repairing any damage caused by Subcontractor or any of its agents or subcontractors;

(h)      coordinate the performance of the Work with Contractor and others working in the same vicinity;

(i)      comply with all applicable federal, state, county and local laws, ordinances, rules, regulations, codes and orders of governmental and public authorities bearing on performance of the Work (collectively, "laws"), as each may be amended from time to time. Subcontractor shall also give notices and procure required permits or certificates necessary to perform its obligations under this Agreement, including but not limited to zoning requirements, zoning variances, special zoning permits, demolition permits, building permits, and street and curb permits. Subcontractor shall indemnify, defend and hold harmless Contractor for any losses, fines or other penalties, including reasonable attorney fees that may be incurred by or imposed on Contractor due to Subcontractor's failure to comply with the provisions of any applicable law;

(j)      comply with all applicable federal and state immigration laws, including without limitation, the Immigration Reform and Control Act ("IRCA"). Specifically, Subcontractor agrees that it is responsible for completing IRCA verification of the identity and employment eligibility of all

DocuSign Envelope ID: 3C7B513F-F0C4-4D09-A2C8-ED0444C532B7

employees and employees of its subcontractors performing services for Contractor, that Subcontractor assumes any and all liability arising out of its failure to fully comply with IRCA and/or other employment-related immigration laws and that Subcontractor will fully indemnify and hold Contractor harmless for any and all IRCA or other immigration-related civil money or criminal penalties assessed against Contractor for services rendered by Subcontractor's employees or its subcontractor's employees, including but not limited to penalties for deficiencies in the Forms I-9, or the knowing or constructive knowing employment of an unauthorized alien.  It is the responsibility of Subcontractor, consistent with the Primary Contract, to establish the means to communicate effectively with Contractor and Owner.  In the absence of English-speaking workers, Subcontractor must provide cards with the contact name and numbers of the supervisor responsible for that crew or provide some other effective communication tool.  However, effective communications is the direct responsibility of Subcontractor;

(k)     perform all tests and inspections called for in the Contract Documents;

(l)     take reasonable safety precautions with respect to the performance of the Work and comply with all safety measures initiated by Contractor and Owner, and with all applicable laws, ordinances, rules, regulations and orders of public authorities for the safety of persons and property, and report to Contractor within three (3) days any injuries to employees or agents of Subcontractor that occur at the project site.  Non-compliance with any safety procedure may result in a fine up to but not exceeding $500.00 for each occurrence, at Contractor's discretion, depending upon the frequency and severity of the violation.  After the occurrence of three (3) of the same safety violations (i.e., hard hats, traffic control, shoring, etc.), Contractor may terminate this Agreement without any notice to Subcontractor.  Further, Subcontractor certifies that, to the extent required, it has provided the necessary OSHA (as defined below) job safety and health training to all employees working on the project site and will require the same of sub-subcontractors or materialmen working on the project site;

(m)     timely pay all withholding, social security, disability, unemployment, excise, sales, use, or other taxes or insurance as required under federal or state law or regulation, except such sales and use taxes applicable to material and other items furnished by Contractor or Owner.  In addition, Subcontractor shall timely pay all fees and any labor supply licenses if required in connection with the Work and/or as required by law.  Subcontractor shall comply with all federal, state, and local laws, codes, regulations, safety rules, standards, ordinances and/or statutes (including those addressing minimum wage and overtime wages), hire and/or use only employees who have and tender to Subcontractor written documentation proving eligibility to work in the United States, and provide all employees with a remittance advice (paystub) with each paycheck reflecting the calculation of wages paid.  Subcontractor shall indemnify, defend, and hold Contractor and Owner harmless from any fees, losses, expenses, including attorneys' fees, fines, damages, claims, or penalties arising out of or caused by Subcontractor's noncompliance with this Section.  Subcontractor shall maintain appropriate records on all of its employees;

(n)     at all times keep the work site and surrounding area free from accumulation of trash, debris, waste materials or rubbish caused by performance of the Work;

(o)     hire licensed vendors to complete background checks and drug screens for all employees, agents and contractors who will perform the Work in accordance with Section 12(i);

(p)     provide to Contractor a completed Form W-9 as required by the United States Internal Revenue Service upon Subcontractor's execution of this Agreement; and,

(q)     exercise its best efforts to prevent injury to persons and damage to property in the course of the performance of its obligations under this Agreement. Subcontractor shall, at its sole

3

DocuSign Envelope ID: 3C7B513F-F0C4-4D09-A2C8-ED0444C532B7

expense, replace, restore, or pay replacement costs of any property damaged by its operations. Such repair, replacement, or restoration shall be deemed complete when judged satisfactory by the Contractor, Project Owner and/or any governing agency or the property owner.

**Section 3.**   **Warranty.** Subcontractor warrants to Contractor and Owner the following:

(a)   The Work will be new, of good quality, free from defects and in strict conformity with the Contract Documents. Subcontractor further warrants that all materials and equipment furnished and incorporated into the Work shall be new unless otherwise specified. Work not conforming to these standards, including substitutions not properly approved or authorized in writing, shall be considered defective. The failure of Contractor or Owner to inspect, to test or to discover defective workmanship, materials or equipment shall not relieve Subcontractor of its obligation to perform the Work in strict accordance with the Contract Documents and shall not prejudice the rights of Contractor or Owner to reject or require correction of the same.

(b)   If within one (1) year after completion of the Work, or as provided by applicable law as to latent defects, any of the Work is found to be defective or not in accordance with the Contract Documents, Subcontractor shall correct it promptly upon notice from Contractor. This obligation shall survive final payment by Contractor and termination of this Agreement.

**Section 4.**   **Time is of the Essence:**

(a)   Subcontractor acknowledges and agrees that its obligations under this Agreement and the timely completion of the Work are of the essence. Contractor may, from time to time, establish and change scheduling requirements for the completion of a part or all of the Work. Subcontractor shall comply with Contractor's requirements as to timely performance and, if necessary, employ additional crews and work overtime without additional compensation. Subcontractor shall procure and store the materials needed to perform the Work so as not to delay Contractor's schedule of completion of the Work. In the event Subcontractor's performance delays Contractor's performance of the Work, Subcontractor shall have breached this Agreement and shall be responsible for any and all damages or loss suffered by Contractor and resulting therefrom, and shall indemnify, hold harmless and defend Contractor from any and all loss (including, but not limited to, Contractor's attorney's fees), costs and any and all damages (liquidated and/or actual), imposed, assessed or claimed by Owner and attributable in any way to Subcontractor's delay.

(b)   If Subcontractor is delayed in the performance of the Work by conditions that could not be foreseen by Subcontractor and that are beyond the reasonable control of Subcontractor, then Contractor will grant Subcontractor a reasonable extension of time, provided that Subcontractor applies in writing for such an extension of time within ten (10) days after the commencement of the delay. If Subcontractor fails to apply in writing for such an extension within ten (10) days after the commencement of the delay, Subcontractor waives the right to an extension of the contract time. Contractor and Subcontractor agree, and Subcontractor acknowledges, that the contract amount is based upon the fact that Contractor shall not be liable to Subcontractor for any damages, costs or expenses incurred by Subcontractor due to delays, acceleration, non-performance, interference with performance, suspensions or changes in the performance or sequence of performance of the Work. Subcontractor will not be entitled to any damages or other monetary compensation for delay even if such delay is caused, or partly caused, by Contractor or Owner.

**Section 5.**   **Change Orders.** Without invalidating this Agreement or any provision hereof, Owner or Contractor may from time to time, by written directive to Subcontractor, require Subcontractor to make changes in the Work (both additions and deletions), and the changed work shall be part of the

4

DocuSign Envelope ID: 3C7B513F-F0C4-4D09-A2C8-FD0444C532B7

Work. A "Change Order" to this Agreement is a written modification of the terms and conditions of the Agreement signed by both parties. Subcontractor shall not proceed with changed work unless it first receives a Change Order.

Section 6.    Independent Contractor:

(a)    Subcontractor shall at all times be an independent contractor and not an employee, partner or agent of Contractor, or engaged in a joint venture with Contractor. As such, the parties to this Agreement understand that Contractor has engaged Subcontractor solely to deliver a result and that Contractor has no power, control or authority over the method, manner or means by which Subcontractor performs the Work. The Contract Documents shall not be construed as creating any contractual relationship between Subcontractor and Owner (except to the extent Owner is an express third party beneficiary of some of the provisions of this Agreement) or between Subcontractor and any consulting engineer or other professional engaged by Owner or Contractor.

(b)    Subcontractor shall be responsible for supervising and directing the work of Subcontractor's employees and for others acting at Subcontractor's direction and/or directly or indirectly on Subcontractor's behalf and for ensuring that all of Subcontractor's employees and such other persons comply with the terms and conditions of this Agreement. Subcontractor shall be responsible for Subcontractor's own labor relations with any labor organization and Subcontractor shall not purport to bind Contractor or any customer of Contractor or any affiliate of either to any labor union. Subcontractor shall maintain labor peace and harmony for the duration of the Work.

(c)    Subcontractor shall be responsible for the performance and actions of Subcontractor's employees and others acting at Subcontractor's direction or on Subcontractor's behalf. Subcontractor will be deemed to have performed any act or omission of such persons under this Agreement and Contractor shall be entitled to all remedies available under this Agreement or at law or equity. Nothing in this Agreement shall be construed to prohibit Contractor or its affiliates from also seeking remedial action against Subcontractor for its act or omission.

(d)    Persons furnished by Subcontractor under this Agreement shall not be entitled to any benefits that Contractor provides to its own employees and Subcontractor shall indemnify, defend and hold harmless Contractor against any claims alleging that any of Subcontractor's employees or subcontractors are employees of Contractor, or that any of same are entitled to (i) Contractor's benefits, or (ii) additional compensation or benefits from Contractor.

(e)    Subcontractor acknowledges and agrees it is not dependent upon Contractor for a major portion of its business and Subcontractor is free to contract for the same or similar services to be performed for other companies, subject to the provisions of Section 17, Non-Competition, while it is operating under this Agreement; however, neither subcontractor, it's subcontractors, employees, agents or affiliates, shall install any other plant or equipment, regardless of ownership, in the same trenches, boring pulls, poles, or facilities of Contractor or Project Owner at the time of performance of the Work covered by this agreement, unless authorized to do so in writing by Contractor or Owner.

Section 7.    INDEMNITY/DUTY TO DEFEND:

(a)    TO THE FULLEST EXTENT PERMITTED BY LAW, SUBCONTRACTOR SHALL DEFEND, INDEMNIFY AND HOLD HARMLESS CONTRACTOR, OWNER, OWNER'S LENDER(S), AND THEIR RESPECTIVE PARENTS (DIRECT OR INDIRECT), SUBSIDIARIES, AFFILIATES, OFFICERS, DIRECTORS, AGENTS, SERVANTS AND/OR EMPLOYEES (EACH AN "INDEMNIFIED PARTY" AND COLLECTIVELY, THE "INDEMNIFIED PARTIES") FROM AND

DocuSign Envelope ID: 3C7B513F-F0C4-4D09-A2C8-ED0444C532B7

AGAINST ALL LIABILITY, DAMAGE, INJURY OR DEATH OF ANY KIND OR NATURE WHATSOEVER TO ALL PERSONS, WHETHER EMPLOYEES OF SUBCONTRACTOR OR OTHERWISE, AND TO ALL PROPERTY INCLUDING ALL SETTLEMENT SUMS, LOSSES AND EXPENSES, INCLUDING ATTORNEYS' FEES, SUFFERED BY ANY INDEMNIFIED PARTY, WHICH ARE CAUSED BY, RESULT FROM OR ARISE OUT OF SUBCONTRACTOR'S (I) PERFORMANCE OR NONPERFORMANCE OF THIS AGREEMENT AND THE WORK, (II) BREACH OF THIS AGREEMENT OR (III) VIOLATION OF ANY APPLICABLE LAW; WHETHER OR NOT SUCH CLAIMS ARE BASED UPON AN INDEMNIFIED PARTY'S ALLEGED ACTIVE OR PASSIVE SOLE NEGLIGENCE OR PARTICIPATION OR UPON ANY ALLEGED BREACH OF ANY STATUTORY DUTY OR OBLIGATION ON THE PART OF AN INDEMNIFIED PARTY, SUBCONTRACTOR AGREES TO THE AFORESAID INDEMNIFICATION.  IN ADDITION, SUBCONTRACTOR EXPRESSLY AGREES TO DEFEND, INDEMNIFY AND HOLD HARMLESS THE INDEMNIFIED PARTIES FROM AND AGAINST ANY AND ALL LIABILITIES AND CLAIMS WHICH MAY BE ASSERTED AGAINST ANY INDEMNIFIED PARTY BY AN EMPLOYEE OR FORMER EMPLOYEE OF SUBCONTRACTOR FOR WHICH SUBCONTRACTOR'S LIABILITY TO SUCH EMPLOYEE OR FORMER EMPLOYEE WOULD OTHERWISE BE LIMITED TO PAYMENTS UNDER STATE WORKERS' COMPENSATION OR SIMILAR LAWS.  IN FURTHERANCE TO, BUT NOT IN LIMITATION OF, THE INDEMNITY PROVISIONS IN THIS AGREEMENT, SUBCONTRACTOR HEREBY EXPRESSLY AND SPECIFICALLY AGREES THAT ITS OBLIGATIONS TO DEFEND, INDEMNIFY AND HOLD HARMLESS THE INDEMNIFIED PARTIES SHALL NOT IN ANY WAY BE AFFECTED OR DIMINISHED BY ANY STATUTORY OR CONSTITUTIONAL IMMUNITY IT ENJOYS FROM SUITS BY ITS OWN EMPLOYEES OR FROM LIMITATIONS OF LIABILITY UNDER STATE WORKERS' COMPENSATION LAWS.

(b)    SUBCONTRACTOR SHALL, AT ITS OWN EXPENSE, DEFEND THE INDEMNIFIED PARTIES AGAINST ANY CLAIM, OR ANY LEGAL PROCEEDING WHICH MAY INVOKE SUBCONTRACTOR'S OBLIGATIONS UNDER THIS AGREEMENT. SUBCONTRACTOR'S DUTY TO DEFEND THE INDEMNIFIED PARTIES SHALL APPLY WHETHER SUCH CLAIM OR LEGAL PROCEEDING IS BROUGHT ONLY AGAINST ANY OR ALL OF THE INDEMNIFIED PARTIES, EITHER SEPARATELY OR JOINTLY WITH SUBCONTRACTOR.  SUBCONTRACTOR SHALL REIMBURSE EACH INDEMNIFIED PARTY FOR ANY LEGAL EXPENSES AND ATTORNEYS' FEES INCURRED IN ENFORCING SUBCONTRACTOR'S OBLIGATIONS AND/OR THE INDEMNITY GRANTED TO THEM UNDER THIS AGREEMENT.

(c)    SUBCONTRACTOR SHALL OBTAIN INSURANCE SUFFICIENT TO COVER ITS INDEMNITY OBLIGATIONS IN THIS PARAGRAPH, BUT THE COVERAGE OF ANY INSURANCE POLICY REQUIRED HEREIN OR ACTUALLY CARRIED BY SUBCONTRACTOR SHALL NOT LIMIT THE EXTENT OF SUBCONTRACTOR'S LIABILITY UNDER THE FOREGOING INDEMNITY. SUBCONTRACTOR'S OBLIGATIONS UNDER THIS SUBCONTRACT, AND SPECIFICALLY THIS PARAGRAPH, SHALL SURVIVE THE TERMINATION OF THE SUBCONTRACTOR OR THE SUBCONTRACT FOR ANY REASON.

**Section 8.    Contract Amount.**  Contractor shall pay Subcontractor the prices and costs for work, materials, and supplies only as set forth in Exhibit A, or as specified in a Work Order, as consideration for Subcontractor's compliance with the covenants, conditions and terms of this Agreement, including, but not limited to, Subcontractor's full performance of the Work in accordance with the Contract Documents.  Subcontractor shall not be entitled to any increase in the contract amount unless a Change Order has been accepted by the parties.  Subcontractor shall not be entitled to any increase in the contract amount due to price escalation of materials and/or labor costs.

DocuSign Envelope ID: 3C7B513F-F0C4-4D09-A2C8-ED0444C532B7

**Section 9.** **Conditions Precedent to Payment.** As a condition precedent to Subcontractor's right to receive payment:

(a) Subcontractor shall have completed the Work in accordance with this Agreement, as determined in the sole discretion of Contractor and Project Owner, for which Subcontractor is requesting payment.

(b) Subcontractor shall furnish Contractor with signed waivers of lien from all of its subcontractors and laborers complying with the requirements of all applicable mechanic lien laws and such other evidence as may be reasonably required by Contractor or Owner to substantiate payment.

(c) Subcontractor shall keep full and detailed records to confirm compliance with the obligations of this Agreement in form satisfactory to Contractor. Contractor shall be afforded access to, and shall be permitted to audit and copy, Subcontractor's records, books, correspondence, instructions, drawings, receipts, employment records, subcontracts, purchase orders, vouchers, memoranda and other data relating to this Agreement. Subcontractor shall preserve such documents and records referred to herein for a period of three (3) years after final payment, or for such longer period as may be required by law. Subcontractor agrees that the auditor of the state in which the Work is performed or any authorized representative of the state, and, where applicable, the Comptroller General of the United States or any other representatives of the United States Government, shall have access to and the right to examine, audit, excerpt and transcribe any directly pertinent books, documents, papers and records of Subcontractor relating to orders, invoices, payments or Subcontractor's performance pursuant to this Agreement. Subcontractor shall not impose any charges for access to its books and records regarding its performance under this Agreement, and shall fully cooperate with authorized representatives in the examination or audit of books and records.

(d) Contractor shall have received payment from Owner for the applicable Work. In the event the Owner's nonpayment is due to Contractor's failure to meet its obligations set forth in the Primary Contract, and such failure is not due to Subcontractor's failure to meet its obligations pursuant to the Contract Documents, the Contractor accepts the risk of nonpayment by the Owner, and Subcontractor will be paid within a reasonable amount of time. In the event the Owner's nonpayment is due to any other reason, Subcontractor accepts the risk of nonpayment, and Subcontractor waives all right to commence litigation or arbitration against Contractor for any such non-payment. Subcontractor's sole and exclusive remedy for such non-payment shall be assignment to the Subcontractor of Contractor's pass-through claim against the Owner. Nothing contained in this provision affects the rights of the Contractor to assert any deductions, offsets or back charges under other provisions of this Subcontract.

(e) Subcontractor has verified that all workers assigned to Contractor's work site have a valid driver's license, meeting all driving requirements of the issuing state and Department of Transportation ("DOT"), when applicable.

(f) All paperwork required by Contractor from Subcontractor has been completed, submitted to, and approved by Contractor. "Required paperwork" shall include but not be limited to (a) a Form W-9, (b) this Agreement, and (c) a proper certificate of insurance.

(g) Subcontractor shall have procured and maintained, and ensured its subcontractors shall have procured and maintained, the proper policies of occurrence base Insurance, with coverages and limits of liability as required herein, for the full duration of the Work.

*(h) Notwithstanding anything to the contrary contained herein, Contractor may, in its sole and absolute discretion, elect to hold all or any portion of any payments due Subcontractor for*

DocuSign Envelope ID: 3C7B513F-F0C4-4D09-A2C8-ED0444C532B7

*as long as Contractor feels is reasonable necessary if Subcontractor's work is substandard or defective or if Contractor reasonably believes any work performed by Subcontractor may be subject to warranty, damage or other claims by Owner or anyone having a claim against Subcontractor's performance or non-performance of the Work or its obligations under this Agreement.*

**Section 10.     Payment Procedure.** Subcontractor agrees that the following payment procedure shall govern all payments made hereunder:

(a)     *Invoicing.* No later than Monday of each week, Subcontractor is to submit an invoice or daily billing sheet for the portion of the Work completed through the preceding Saturday. The invoice or daily billing sheet shall be prepared in duplicate and submitted to Contractor's supervisor for review and approval. After approval, Contractor shall pay Subcontractor within thirty (30) days for the invoice generated or presented, less the amount set forth in Exhibit B (the "Retainage"). As a material part of the consideration under this Agreement, Subcontractor agrees to satisfy any Deficiencies in Retainage (as hereinafter defined) out of or from any Retainage held or owed to Contractor as a result of Work performed hereunder or being performed by Subcontractor under a separate agreement. This provision will survive the termination of this Agreement for one (1) year. Acceptance of final payment by Subcontractor shall act as a release of all claims of Subcontractor or any person claiming under or through Subcontractor against Owner, Contractor, Contractor's surety, if any, in any way related to the Work. As used herein, "Deficiencies in Retainage" shall mean an insufficient amount of Retainage withheld under this Agreement to satisfy any and all claims that result from the performance or non-performance of the Work, regardless of whether such deficiencies become known to Contractor or Owner after final acceptance of the Work. As set forth more specifically in Section 9(c) above, as a condition precedent to Contractor's payment for the invoice(s), Owner must first accept the Work performed by Subcontractor and pay Contractor for the Work. In the event Subcontractor requests payment earlier than the thirty (30) day period set forth in this paragraph, provided Contractor makes payment within ten (10) days from the approved invoice date, Contractor will be entitled to a two percent (2%) discount on each such invoice.

(b)     *Payments Held in Trust.* Subcontractor shall hold all payments made to it by Contractor in a trust account to be applied first to the payment of its employees, subcontractors, laborers, and suppliers of materials or services used for or in connection with the Work, including, without limitation, any amount payable in taxes on account of the Work or labor supplied and to any applicable employee benefit plan. Subcontractor shall apply all payments from Contractor in the preceding manner before using any part thereof for any other purpose.

(c)     *Joint Checks.* Contractor shall have the right, at its sole discretion, to make any payments to be made hereunder in the form of checks payable jointly to Subcontractor and any unpaid sub-subcontractor, suppliers or materialman. If Subcontractor shall fail to pay when due any payments for labor, supplies, materials or services furnished in connection with the performance of the Work, Contractor may, but shall not be obligated to, after five (5) days written notice to Subcontractor, directly pay the amount of such liabilities and recover the amount thereof from Subcontractor, directly or by the deduction of such sum from any amounts then or thereafter due to Subcontractor hereunder. If the remaining contract amount is insufficient to cover such costs, Subcontractor shall reimburse such costs to Contractor immediately upon written demand therefor.

(d)     *Right to Withhold Payment for Defective Work.* In addition to Retainage, Contractor shall have the right to withhold payment for defective Work not remedied, failure of the Work to conform to the Contract Documents or other failure of Subcontractor to comply with the terms and conditions of the Contract Documents. Contractor shall be entitled to withhold such amount as may be necessary, in Contractor's good faith opinion, to protect Contractor from loss due to such defects, non-performance or failure to comply with the Contract Documents. If such deficiencies are not promptly

DocuSign Envelope ID: 3C7B513F-F0C4-4D09-A2C8-ED0444C532B7

corrected after Contractor provides written notice to Subcontractor, Contractor may correct such deficiencies at Subcontractor's expense and deduct all costs incurred from payment due to Subcontractor. The withholding by Contractor of any amounts otherwise due to Subcontractor shall not enable Subcontractor to stop the Work or terminate this Agreement.

(e)    *Right to Deduct Payment for Contribution to Pollution Liability Insurance Program.* For each calendar year or any part thereof that this Agreement remains in effect, Contractor reserves the right to deduct from amounts due to Subcontractor hereunder a payment for Subcontractor's contribution (the "Insurance Contribution") to a pollution liability insurance program, ("PLIP"), in such amount as Contractor deems necessary to fully reimburse Contractor for Subcontractor's pro-rata share of the cost of the PLIP. Such deduction is generally expected to be made once per calendar year, but the frequency thereof is subject to change without notice to Subcontractor. Each date on which such deduction is made is referred to as a "Deduction Date". To the extent that there are no amounts due and payable to Subcontractor on any Deduction Date, Contractor shall invoice Subcontractor for Subcontractor's Insurance Contribution and Subcontractor shall remit payment for such Insurance Contribution to Contractor within thirty (30) days of the date of such invoice. Contractor reserves the right, if deemed necessary by Contractor in its sole discretion, to deduct Subcontractor's Insurance Contribution from any Retainage held or owed to Contractor as a result of Work performed hereunder or being performed by Subcontractor under a separate agreement.

**Section 11.    Insurance.** Before Contractor makes any payment to Subcontractor under this Agreement and before Subcontractor performs any Work, Subcontractor shall deliver to Contractor certificates of insurance in accordance with the policies, coverages and limits of liability set forth on Exhibit C. Subcontractor waives all rights against Contractor and Owner, their agents, officers, directors and employees for recovery of damages to the extent these damages are covered by commercial general liability, commercial umbrella liability, business auto liability, or workers' compensation and employers' liability insurance maintained per the requirements stated in Exhibit C.

**Section 12.    Subcontractor's Covenants and Representations.** Subcontractor, in addition to its obligations as set forth in the Contract Documents, covenants, represents and warrants to Contractor that:

(a)    Subcontractor shall not permit employment either directly or indirectly of unfit persons or persons not skilled in tasks assigned to them. Subcontractor shall fully comply with any written certification policy promulgated by Contractor, whether such certification policy applies to requirements for operating certain types of equipment, performing certain kinds of tasks or any other matter. Subcontractor shall not allow any worker to perform a job for which he or she is not certified if certification is required by law. Subcontractor shall ensure that its employees, agents and representatives shall not engage in actions that may detrimentally affect Contractor's reputation. Subcontractor personnel are prohibited from carrying weapons or ammunition onto Contractor's or Owner's premises or using or carrying weapons while performing assigned work.

(b)    Subcontractor shall be exclusively responsible for the occupational safety and health of its employees and agents while engaged in the performance of the Work, shall protect against property damage and personal injury at all locations, and shall take all reasonable safety precautions with respect to its performance of this Agreement and represents that it shall take all necessary precautions while performing its work to ensure the safety of its employees, and the employees of other subcontractors or entities on the job site. Subcontractor shall follow all requirements of Contractor's and Owner's safety policies and ensure compliance with the Occupational Safety and Health Act of 1970 ("OSHA") and all regulations issued thereunder; all applicable state occupational safety and health acts and any applicable regulations promulgated thereunder; and any other lawful orders of any public authorities bearing on the safety of persons or property or their protection from damage, injury or loss; as well as any

DocuSign Envelope ID: 3C7B513F-F0C4-4D09-A2C8-CD0444C532D7

safety or health programs published by Contractor or Owner. Contractor reserves the right to give Subcontractor notice of any unsafe employees from the job site and Subcontractor shall remove such employees within the time specified by such notice. Contractor shall have the right to stop the Work and/or correct such practices, equipment or devices at Subcontractor's expense. Subcontractor shall employ competent persons on each job site capable of identifying unsafe hazards and whose duty shall be to ensure that OSHA and the regulations issued under OSHA and all other laws, regulations, customs and practices are followed and that all reasonable steps necessary to avoid or abate any hazards associated with the Work are taken. Such persons shall have the authority to take prompt corrective measure to correct such hazards, to receive notices of unsafe work practices, equipment, devices or employees as provided herein and to carry out the responsibilities of a "competent" or "qualified" person as required by law or regulation.

(c) If hazardous substances of a type of which an employer is required by law to notify its employees are being used by Subcontractor, its sub-subcontractors or anyone directly or indirectly employed by them, Subcontractor shall, prior to harmful exposure of any employees on the site to such substance, give written notice of the chemical composition thereof to Contractor in sufficient details and time to permit compliance with such laws by Contractor and other contractors and subcontractors and other employers on the site.

(d) In the event Subcontractor encounters on the site materials reasonably believed to be asbestos or polychlorinated biphenyl (PCB) which have not been rendered harmless, Subcontractor shall immediately stop its work in the area affected and report the condition to Contractor in writing. Subcontractor's work in the affected area shall resume in the absence of asbestos or PCB, or when it has been rendered harmless by Owner, by written agreement of Contractor and Subcontractor, or in accordance with final determination by Owner.

(e) Without limiting and in addition to the indemnity described in Section 7, Subcontractor agrees to indemnify and hold harmless Contractor for all claims, citations, complaints, damages, fines, penalties, attorney fees and costs arising under or connected with OSHA and the regulations issued thereunder, or any of the other laws, regulations, customs, and practices associated therewith, which amounts may be deducted from monies due Subcontractor. If the remaining contract amount is insufficient to cover such costs, Subcontractor shall reimburse such costs to Contractor immediately upon written demand therefor.

(f) Subcontractor shall maintain any applicable state contractor's license necessary to perform the Work and, upon Contractor's request, provide Contractor with evidence of such license.

(g) Subcontractor affirms that all employees, laborers and contractors rendering services to Contractor have completed IRCA I-9 verification and that Subcontractor is responsible for re-verifying employment eligibility per the Form I-9 where applicable.

(h) All individuals performing Work have valid drivers' licenses, meeting all federal (including DOT where applicable), state, and local laws.

(i) For each of the employees that Subcontractor wishes to assign to perform Work for Contractor, Subcontractor shall certify to Contractor that it has conducted (or caused to be conducted) a background check as described herein (collectively referred to as "background checking"). For purposes of this Section 12(i) and its related subsections below, "employee" shall include Subcontractor's employees and any of Subcontractor's contract personnel; and "assign" shall include training for Work to be provided to Contractor, unless otherwise agreed to by Contractor. Where permitted by law and to the extent required by Owner, Subcontractor shall conduct one or more of the following: (i) a Federal and state check for felony and misdemeanor criminal convictions (or the equivalent thereof under relevant

DocuSign Envelope ID: 3C7B513F-F0C4-4D09-A2C8-ED0444C532B7

law) in all locations where the assigned employee has resided, has been employed, or has attended school in the immediately preceding seven (7) years, (ii) a check of U.S. Government Specially Designated National (OFAC) and export denial lists, (iii) a check of the employee against the National/State Sex Offender Registry, (iv) drug testing consisting of an eleven-panel urine analysis drug screen, (v) verification of the highest college diploma, degree or certificate earned, (vi) verification of employment history, (vii) verification of the name to which the employee's Social Security Number is attributed and (viii) verification of the employee's legal right to work.

      i. Subcontractor shall comply with all applicable laws in conducting the background check specified in this Section 12(i), including but not limited to securing from each employee who performs Work for Contractor such employee's written consent to perform the background checking specified in this Section 12(i) and to disclose the results thereof to Contractor upon Contractor's request.

      ii. Without prior review and consent of Contractor, Subcontractor shall not assign any employee to perform Work for Contractor if such employee (a) has been convicted of a felony within the last seven (7) years or a misdemeanor (or the equivalent thereof under relevant law) within the last three (3) years, which, following a review under applicable law and considering all relevant facts and circumstances, Subcontractor concludes the circumstances of which are directly job-related to the assignment at the Contractor and therefore makes the employee unsuitable for that assignment at the Contractor, or is on the national or any state Sex Offender Registry, or for whom a warrant is outstanding, or for whom a felony or misdemeanor charge is currently pending, or is on a U.S. Government Specially Designated National or export denial list, or (b) has a confirmed positive test result from the drug screening in Section 12(i)(iv) above, or (c) does not have the legal right to work in the jurisdiction in which the employee will be performing Work for Contractor.

      iii. Subcontractor understands and agrees that in accordance with Section 13(d), to the extent that the Contract Documents (including specifically, any requirements of Owner set forth therein with respect to background checks), provide for any background check procedures which are more restrictive than the background check procedures set forth above, such more restrictive background check procedures shall govern Subcontractor's obligations with respect thereto.

      (j) Should the Work involve excavation or construction, Subcontractor shall timely notify all utility companies and others who may have underground facilities in the vicinity of the Work. Subcontractor shall obtain appropriate information on the location of buried cable and utilities prior to performing any Work. Subcontractor shall locate, expose, and protect from damage all existing underground facilities, including electrical, telephone, water, gas, sewer or other utilities. Subcontractor has assumed the risk of damage to underground facilities in its price and shall not beentitled to any extra or additional compensation with respect thereto. Subcontractor is responsible for maintaining locate tickets until the Work is complete. Subcontractor must notify Contractor and the owner of the damaged facility as soon as possible after damage occurs. Subcontractor shall comply with all federal, state, and local laws regarding the location of underground utilities, as well as excavation or construction services.

      (k) Subcontractor hereby absolutely waives and releases any and all liens, claims or right to file a lien on all Contractor or Owner properties, real and personal, including, but not limited to, equipment, buildings, lines, and poles, upon which Subcontractor or its employees, agents or subcontractors have performed labor or supplied material (or both), pursuant to statutes of the state where the Work was performed relating to mechanic's liens. At any time, as a condition precedent to any payment to Subcontractor, Contractor may require Subcontractor to execute or have executed by any of its sub-subcontractors, suppliers or materialman, a lien or bond waiver form.

DocuSign Envelope ID: 3C7B513F-F0C4-4D09-A2C8-ED0444C532B7

(l)     In the event that any lien or other encumbrance of any kind is placed on the materials or Work provided by Subcontractor or any person acting at Subcontractor's direction or directly or indirectly on Subcontractor's behalf, such occurrence shall be deemed a breach of this Agreement. In such case, Contractor may terminate this Agreement without any liability to Subcontractor, except for Work already furnished and accepted by Contractor. Subcontractor agrees to reimburse Contractor for any additional costs incurred by Contractor due to such occurrence, in addition to Subcontractor's obligations under Section 7 herein.

(m)     Subcontractor understands that the laws, requirements, and provisions from the Primary Contract flow down and are applicable to Subcontractor, the Work, Subcontractor's employees, Subcontractor's subcontractors, and their work. Subcontractor understands and agrees that such laws, requirements, and provisions cannot be amended or modified by Contractor or Subcontractor, unless done in writing and unless such modification does not conflict with the laws, requirements, and provisions applicable to the Primary Contract. Subcontractor further represents that it is not relying on Contractor regarding what federal, state, county, municipal, and local laws, ordinances, rules, regulations, codes, and any other orders of governmental or public authorities apply to the Work. Subcontractor further represents that it has had an opportunity to seek advice of counsel regarding what the laws may be and how to comply with such laws. Subcontractor also represents that it knows and understands that the laws may be amended and/or change from time to time, and that it is Subcontractor's responsibility to maintain compliance with the laws.

(n)     Subcontractor agrees to comply with Contractor's Supplier Code of Conduct and Contractor's Sustainable Procurement Policy, as each of the same may be updated from time to time.

**Section 13.     Subcontractor Submittals.** Contractor may, at any time in its sole discretion, require from Subcontractor and Subcontractor shall submit to Contractor any of the following submittals (collectively, "Submittals") in a form satisfactory to Contractor:

(a)     Certificates from providers evidencing that all bonds and insurance required by the Contract Documents are in full force and effect;

(b)     Satisfactory evidence that Subcontractor is in compliance with all government, administrative, reporting or accounting requirements of the Contract Documents;

(c)     Satisfactory evidence that neither Subcontractor nor any person or entity claiming under or through Subcontractor has placed or has the right to maintain a lien or other claim against Owner, Contractor, Contractor's surety, if any, or the Work, including a sworn certification of payment and releases of liens filed by suppliers or persons working under or on behalf of Subcontractor on forms specified by Contractor;

(d)     Satisfactory evidence that all individuals performing Work have completed a background check and drug test in accordance with the terms herein and the Contract Documents;

(e)     Affidavit stating that all persons working for Subcontractor have been paid in full for any labor, materials, supplies or services provided in connection with the Work, including, without limitation, any taxes, benefits or government charges with respect thereto; and

(f)     Contractor may withhold payment of any invoice until Subcontractor provides a requested Submittal.

DocuSign Envelope ID: 3C7B513F-F0C4-4D09-A2C8-ED0444C532B7

**Section 14.      Assignment.**  Subcontractor shall not assign this Agreement nor subcontract the whole or any part of the Work or this Agreement without the written consent of Contractor. Subcontractor shall not assign any amounts due or that may become due under this Agreement without the written consent of Contractor.  Any such assignment without the consent of Contractor shall be void, and Contractor, at its option, may terminate this Agreement.  Contractor shall have the right to approve and/or remove any and all subcontractors of Subcontractor.

**Section 15.      Termination:**

(a)      *Termination for Cause*.  Subcontractor shall perform the Work in accordance with this Agreement and the Contract Documents so that the result contracted for is reasonably satisfactory to Contractor and Owner.  If Subcontractor fails within seven (7) calendar days following written notice by Contractor to fulfill Subcontractor's obligations under this Agreement, Contractor, in addition to any lawful remedies, may terminate this Agreement or Contractor may complete the Work or correct any deficiencies by alternate means.  As to the latter, if the expenses or costs borne or incurred by Contractor to complete the Work or correct any deficiencies exceed any amount due Subcontractor from Contractor under this Agreement, Contractor has the right to offset the amount due by excess expenses and seek any balance from Subcontractor.  Upon receipt of a written notice of termination, Subcontractor shall (i) suspend all operations at the site as directed by Contractor in the notice, (ii) take such action as is necessary or otherwise directed by Contractor to protect and preserve the Work, and (iii) to the extent possible without committing an act of breach, terminate all existing sub-subcontracts and purchase orders and refrain from entering into additional sub-subcontracts and purchase orders.

(b)      *Termination for Convenience*.  Contractor may terminate this Agreement if(i)Owner terminates the Primary Contract, or(ii)for Contractor's convenience. In the event of either (i) or (ii) above, Subcontractor's exclusive remedy shall be to receive payment for all conforming and accepted Work performed by Subcontractor up to the effective date of the termination.  Subcontractor shall not be entitled to receive payment for any work not performed and shall not be entitled to profit or overhead on work not performed.

(c)      Contractor may elect at any time to convert a termination for convenience into a termination for cause.

(d)      In the event Contractor terminates this Agreement for cause and it is later shown that Subcontractor was not in default as claimed by Contractor, such termination shall be converted to a termination for convenience as set forth in Section 15(b) and Subcontractor shall not be entitled to recover from Contractor any costs, fees, or any other expense which are not expressly allowed therein.

**Section 16.      Limitation on Remedy.**  In the event of a breach of this Agreement by Contractor, Subcontractor agrees that its sole and exclusive remedy shall be the recovery of actual and direct damages only.  In no event shall Contractor be responsible for consequential, multiple, indirect, incidental, exemplary, or punitive damages, or for any special statutory remedies, penalties or attorneys fees.

**Section 17.      Non-Competition and Non-Solicitation:**

(a)      For so long as Subcontractor is performing the Work and for a period of two (2) years after Subcontractor ceases performing the Work, for any reason whatsoever, Subcontractor shall not, either directly or indirectly, on Subcontractor's own behalf, or, on behalf of others, (i) engage in, own any interest in, manage, operate, gain control of, consult with, finance or otherwise participate in,(ii) solicit to or on behalf of any Competing Business (as hereinafter defined), or (iii) attempt to solicit, divert,

DocuSign Envelope ID: 3C7B513F-F0C4-4D09-A2C8-ED0444C532B7

or appropriate to or on behalf of any Competing Business, any business of Contractor from any customer of Contractor with whom Subcontractor has had material contact in furtherance of Contractor's business during the last two (2) years within which Subcontractor was performing the Work.

(b)     The territory covered by this Section is the state or states in which Contractor, or its affiliates or subsidiaries, as applicable, conduct business.

(c)     For the purposes of this Section:(i) "customer" shall mean a customer who has obtained products or services from Contractor within the last two (2) years and has not advised Contractor of a decision to no longer obtain products or services from Contractor, (ii)"material contact" shall mean contact between Subcontractor and the Customer that was intended to further the business relationship between Contractor and the customer, and (iii) "Competing Business" means any business organization of whatever form engaged, in whole or in relevant part, in any business or enterprise which is the same as, or substantially the same as, the business of Contractor, or any of Contractor's affiliates or subsidiaries, as applicable.

(d)     Should any portion of this Section 17 be judicially held to be invalid or wholly or partially unenforceable, such holding shall not invalidate or void the remainder of this Section 17, the parties hereby agreeing that the part so held to be invalid or unenforceable shall be revised and reduced in scope so as to be valid and enforceable, or if such is not possible, then such part shall be deemed to have been stricken herefrom and the remainder of the document remain in place with the same force and effect as if such part or parts had never been included herein.

**Section 18.     Confidential Information and Trade Secrets:**

(a)     Subcontractor will hold all Confidential Information (as hereinafter defined) in trust and strictest confidence, and will not use, reproduce, distribute, disclose, or otherwise disseminate Confidential Information, or any physical embodiments thereof, and may in no event take any action causing or fail to take action necessary in order to prevent any Confidential Information disclosed to or developed by Contractor to lose its character or cease to qualify as Confidential Information. This obligation commences when Subcontractor first comes into possession of Confidential Information and continues for a period of four (4) years after Subcontractor ceases performing the Work for which such Confidential Information was provided to or developed by Subcontractor or Contractor under this Agreement.

(b)     During the term of this Agreement and following termination of it (until such time as they are no longer Trade Secrets under applicable state laws), Subcontractor will hold all Trade Secrets (as hereinafter defined) in trust and strictest confidence, and will not use, reproduce, distribute, disclose or otherwise disseminate the Trade Secrets, or any physical embodiments thereof, and may in no event take any action causing or fail to take action necessary in order to prevent any Trade Secrets disclosed to or developed by Subcontractor to lose its character or cease to qualify as Trade Secrets.

(c)     "Confidential Information" means information related to the operation and business of Contractor, which derives economic value, actual or potential, from not being generally known to or readily ascertainable by others, and which is not a Trade Secret. Assuming the foregoing criteria are met, Confidential Information includes, but is not limited to, the following: compilations of information concerning pending or potential transactions within the business of Contractor that if pursued by Contractor would or could result in a fee or income to Contractor; compilations of information concerning Contractor's customers and prospective or potential customers; compilations of service manuals; Contractor's pricing information; compilation of information related to Contractor's vendors and suppliers, including the identity of Contractor's vendors and suppliers; compilation of Contractor's vendor

DocuSign Envelope ID: 3C7B513F-F0C4-4D09-A2C8-ED0444C532B7

and supplier pricing; Contractor's financial, marketing and sale information; proposals submitted to customers or potential customers of Contractor, including the services requested or preferred by Contractor's customers; Contractor's methods and procedures of operation; the composition, description, schematic or design of software or other products, future products or equipment of Contractor; communication systems, audio systems, system designs and related documentation; systems, processes and methodologies used by Contractor to conduct the business of Contractor; and the amounts paid by Contractor's customers for services rendered by Contractor. Confidential Information shall also include information which has been disclosed to Contractor by any third party, and, as to which, Contractor has an obligation to the third party to treat as confidential.

(d)  "Trade Secrets" means all information that constitutes trade secrets as defined by the Uniform Trade Secrets Act and other applicable laws of the state where the Work is conducted.

**Section 19.**  **Notices.** All notices, requests, claims, demands, and other communications under this Agreement shall be in writing and shall be given by delivery in person, facsimile or registered or certified mail to the respective parties at the following addresses:

| If to Contractor: | If to Subcontractor: |
|---|---|
| | Executive Vice President |
| Ervin Cable Construction, LLC | |
| P. O. Box 10 – 450 Pryor Blvd | (Name of Company) |
| Sturgis, KY 42459 | Address: |
| | 425 Griffin Road |
| | Youngsville, LA 70592 |

| Attention: | Brad Ervin | Attention: | Jody Broussard |
|---|---|---|---|
| Office: | 270-333-3366 | Office: | 337-857-6000 |
| Fax: | 714-276-6176 | Fax: | 337-857-6001 |
| Email: | bervin@ervincable.com | Email: | jjbroussard@qualitycompanies.com |

**Section 20.**  **Amendment.** This Agreement may be amended only by a written instrument signed by Contractor and Subcontractor.

**Section 21.**  **Waiver of Breach.** The waiver by either party of a breach of any provision in this Agreement shall not operate or be construed as a waiver by such party of any subsequent breach.

**Section 22.**  **Headings.** The descriptive headings in this Agreement are included for convenience of reference only and shall not affect in any way the meaning or interpretation of this Agreement.

**Section 23.**  **Counterparts.** This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which taken together shall constitute one and the same Agreement.

DocuSign Envelope ID: 3C7B513F-F0C4-4D09-A2C8-ED0444C532B7

**Section 24.** Entire Agreement. This Agreement constitutes the entire agreement between the parties concerning the subject matter of this Agreement and supersedes any and all prior and contemporaneous agreements between the parties relating to the subject matter of this Agreement. There are no courses of dealing, courses of performance or usages of trade which constitute a portion of the parties' agreement-in-fact.

**Section 25.** Governing Law. The interpretation, construction and enforcement of this Agreement shall be governed by the laws of the jurisdiction where the Work is to be performed under this Agreement.

**Section 26.** Facsimile Signature. Any party transmitting its signature by facsimile or portable document format (".pdf") shall be deemed to have accepted and adopted such facsimile or .pdf signature as such party's original signature and that same is sufficient to bind such party to this Agreement as if such party's original handwritten signature is attached hereto. It is the intention of the parties, however, that a facsimile or .pdf signature is binding from the time it is telecopied or transmitted for attachment to this Agreement and that any person may rely on the authority thereof for implementing the provisions of this Agreement.

**Section 27.** Remedies. Duties and obligations imposed by this Agreement and the Contract Documents, and the rights and remedies available thereunder, shall be in addition to, and not a limitation of, duties, obligations, rights and remedies otherwise imposed or available by law. Contractor's remedies shall be cumulative and Contractor's failure to exercise a particular remedy shall not constitute a waiver of a right or duty afforded Contractor herein or pursuant to applicable law. Subcontractor agrees that the covenants contained in this Agreement are reasonable and necessary to protect and preserve the interests and properties of Contractor and the business of Contractor; and that irreparable loss and damage will be suffered by Contractor should Subcontractor breach any of such covenants. Therefore, Subcontractor agrees and consents that, in addition to all the remedies provided at law or in equity, Contractor shall be entitled in a court of law to a temporary restraining order and temporary and permanent injunctions to prevent a breach or threatened breach of any of the covenants. Subcontractor waives and will not (i) assert any defense that Contractor has an adequate remedy at law with respect to the breach, (ii) require that Contractor submit proof of the economic value of any Trade Secret or Confidential Information, or (iii) require Contractor to post a bond or any other security. Further, Contractor and Subcontractor acknowledge and agree that any claims by Subcontractor against Contractor hereunder or otherwise shall not constitute a defense to injunctive relief as to the enforcement of this Agreement. In the event that Contractor is forced to bring suit to enforce the provisions of this Agreement, Contractor shall be entitled to recover attorneys' fees and costs of litigation in addition to all other remedies available at law or in equity.

**Section 28.** Survival. As set forth herein, the following clauses shall survive the termination of this Agreement or the completion of the Work: Section 3 - Warranty; Section 7 - Indemnity/Duty to Defend; Section 9 - Conditions Precedent to Payment; Section 17 - Non-Competition and Non-Solicitation; and Section 18 -Confidential Information and Trade Secrets.

**Section 29.** Severability. Contractor and Subcontractor agree that each of the provisions included in this Agreement is separate, distinct, and severable from the other and remaining provisions of this Agreement, and that the invalidity or unenforceability of any Agreement provision shall not affect the validity or enforceability of any other provision or provisions of this Agreement. If any provision of this Agreement is found by any court with jurisdiction to be less than fully enforceable, then each such provision shall be deemed amended or modified to the fullest extent permitted under applicable law. The existence of any claim, demand, action, or cause of action of Subcontractor against Contractor shall not

DocuSign Envelope ID: 3C7B513F-F0C4-4D09-A2C8-ED0444C532B7

constitute a defense to the enforcement by Contractor of any of the covenants or obligations of Subcontractor set forth in this Agreement.

Section 30.    **Waiver.**  The waiver by Contractor of any breach hereof by Subcontractor shall not constitute a waiver of any subsequent breach of the same or any other provision.

The parties have executed this Agreement as of the date indicated above.

CONTRACTOR:

SUBCONTRACTOR:   Executive Vice President

ERVIN CABLE CONSTRUCTION, LLC

By:  *Brad Ervin*
—DE93C0295999460...

Name:  Brad Ervin

Title:   President

Date Signed:  6/12/2017

By:  *Jody Broussard*
—27865E097BF24EC...

Name:   Jody Broussard

Title:   Executive Vice President

Date Signed:  6/12/2017

Subcontractor's Taxpayer Identification Number:   52-2363317

DocuSign Envelope ID: 3C7B513F-F0C4-4D09-A2C8-ED0444C532B7

## Exhibit A

## Retainage

(a)　　In accordance with Section 10, Contractor shall pay Subcontractor for each invoice presented, less 10 %[1] (the "Retainage").  Payment of Retainage (less any amounts previously withheld or deducted) shall be made within thirty (30) days after all of the following conditions precedent are satisfied:

(i)　　Completion of the Work in accordance with this Agreement, as determined in the sole discretion of both Contractor and Owner; and

(ii)　　Final payment made to Contractor by Owner of all sums owed to Contractor under the Primary Contract and any amendments thereto.

(b)　　Subcontractor agrees that Contractor may use all or any portion of the Retainage to satisfy any and all claims, including without limitation claims for workmanship, that result from the performance or non-performance of the Work.

(c)　　If the amount in the introductory paragraph of this Exhibit is left blank, the parties agree that no Retainage will be held.

---

[1] 10% Retainage is strongly recommended in light of the provisions of §53.101 of the Texas Property Code.

Ex. B-1

DocuSign Envelope ID: 3C7B513F-F0C4-4D09-A2C8-ED0444C532B7

**Exhibit B**

**Pricing**

See Attached Pricing.

DocuSign Envelope ID: 3C7B513F-F0C4-4D09-A2C8-ED0444C532B7

## Exhibit C

### Subcontractor Insurance Requirements

(a)     Subcontractor shall procure and maintain at its expense during the term of this Agreement the following policies, coverages and limits of liability in all states where Work is to be performed from an insurer (or insurers) with Bests Rating "A-VIII" or better and otherwise acceptable to the Contractor and licensed to do business in such state(s). The Contractor specifically reserves the right to reject coverage provided by certain insurance companies not acceptable to the Contractor. If the Primary Contract requires additional coverage or limits higher than those stated below, then the insurance requirements of the Primary Contract will apply:

(i)     *Workers' Compensation and Employers Liability Insurance* in all jurisdictions in which Subcontractor will be performing work or operations will be conducted, by "All States Endorsement," with the following minimum limits of liability and coverage endorsements:

Workers Compensation - Coverage A - Statutory Coverage Employers Liability

- $1,000,000 each accident
- $1,000,000 each employee by disease
- $1,000,000 policy limit by disease

If applicable, the policy shall be endorsed to contain the following coverage endorsements:

- United States Longshoreman's and Harbor Workers (USL&H) coverage endorsement
- waiver of subrogation where permitted by law
- alternate employer endorsement

Subcontractor shall furnish to Contractor the "Declaration" or "Information" page from Subcontractor's workers compensation policy evidencing, in items 3(a) and (c) on the page, the states in which Subcontractor has workers compensation coverage on an ongoing basis. Subcontractors who fail to provide the Declaration or Information page listing the required workers compensation coverage will not be approved for work on Contractor's or Project Owner's projects.

(ii)     *Commercial General Liability* with broad form coverage, which includes coverage for settlement, collapse, explosion, underground hazards, bodily injury and property damage, personal/advertising injury, contractual liability and product/completed operations, with the following minimum limits of liability and coverage endorsements:

- $1,000,000 each occurrence
- $2,000,000 general aggregate
- $2,000,000 products/completed operations aggregate
- $1,000,000 personal injury and advertising injury liability

The policy shall be endorsed to contain the following coverage endorsements:

- waiver of subrogation (CG 24 04 or an equivalent form)
- severability of interest (separation of insureds)

C-1

DocuSign Envelope ID: 3C7B513F-F0C4-4D09-A2C8-ED0444C532B7

     (iii)    *Commercial Automobile Liability* with the following minimum limits of liability and coverage endorsements:

           ∘    $1,000,000 Combined Single Limit (each accident)

The policy shall be endorsed to contain the following coverage endorsements:

- coverage must be included for owned, leased and non-owned vehicles *(an "any auto" policy)*
- waiver of subrogation
- severability of interest (separation of insureds to be included in the definition of "Insured")

(b)     The insurance limits set forth in this Exhibit may be satisfied by a combination of Primary and Umbrella or Excess Liability Policies. All policies (except the Workers' Compensation and Employers' Liability Policy) shall name (i) Contractor, its direct and indirect parent(s), subsidiary(ies) and affiliated companies, their respective officers, directors, stockholders, employees, and agents, and (ii) Owner, in each case as an Additional Insured. The General Liability and any Umbrella or Excess Liability policies shall utilize form CG 20 10 or an equivalent form (Additional Insured endorsement applicable to ongoing operations) and the current edition of form CG 20 37 or an equivalent form (Additional Insured endorsement applicable to completed operations). The policies shall be endorsed to provide coverage to these additional insureds on a primary (non-contributory) basis without seeking contribution from any other insurance or self insurance available to the Additional Insured. If any Umbrella or Excess Liability Policies are used to satisfy the insurance requirements, they must be specifically endorsed to state that their coverage is primary and non-contributory to any insurance carried by the additional insured. This must be so stated on the certificate of insurance as required by (d) below.

(c)     If any Work is to be conducted within fifty (50) feet of a railroad or railroad right of way, any exclusions relating to railroads must be deleted from both the exclusions section and the definition of an insured contract. Evidence that the exclusions have been deleted (attach form CG 24 17 or an equivalent form) must be provided to Contractor.

(d)     Prior to commencement of any Work, Subcontractor shall furnish to Contractor insurance certificates in a form acceptable to Contractor evidencing compliance with the foregoing requirements and stating that the insurers will provide thirty (30) day written notice of cancellation or material alteration in any of the required policies of insurance. *Copies of all endorsements, including, but not limited to, the Additional Insured endorsements shall be attached to the certificate of insurance.* A copy of the schedule of forms from the General Liability policy must be attached to the certificate of insurance. The contractor reserves the right to reject any insurance coverage that contains forms or exclusions that are not acceptable to the contractor. All policies shall be written on an occurrence basis. If requested by Contractor, Subcontractor will provide Contractor with certified copies of the policies within thirty (30) days of the request. The provision of the foregoing insurance requirements shall be a condition precedent to any obligation of Contractor to make payment to Subcontractor.

(e)     If any of the policies required by this Exhibit contain deductibles or self insured retentions, the deductibles or self insured retentions will be the sole responsibility of Subcontractor and coverage will apply to Contractor, Owner and all Additional Insureds, all as though the policies were written on a "first dollar" basis.

DocuSign Envelope ID: 3C7B513F-F0C4-4D09-A2C8-ED0444C532B7

(f)     If any Work is to be performed in a jurisdiction where Subcontractor is insured for workers compensation through an "assigned risk pool", the certificate provided to Contractor shall indicate that the coverage is provided through the "assigned risk pool".

(g)     Contractor reserves the right to adjust insurance coverage requirement limits to comply with specific limits established from time to time by Owner.

(h)     All policies shall be written on an occurrence basis; claims made policies are not acceptable.

(i)     Any amendment to the "standard exclusion f." of the Commercial General Liability Form is not acceptable.

(j)     Contractor reserves the right to reject any insurance coverage that contains forms or exclusions that are not acceptable to Contractor.

Subcontractor hereby authorizes and grants to Contractor the unequivocal right to contact Subcontractors insurance agent(s) or underwriter(s) and to discuss any aspect of Subcontractors insurance policies, limits of liability, coverage endorsements and/or any requirements hereunder. Notwithstanding Contractors right to contact and discuss the insurance requirements, Contractor assumes no responsibility or liability for Subcontractors compliance or noncompliance with Contractor's or Project Owner's insurance requirements which may be established from time to time. It is and shall remain Subcontractors sole responsibility to comply with any and all insurance requirements and provide the appropriate coverage limits.

Any subcontractor or other party performing Work on the Project under Subcontractor shall, in addition to securing its or their own policy of insurance with the types and limits described hereinabove,  also provide the following insurance coverage naming Contractor and Project Owner as additional insureds:

*Contractor's Pollution Liability* covering environmental liability arising out of the Work and/or as might be required by federal, state, regional, municipal or local laws, including damages arising out of "bodily injury" or "property damage" "clean-up costs", civil fines, civil penalties, and civil assessments.  With the following minimum limits of liability and coverage endorsements:

- $1,000,000 Each Incident
- $1,000,000 Aggregate

DocuSign Envelope ID: 3C7B513F-F0C4-4D09-A2C8-ED0444C532B7

**EXHIBIT D**

**UNCONDITIONAL LIEN WAIVER**

The undersigned, _____("Subcontractor") pursuant to that certain Subcontractor Agreement dated _____ by and between Subcontractor and ERVIN CABLE CONSTRUCTION, LLC to perform certain work for _____ (Name of Project Owner or Project) in connection with Job No._____, for and in consideration of One Dollar ($1.00) and other valuable consideration, the receipt and sufficiency of which is hereby acknowledged, does hereby absolutely waive and release any and all liens, claims or right to file a lien on all properties of whatsoever description and kind, real and personal, including, but not limited to, equipment, buildings, lines and poles, upon which Subcontractor or its employees, agents or subcontractors have performed labor or supplied material (or both), pursuant to statutes of the state where the work was performed relating to Mechanic's Liens, from the date of the Agreement through _____, 20__.   This waiver shall not release ERVIN CABLE CONSTRUCTION, LLC from its contractual obligations to Subcontractor, but Subcontractor agrees to absolutely and unconditionally waive any right to a Mechanic's Lien or other claim against _____(Name of Project Owner or Project), its affiliates or subsidiaries.

WITNESS our hands this ___ day of _____, 20__.

**SUBCONTRACTOR:**

_____
(print name of your company)

By:_____
　　Signature

Title:_____

WITNESS

_____

## 2019-72194 / Court: 151



RB&T | ROBERTS, REYNOLDS,
L A W Y E R S | BEDARD & TUZZIO, PLLC



*Providing Outstanding Service for Over 30 Years*

LAURA E. BEDARD
DANNA P. CLEMENT
ABBY J. GOLDMAN
SHELLI A. HEALY
ANDREA G. AMIGO
JEFFREY W. HURCOMB
JASON B. VRBENSKY -
Board Certified Construction Law
————
STEPHANIE W. KAUFER
BRITTANY H. JACOBS
KRYSTAL KOZMA
ALEX B.C. ERSHOCK
JORDAN H. LEWIS
CORY O. STEPHENSON
ANN G. BREEDEN
SHERRI-ANN GRANT-CLARKE
KRISTEN H. MCMULLEN
COLTON L. CHRIMES
GEMMA TORCIVIA
BRANDON J. CRANE
TENIELLE J. PATRICK
JAIME W. KEHOE
ANTONIA F. URUSKI

GEORGE P. ROBERTS, JR.
Of Counsel

LYMAN H. REYNOLDS, JR.
Board Certified Civil Trial Lawyer

BENJAMIN L. BEDARD
Board Certified Civil Trial Lawyer

GERARD A. TUZZIO

Ft. Lauderdale Office:
**7501 WILES ROAD - SUITE 201**
**CORAL SPRINGS, FL 33067**
**TELEPHONE (954) 656-8388**
**FACSIMILE (954) 656-8389**

RRBPA.COM

PARALEGALS

KATHRYN L. REEVES
MICHELLE L. SMITH
REBECCA K. DAVIS
TIFFANIE T. WALLEN
MICHELLE A. WATSON
AMANDA K. ROTH
AMY D. KENT
DIANE M. DELANO
LEAH D. MINNUCCI

PLEASE REPLY TO:
FT. LAUDERDALE

August 7, 2019

**VIA CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**
70190700000074128396
Liberty Mutual Insurance Company
175 Berkley Street
Boston, MA 02116

      Re:    Martin Villareal v Ervin Cable Construction v Quality Construction & Production
            D/I:         09/21/17
            **Our File No.: 19-501**

To Whom It May Concern:

      Please be advised that we are counsel for Verizon Sourcing, LLC d/b/a MCI Metro Access Transmission Services Corp. and Ervin Cable Construction, LLC ("Ervin Cable"). Verizon Sourcing, LLC d/b/a MCI Metro Access Transmission Services Corp. contracted with Ervin Cable. Ervin Cable then subcontracted with Quality Construction & Production, LLC ("Quality Construction") for certain work. Martin Villareal, an employee of CenterPoint Energy, responded to the site after Quality Construction hit an underground gas line during the course of its excavation work. Mr. Villareal has filed a lawsuit, attached for your review, claiming bodily injuries as a result of coming into contact with foreign power during the course of this work. Of note, his Complaint provides the date as September 22, 2017; however, our documents state the date of work was September 21, 2017.

      Pursuant to the subcontract agreement, which has been enclosed, Quality Construction agreed, in relevant part, to the following:

Liberty Mutual Insurance Company
August 7, 2019
Page 2

> Subcontractor shall defend, indemnify and hold harmless
> Contractor, Owner, Owner's lender(s), and their respective parents
> (direct or indirect), subsidiaries, affiliates, officers, directors,
> agents, servants and/or employees (each an "Indemnified Party"
> and collectively, the "Indemnified Parties") from and against all
> liability, damage or injury of any kind or nature whatsoever to all
> persons, whether employees of Subcontractor or otherwise, and to
> all property including all settlement sums, losses and expenses,
> including attorneys' fees, suffered by any Indemnified Party,
> which are caused by, result from or arise out of Subcontractor's (i)
> performance or nonperformance of this Agreement and the
> Work,(ii) breach of this Agreement or (iii) violation of any
> applicable law; whether or not such claims are based upon an
> Indemnified Party's alleged active or passive sole negligence or
> participation or upon any alleged breach of any statutory duty or
> obligation on the part of an Indemnified Party, Subcontractor
> agrees to the aforesaid indemnification.

Quality Construction further agreed to:

> Subcontractor shall, at its own expense, defend the Indemnified
> Parties against any claim or any legal proceeding which may
> invoke the Subcontractor's indemnity obligations under [the
> Indemnity section of] this Agreement.

It is clear under the circumstances that Liberty Mutual Insurance Company owes Verizon
Sourcing, LLC d/b/a MCI Metro Access Transmission Services Corp. and Ervin Cable full
indemnity and a defense of this claim given the actions of Quality Construction's employees. By
this correspondence, Verizon Sourcing, LLC d/b/a MCI Metro Access Transmission Services
Corp. and Ervin Cable demand that within twenty (20) days from receipt of this letter, Liberty
Mutual Insurance Company accept this tender or resolve the claim. If such a resolution is
reached, Verizon Sourcing, LLC d/b/a MCI Metro Access Transmission Services Corp. and
Ervin Cable further demand that Liberty Mutual Insurance Company obtain a release naming all
parties. Finally, pursuant to the Subcontract, Liberty Mutual Insurance Company is responsible
for the fees that Verizon Sourcing, LLC d/b/a MCI Metro Access Transmission Services Corp.
and Ervin Cable incur as a result of the instant claim.

Furthermore, Quality Construction was to provide insurance listing Verizon Sourcing,
LLC d/b/a MCI Metro Access Transmission Services Corp. and Ervin Cable as Additional
Insureds on a primary (non-contributory) basis without seeking contribution from any other
insurance or self-insurance available to the Additional Insured.   As such, we demand you
provide a complete copy of the insurance policy evidencing same.

Liberty Mutual Insurance Company
August 7, 2019
Page 3

Attached is a Certificate of Insurance for Quality Construction. Quality Construction was obligated to maintain liability coverage for Verizon Sourcing, LLC d/b/a MCI Metro Access Transmission Services Corp. and Ervin Cable as an Additional Insured in the form of a Commercial General Liability policy which includes coverage with minimum limits of $1,000,000 each occurrence and $2,000,000 general aggregate. Additional insured language reads: Blanket Add'l Insured as required by written contract.

Should Liberty Mutual Insurance Company refuse this tender of defense and full indemnification of Verizon Sourcing, LLC d/b/a MCI Metro Access Transmission Services Corp. and Ervin Cable, Verizon Sourcing, LLC d/b/a MCI Metro Access Transmission Services Corp. and Ervin Cable will pursue all possible remedies available to them against Liberty Mutual Insurance Company, including the filing of a declaratory judgment action. However, I trust that these actions will not be necessary, and that Liberty Mutual Insurance Company will assume the handling of Verizon Sourcing, LLC d/b/a MCI Metro Access Transmission Services Corp. and Ervin Cable's defense and indemnity.

Please be advised again that time is of the essence and the deadline for a response to this demand is due within twenty (20) days from receipt of this letter.

I look forward to hearing from you at your earliest convenience. In the interim, should you have any questions, please do not hesitate to contact my office.

Very truly yours,

GERARD A. TUZZIO
For the Firm

GAT/bhj/dm
Enclosure
cc: clients

 CT Corporation

**Service of Process Transmittal**
08/02/2019
CT Log Number 535982255

**TO:**   Ryan Urness
Dycom Industries, Inc.
11780 US HIGHWAY 1 STE 600
PALM BEACH GARDENS, FL 33408-3043

**RE:**   **Process Served in Texas**

**FOR:**   Ervin Cable Construction, LLC  (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | MARTIN VILLAREAL, PLTF. vs. MCIMETRO ACCESS TRANSMISSION SERVICES CROP., ET AL,. DFTS. // TO: Ervin Cable Construction LLC, etc.<br>_Name discrepancy noted._ |
| **DOCUMENT(S) SERVED:** | Citation, Petition, Request |
| **COURT/AGENCY:** | 151st Judicial District Court Harris County, TX<br>Case # 201948050 |
| **NATURE OF ACTION:** | Personal Injury - Failure to Maintain Premises in a Safe Condition - Plaintiff's Original Petition and Request for Disclosure |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Dallas, TX |
| **DATE AND HOUR OF SERVICE:** | By Certified Mail on 08/02/2019 postmarked on 07/31/2019 |
| **JURISDICTION SERVED :** | Texas |
| **APPEARANCE OR ANSWER DUE:** | By 10:00 a.m. on the Monday next following the expiration of 20 days after you were served this citation and petition (Document(s) may contain additional answer dates) |
| **ATTORNEY(S) / SENDER(S):** | M. Andrew Seerden<br>The Seerden Law Firm, PLLC<br>603 W. 11th St.<br>Suite 200<br>Houston, TX 77008<br>713-526-6700 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 08/02/2019, Expected Purge Date: 08/07/2019<br><br>Image SOP<br><br>Email Notification,  Natasha Wright  nwright@dycominc.com<br><br>Email Notification,  Ryan Urness  ryan.urness@dycominc.com<br><br>Email Notification,  Jazmyn Gonzalez  jazmyn.gonzalez@dycominc.com<br><br>Email Notification,  Cheryl Doyle  cheryl.doyle@dycominc.com |
| **SIGNED:** | C T Corporation System |

Page 1 of  2 / SB

Information displayed on this transmittal is for CT
Corporation's record keeping purposes only and is provided to
the recipient for quick reference. This information does not
constitute a legal opinion as to the nature of action, the
amount of damages, the answer date, or any information
contained in the documents themselves. Recipient is
responsible for interpreting said documents and for taking
appropriate action. Signatures on certified mail receipts
confirm receipt of package only, not contents.

 CT Corporation

**Service of Process Transmittal**
08/02/2019
CT Log Number 535982255

TO: Ryan Urness
Dycom Industries, Inc.
11780 US HIGHWAY 1 STE 600
PALM BEACH GARDENS, FL 33408-3043

RE: **Process Served in Texas**

FOR: Ervin Cable Construction, LLC  (Domestic State: DE)

ADDRESS: 1999 Bryan Street
Suite 900
Dallas, TX 75201
TELEPHONE: 214-932-3601

DOCKET HISTORY:

| DOCUMENT(S) SERVED: | DATE AND HOUR OF SERVICE: | TO: | CT LOG NUMBER: |
|---|---|---|---|
| NOTICE(S), ATTACHMENT(S) | By Certified Mail on 07/29/2019 postmarked on 07/24/2019 | Ryan Urness Dycom Industries, Inc. | 535951798 |

Page 2 of  2 / SB

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

Edwards Enterprises
2042 GlenCove Dr.
Seabrook, TX 77586

7018 2290 0000 3314 5078



U.S. POSTAGE PAID
FCM LETTER
SEABROOK, TX
77586
JUL 31 19
AMOUNT
$7.30
R2304P118703-05

1000.

75201

CT Corporation System
1999 Bryan St # 900
Dallas, Tx   75201

CAUSE NO. 201948050

RECEIPT NO.                     0.00        HTA
          **********           TR # 73646741

PLAINTIFF: VILLAREAL, MARTIN                        In The   151ST
          vs.                                        Judicial District Court
DEFENDANT: MCIMETRO ACCESS TRANSMISSION SERVICES CORP.   of Harris County, Texas
                                                     151ST DISTRICT COURT
                                                     Houston, TX

CITATION

THE STATE OF TEXAS
County of Harris

TO: ERVIN CABLE CONSTRUCTION LLC (DBA ERVIN CABLE CONSTRUCTION OF FLORIDA
    LLC) MAY BE SERVED BY SERVING ITS REGISTERED AGENT
    C T CORPORATION SYSTEM
    1999 BRYAN ST SUITE 900   DALLAS TX 75201
    Attached is a copy of ·PLAINTIFF'S ORIGINAL PETITION AND REQUEST FOR DISCLOSURE

This instrument was filed on the 16th day of July, 2019, in the above cited cause number
and court. The instrument attached describes the claim against you.

    YOU HAVE BEEN SUED, You may employ an attorney. If you or your attorney do not file a
written answer with the District Clerk who issued this citation by 10:00 a.m on the Monday
next following the expiration of 20 days after you were served this citation and petition,
a default judgment may be taken against you.

TO OFFICER SERVING:
    This citation was issued on 19th day of July, 2019, under my hand and
seal of said Court.

Issued at request of:                              Marilyn Burgess
SEERDEN, MICHAEL ANDREW                            MARILYN BURGESS, District Clerk
603  W. 11TH ST., SUITE 200                        Harris County, Texas
HOUSTON, TX  77008                                 201 Caroline, Houston, Texas 77002
Tel: (713) 526-6700                                (P.O. Box 4651, Houston, Texas 77210)
Bar No.: 24008007                                  Generated By: MOMON, RHONDA  HWP//11277017

OFFICER/AUTHORIZED PERSON RETURN

Came to hand at _____ o'clock ____.M., on the _____ day of _____, _____.

Executed at (address) _____ in

_____ County at _____ o'clock ____.M., on the _____ day of _____,

_____, by delivering to _____ defendant, in person, a

true copy of this Citation together with the accompanying _____ copy(ies) of the Petition

attached thereto and I endorsed on said copy of the Citation the date of delivery.
To certify which I affix my hand officially this _____ day of _____, _____.

FEE: $_____                          _____

                                        _____ of _____County, Texas

_____              By _____
        Affiant                                  Deputy

On this day, _____, known to me to be the person whose
signature appears on the foregoing return, personally appeared. After being by me duly sworn,
he/she stated that this citation was executed by him/her in the exact manner recited on the
return.

SWORN TO AND SUBSCRIBED BEFORE ME, on this _____ day of _____, _____.

                                        _____
                                                 Notary Public

N.INT.CITR.P                 *73646741*

## 2019-48050 / Court: 151

7/16/2019 11:54 AM
Marilyn Burgess - District Clerk Harris County
Envelope No. 35159011
By: Joshua Hall
Filed: 7/16/2019 11:54 AM

CAUSE NO. _____

| | | |
|---|---|---|
| MARTIN VILLAREAL | § | IN THE DISTRICT COURT OF |
| *Plaintiff* | § | |
| | § | |
| | § | |
| VS. | § | HARRIS COUNTY, TEXAS |
| | § | |
| MCIMETRO ACCESS TRANSMISSION | § | |
| SERVICES CORP., FUTURE TELECOM, | § | |
| LLC, ERVIN CABLE CONSTRUCTION | § | |
| LLC DBA ERVIN CABLE | § | |
| CONSTRUCTION OF FLORIDA, LLC, | § | |
| and CENTERPOINT ENERGY HOUSTON | § | |
| ELECTRIC, LLC | § | |
| *Defendants* | § | _____ JUDICIAL DISTRICT |

### PLAINTIFF'S ORIGINAL PETITION AND REQUEST FOR DISCLOSURE

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Plaintiff, MARTIN VILLAREAL, in the above-styled and numbered cause, complaining of Defendants, MCIMETRO ACCESS TRANSMISSION SERVICES CORP., FUTURE TELECOM, LLC, ERVIN CABLE CONSTRUCTION LLC DBA ERVIN CABLE CONSTRUCTION OF FLORIDA, LLC, and CENTERPOINT ENERGY HOUSTON ELECTRIC, LLC, and for cause of action would respectfully show unto this Honorable Court the following:

I.
### DISCOVERY CONTROL PLAN

1.1    Discovery is intended to be conducted under Level 2 of Texas Rules of Civil Procedure 190.

II.
### PARTIES

2.1    Plaintiff, MARTIN VILLAREAL, is an individual residing in Harris County, Texas.

---

PLAINTIFF'S ORIGINAL PETITION AND REQUEST FOR DISCLOSURE                    Page 1

2.2     Defendant, MCIMETRO ACCESS TRANSMISSION SERVICES CORP., is a foreign company registered to do business and doing business in the state of Texas, who may be served with process through its registered agent, C T Corporation System, 1999 Bryan St., Suite 900, Dallas, Texas 75201. Issuance of citation is requested at this time.

2.3     Defendant, FUTURE TELECOM, LLC, is a domestic company with its principal place of business in the state of Texas, who may be served with process by serving its registered agent, Donald R. Riggs, at 1800 Bruton Road, Balch Springs, Texas 75180, or wherever he may be found. Issuance of citation is requested at this time.

2.4     Defendant, ERVIN CABLE CONSTRUCTION LLC DBA ERVIN CABLE CONSTRUCTION OF FLORIDA, LLC, is a foreign company registered to do business and doing business in the state of Texas, who may be served with process by serving its registered agent, C T Corporation System , 1999 Bryan St., Suite 900, Dallas, Texas 75201. Issuance of citation is requested at this time.

2.5     Defendant, CENTERPOINT ENERGY HOUSTON ELECTRIC, LLC, is a domestic company with its principal place of business in the state of Texas, who may be served with process by serving its registered agent, C T Corporation System , 1999 Bryan St., Suite 900, Dallas, Texas 75201. Issuance of citation is requested at this time.

2.6     Plaintiff specifically invokes the right to institute this suit against whichever Defendants' entities were conducting business using the assumed or common names of Defendants with regard to the events described in this Petition. Plaintiff expressly invokes his right under Rule 28 of the Texas Rules of Civil Procedure to have the true names of the parties substituted at a later time upon the motion of any party or of the Court.

III.

## VENUE AND JURISDICTION

3.1     Venue is proper in Harris County, Texas, pursuant to Tex.Civ.Prac. & Rem. Code 15.002, as all or a substantial part of the events giving rise to this claim occurred in Harris County.

3.2     The Court has jurisdiction over the controversy because the suit arises under the laws of the State of Texas, and because Plaintiffs suffered damages within the jurisdictional limits of the Court.

IV.
## FACTS

4.1     On or about September 22, 2017, Defendants MCI METRO, FUTURE TELECOM and/or ERVIN CABLE (hereinafter referred to as "cable defendants") were excavating to install underground fiber optic cable at or near 7303 Beechnut, Houston, Texas 77074, when they negligently ruptured a gas and/or electric utility line.  Plaintiff, who worked for CenterPoint Energy Resources Corp., was called out to the scene to repair the gas line.  During Plaintiff's work in repairing the damaged utility line, an explosion occurred which seriously and permanently injured Plaintiff.

V.
## NEGLIGENCE OF CABLE DEFENDANTS

5.1     The injuries and damages suffered by Plaintiff were directly and proximately caused by the negligence of Defendants MCI METRO, FUTURE TELECOM and/or ERVIN CABLE.  At the time and place in question, Defendants were guilty of many acts of negligence, each of which jointly and severally proximately caused the serious, painful and permanent injuries and damages suffered by Plaintiff, including but not limited to the following acts and/or omissions:

a.      In failing to adequately and safely inspect the area for hazards, including the existence of utility lines;

b. In failing to follow proper procedures in identifying and locating existing utility lines prior to excavation and installing conduit and fiber optic cable lines;

c. In failing to adequately monitor the work site;

d. In failing to have adequate supervision;

e. In failing to comply with applicable safety standards;

f. In failing to adequately train its employees;

g. In failing to provide a safe environment for workers;

h. In failing to provide and enforce safety rules and regulations; and

i. Any and all other relevant acts which may be shown during the trial of this cause of action.

5.2 Each of these acts and omissions, singularly or in combination with others, constituted negligence and/or negligence per se on the part of DEFENDANTS. Such acts and omissions proximately caused the occurrence made the basis of this suit and the resulting injuries and damages suffered by Plaintiff.

VI.
NEGLIGENCE OF CENTERPOINT ENERGY HOUSTON ELECTRIC, LLC

6.1 The injuries and damages suffered by Plaintiff were directly and proximately caused by the negligence of Defendant CENTERPOINT ENERGY HOUSTON ELECTRIC, LLC. At the time and place in question, Defendant was guilty of many acts of negligence, each of which jointly and severally proximately caused the serious, painful and permanent injuries and damages suffered by Plaintiff, including but not limited to the following acts and/or omissions:

a. In failing to adequately and safely inspect the area for hazards, including the existence of utility lines;

b. In failing to follow proper procedures in identifying and locating existing utility lines;

    c.     In failing to properly and adequately respond to a request to locate and identify utility lines in the subject area;

    d.     In failing to comply with applicable safety standards;

    e.     In failing to adequately train its employees;

    f.     Any and all other relevant acts which may be shown during the trial of this cause of action.

6.4    Each of these acts and omissions, singularly or in combination with others, constituted negligence and/or negligence per se on the part of Defendants. Such acts and omissions proximately caused the occurrence made the basis of this suit and the resulting injuries and damages suffered by Plaintiff.

## VII.
## DAMAGES

7.1    As a result of the negligent conduct of Defendants, Plaintiff suffered severe bodily injuries. As a further result of the nature and the consequence of his injuries, Plaintiff has suffered great physical and mental pain, suffering and anguish, and in all reasonable probability he will continue to suffer in this manner for a long time into the future, if not for the balance of his natural life. As a result of Defendants' actions, omissions and failure to exercise reasonable care, Plaintiff seeks damages including the following:

    a.     pain and suffering, past and future;

    b.     mental anguish, past and future;

    c.     disfigurement, past and future;

    d.     physical impairment, past and future;

    e.     lost earning capacity, past and future;

    f.     medical treatment, past and future;

    g.     costs of court; and

h.    prejudgment and post judgment interest at the maximum rate allowed by law.

7.2    Pursuant to T.R.C.P. 47, at this time Plaintiff seeks monetary relief over $1,000,000. Plaintiff reserves the right to amend as to the amount of damages Plaintiff seeks to recover.

## VIII.
## JURY DEMAND

8.1    Plaintiff demands a trial by jury.

## IX.
## INTEREST

9.1    Plaintiff seeks to recover pre-judgment and post-judgment interest as allowed by law.

## X.
## REQUEST FOR DISCLOSURE

10.1    Pursuant to Rule 194 of the Texas Rules of Civil Procedure, Defendants are requested to disclose the information and material described in Rule 194.2 within fifty (50) days of the service of this request.

## XI.
## PRAYER

11.1    WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully requests that Defendants be cited to appear and answer herein, and that upon final trial thereof, Plaintiff have judgment against Defendants for those damages described above and in the full amount allowed by law, for compensatory damages, reasonable attorney's fees incurred and to be incurred, costs of court, taxable costs incurred and to be incurred, pre- and post-judgment interest at the maximum legal rate, and for such other and further relief, both at law and in equity, to which Plaintiff may be justly entitled.

Respectfully submitted,

THE SEERDEN LAW FIRM, PLLC

_/s/ M. Andrew Seerden_
M. Andrew Seerden
State Bar No. 24008007
603 W. 11th St., Suite 200
Houston, Texas 77008
713.526.6700
713.526.6704 Facsimile
Andrew.seerden@seerden-law.com

ATTORNEY FOR PLAINTIFF

DocuSign Envelope ID: 3C7B513F-F0C4-4D09-A2C8-ED0444C532B7

## SUBCONTRACT AGREEMENT

This Subcontract Agreement ("Agreement") is effective as of the date an authorized representative from Ervin Cable Construction, LLC has executed said Agreement. This Agreement is by and between ERVIN CABLE CONSTRUCTION, LLC, a Delaware limited liability company, 450 Pryor Boulevard, P. O. Box 10, Sturgis, Kentucky 42459 ("Contractor"),

and _____Quality Construction & Production, L.L.C._____ ("Subcontractor"), for the purpose of performing certain subcontract work under Contractor's primary contract (the "Primary Contract") with the project owner, including any project owner identified in the Primary Contract and any Exhibit B executed by the parties, ("Project Owner"). The subcontractor work includes, but is not limited to, the services identified in Exhibit B, and/or the following services:

_____underground_____ (the "Work").

In consideration of the foregoing and the mutual promises and obligations set forth herein, Contractor and Subcontractor agree and bind themselves as follows:

**Section 1.    Contract Documents:**

(a)    The Contract Documents include this Agreement and any amendments or modifications thereto; any exhibits, annexes or attachments to this Agreement and the Primary Contract, including all the conditions, covenants, drawings, specifications and other documents forming or by reference made a part of the Primary Contract; any subsequent addenda, amendments or modifications to the Primary Contract issued prior to the execution of this Agreement; and all modifications issued subsequent thereto(collectively, the "Contract Documents").

(b)    The Contract Documents, other than this Agreement, are a part of this Agreement the same as if attached to or repeated in this Agreement. Subcontractor is bound to Contractor by all of the terms and conditions in the Contract Documents that apply to the Work in the same manner that Contractor is bound to Owner under the Contract Documents. Contractor shall have the benefit of all rights, remedies and redress against Subcontractor that Owner has against Contractor under the Primary Contract. In the event of any conflict between this Agreement and the other Contract Documents, the provisions in this Agreement shall in all events govern and prevail.

(c)    All of the Contract Documents are available for inspection by Subcontractor at Contractor's address identified herein. Copies of the Contract Documents applicable to the Work shall be made available to Subcontractor upon request. Subcontractor shall have no defense to a breach of a provision of any Contract Document on the ground that Subcontractor has not read such Contract Document. Subcontractor acknowledges that it has had a sufficient and reasonable opportunity to review and consider the Contract Documents.

**Section 2.    Performance Obligations of Subcontractor.**  Subcontractor shall:

(a)    perform the Work within the time established by Contractor and in strict conformity with the Contract Documents;

(b)    supervise and direct the performance of the Work by its employees, contractors, and vendors in strict conformity with means and methodologies appropriate for the performance of the Work

For Use in TX/Revision Date: April 19, 2017

DocuSign Envelope ID: 3C7B513F-F0C4-4D09-A2C8-ED0444C532B7

at its location at the time of year prevailing and otherwise to avoid conflict, delay or interference with the work of others;

(c)     have a sufficient number of qualified personnel with supervision of the Work at all times during its operations to effectively prosecute the Work, shall keep supervisory personnel on the project until completion of the Work, and shall remove unsatisfactory personnel at the request of Contractor;

(d)     make all submissions required by the Contract Documents with reasonable promptness and in such sequence as to cause no delay to the Work or to the work of others;

(e)     unless provided for by Contractor, furnish the vehicles, materials, equipment and tools necessary to perform the Work in accordance with the specifications set forth in the Contract Documents, and pay promptly for all materials, equipment and labor furnished or to be furnished to the location of the Work and furnish evidence thereof to Contractor. If materials are provided by Contractor or Owner, Subcontractor shall only use such materials in connection with the Work. Subcontractor is responsible for the materials until the Work is completed in accordance with the Contract Documents and is accepted by Contractor and Owner. Any unused materials provided by Contractor shall be returned to Contractor (unless Contractor specifies another location) at the conclusion of the Work in the same condition as when provided. Subcontractor will be responsible for any damaged or missing materials;

(f)     turn all Work over to Contractor free and clear of all liens, claims (including any claim related to a construction defect), or encumbrances. Subcontractor agrees it shall promptly notify Contractor of and thereafter defend, indemnify, and save harmless Contractor, Contractor's sureties, and Owner from all liens, claims and encumbrances, claim of lien or suit filed or maintained by any of Subcontractor's sub-subcontractors or suppliers. Without limiting the foregoing, Subcontractor, upon notice by Contractor, shall cause any such lien to be discharged or satisfied. If Subcontractor fails to have any such lien or encumbrance discharged or satisfied, Contractor shall have the right but not the obligation to satisfy any such lien or encumbrance whether the lien or encumbrance is valid or not and Contractor shall be indemnified from all losses and costs, including attorneys' fees, incurred as a result of such lien or encumbrance;

(g)     take reasonable and prudent precautions to protect the Work and the work of others from damage or adulteration, and shall repair or pay the cost of repairing any damage caused by Subcontractor or any of its agents or subcontractors;

(h)     coordinate the performance of the Work with Contractor and others working in the same vicinity;

(i)     comply with all applicable federal, state, county and local laws, ordinances, rules, regulations, codes and orders of governmental and public authorities bearing on performance of the Work (collectively, "laws"), as each may be amended from time to time. Subcontractor shall also give notices and procure required permits or certificates necessary to perform its obligations under this Agreement, including but not limited to zoning requirements, zoning variances, special zoning permits, demolition permits, building permits, and street and curb permits. Subcontractor shall indemnify, defend and hold harmless Contractor for any losses, fines or other penalties, including reasonable attorney fees that may be incurred by or imposed on Contractor due to Subcontractor's failure to comply with the provisions of any applicable law;

(j)     comply with all applicable federal and state immigration laws, including without limitation, the Immigration Reform and Control Act ("IRCA"). Specifically, Subcontractor agrees that it is responsible for completing IRCA verification of the identity and employment eligibility of all

2

DocuSign Envelope ID: 3C7B513F-F0C4-4D09-A2C8-ED0444C532B7

employees and employees of its subcontractors performing services for Contractor, that Subcontractor assumes any and all liability arising out of its failure to fully comply with IRCA and/or other employment-related immigration laws and that Subcontractor will fully indemnify and hold Contractor harmless for any and all IRCA or other immigration-related civil money or criminal penalties assessed against Contractor for services rendered by Subcontractor's employees or its subcontractor's employees, including but not limited to penalties for deficiencies in the Forms I-9, or the knowing or constructive knowing employment of an unauthorized alien. It is the responsibility of Subcontractor, consistent with the Primary Contract, to establish the means to communicate effectively with Contractor and Owner. In the absence of English-speaking workers, Subcontractor must provide cards with the contact name and numbers of the supervisor responsible for that crew or provide some other effective communication tool. However, effective communications is the direct responsibility of Subcontractor;

(k)     perform all tests and inspections called for in the Contract Documents;

(l)     take reasonable safety precautions with respect to the performance of the Work and comply with all safety measures initiated by Contractor and Owner, and with all applicable laws, ordinances, rules, regulations and orders of public authorities for the safety of persons and property, and report to Contractor within three (3) days any injuries to employees or agents of Subcontractor that occur at the project site. Non-compliance with any safety procedure may result in a fine up to but not exceeding $500.00 for each occurrence, at Contractor's discretion, depending upon the frequency and severity of the violation. After the occurrence of three (3) of the same safety violations (i.e., hard hats, traffic control, shoring, etc.), Contractor may terminate this Agreement without any notice to Subcontractor. Further, Subcontractor certifies that, to the extent required, it has provided the necessary OSHA (as defined below) job safety and health training to all employees working on the project site and will require the same of sub-subcontractors or materialmen working on the project site;

(m)     timely pay all withholding, social security, disability, unemployment, excise, sales, use, or other taxes or insurance as required under federal or state law or regulation, except such sales and use taxes applicable to material and other items furnished by Contractor or Owner. In addition, Subcontractor shall timely pay all fees and any labor supply licenses if required in connection with the Work and/or as required by law. Subcontractor shall comply with all federal, state, and local laws, codes, regulations, safety rules, standards, ordinances and/or statutes (including those addressing minimum wage and overtime wages), hire and/or use only employees who have and tender to Subcontractor written documentation proving eligibility to work in the United States, and provide all employees with a remittance advice (paystub) with each paycheck reflecting the calculation of wages paid. Subcontractor shall indemnify, defend, and hold Contractor and Owner harmless from any fees, losses, expenses, including attorneys' fees, fines, damages, claims, or penalties arising out of or caused by Subcontractor's noncompliance with this Section. Subcontractor shall maintain appropriate records on all of its employees;

(n)     at all times keep the work site and surrounding area free from accumulation of trash, debris, waste materials or rubbish caused by performance of the Work;

(o)     hire licensed vendors to complete background checks and drug screens for all employees, agents and contractors who will perform the Work in accordance with Section 12(i);

(p)     provide to Contractor a completed Form W-9 as required by the United States Internal Revenue Service upon Subcontractor's execution of this Agreement; and,

(q)     exercise its best efforts to prevent injury to persons and damage to property in the course of the performance of its obligations under this Agreement. Subcontractor shall, at its sole

3

DocuSign Envelope ID: 3C7B513F-F0C4-4D09-A2C8-ED0444C532B7

expense, replace, restore, or pay replacement costs of any property damaged by its operations. Such repair, replacement, or restoration shall be deemed complete when judged satisfactory by the Contractor, Project Owner and/or any governing agency or the property owner.

> **Section 3.**     **Warranty.** Subcontractor warrants to Contractor and Owner the following:

> (a)     The Work will be new, of good quality, free from defects and in strict conformity with the Contract Documents. Subcontractor further warrants that all materials and equipment furnished and incorporated into the Work shall be new unless otherwise specified. Work not conforming to these standards, including substitutions not properly approved or authorized in writing, shall be considered defective. The failure of Contractor or Owner to inspect, to test or to discover defective workmanship, materials or equipment shall not relieve Subcontractor of its obligation to perform the Work in strict accordance with the Contract Documents and shall not prejudice the rights of Contractor or Owner to reject or require correction of the same.

> (b)     If within one (1) year after completion of the Work, or as provided by applicable law as to latent defects, any of the Work is found to be defective or not in accordance with the Contract Documents, Subcontractor shall correct it promptly upon notice from Contractor. This obligation shall survive final payment by Contractor and termination of this Agreement.

> **Section 4.**     **Time is of the Essence:**

> (a)     Subcontractor acknowledges and agrees that its obligations under this Agreement and the timely completion of the Work are of the essence. Contractor may, from time to time, establish and change scheduling requirements for the completion of a part or all of the Work. Subcontractor shall comply with Contractor's requirements as to timely performance and, if necessary, employ additional crews and work overtime without additional compensation. Subcontractor shall procure and store the materials needed to perform the Work so as not to delay Contractor's schedule of completion of the Work. In the event Subcontractor's performance delays Contractor's performance of the Work, Subcontractor shall have breached this Agreement and shall be responsible for any and all damages or loss suffered by Contractor and resulting therefrom, and shall indemnify, hold harmless and defend Contractor from any and all loss (including, but not limited to, Contractor's attorney's fees), costs and any and all damages (liquidated and/or actual), imposed, assessed or claimed by Owner and attributable in any way to Subcontractor's delay.

> (b)     If Subcontractor is delayed in the performance of the Work by conditions that could not be foreseen by Subcontractor and that are beyond the reasonable control of Subcontractor, then Contractor will grant Subcontractor a reasonable extension of time, provided that Subcontractor applies in writing for such an extension of time within ten (10) days after the commencement of the delay. If Subcontractor fails to apply in writing for such an extension within ten (10) days after the commencement of the delay, Subcontractor waives the right to an extension of the contract time. Contractor and Subcontractor agree, and Subcontractor acknowledges, that the contract amount is based upon the fact that Contractor shall not be liable to Subcontractor for any damages, costs or expenses incurred by Subcontractor due to delays, acceleration, non-performance, interference with performance, suspensions or changes in the performance or sequence of performance of the Work. Subcontractor will not be entitled to any damages or other monetary compensation for delay even if such delay is caused, or partly caused, by Contractor or Owner.

> **Section 5.**     **Change Orders.** Without invalidating this Agreement or any provision hereof, Owner or Contractor may from time to time, by written directive to Subcontractor, require Subcontractor to make changes in the Work (both additions and deletions), and the changed work shall be part of the

DocuSign Envelope ID: 3C7B513F-F0C4-4D09-A2C8-ED0444C532B7

Work. A "Change Order" to this Agreement is a written modification of the terms and conditions of the Agreement signed by both parties. Subcontractor shall not proceed with changed work unless it first receives a Change Order.

Section 6.    **Independent Contractor:**

(a)    Subcontractor shall at all times be an independent contractor and not an employee, partner or agent of Contractor, or engaged in a joint venture with Contractor. As such, the parties to this Agreement understand that Contractor has engaged Subcontractor solely to deliver a result and that Contractor has no power, control or authority over the method, manner or means by which Subcontractor performs the Work. The Contract Documents shall not be construed as creating any contractual relationship between Subcontractor and Owner (except to the extent Owner is an express third party beneficiary of some of the provisions of this Agreement) or between Subcontractor and any consulting engineer or other professional engaged by Owner or Contractor.

(b)    Subcontractor shall be responsible for supervising and directing the work of Subcontractor's employees and for others acting at Subcontractor's direction and/or directly or indirectly on Subcontractor's behalf and for ensuring that all of Subcontractor's employees and such other persons comply with the terms and conditions of this Agreement. Subcontractor shall be responsible for Subcontractor's own labor relations with any labor organization and Subcontractor shall not purport to bind Contractor or any customer of Contractor or any affiliate of either to any labor union. Subcontractor shall maintain labor peace and harmony for the duration of the Work.

(c)    Subcontractor shall be responsible for the performance and actions of Subcontractor's employees and others acting at Subcontractor's direction or on Subcontractor's behalf. Subcontractor will be deemed to have performed any act or omission of such persons under this Agreement and Contractor shall be entitled to all remedies available under this Agreement or at law or equity. Nothing in this Agreement shall be construed to prohibit Contractor or its affiliates from also seeking remedial action against Subcontractor for its act or omission.

(d)    Persons furnished by Subcontractor under this Agreement shall not be entitled to any benefits that Contractor provides to its own employees and Subcontractor shall indemnify, defend and hold harmless Contractor against any claims alleging that any of Subcontractor's employees or subcontractors are employees of Contractor, or that any of same are entitled to (i) Contractor's benefits, or (ii) additional compensation or benefits from Contractor.

(e)    Subcontractor acknowledges and agrees it is not dependent upon Contractor for a major portion of its business and Subcontractor is free to contract for the same or similar services to be performed for other companies, subject to the provisions of Section 17, Non-Competition, while it is operating under this Agreement; however, neither subcontractor, it's subcontractors, employees, agents or affiliates, shall install any other plant or equipment, regardless of ownership, in the same trenches, boring pulls, poles, or facilities of Contractor or Project Owner at the time of performance of the Work covered by this agreement, unless authorized to do so in writing by Contractor or Owner.

Section 7.    **INDEMNITY/DUTY TO DEFEND:**

(a)    TO THE FULLEST EXTENT PERMITTED BY LAW, SUBCONTRACTOR SHALL DEFEND, INDEMNIFY AND HOLD HARMLESS CONTRACTOR, OWNER, OWNER'S LENDER(S), AND THEIR RESPECTIVE PARENTS (DIRECT OR INDIRECT), SUBSIDIARIES, AFFILIATES, OFFICERS, DIRECTORS, AGENTS, SERVANTS AND/OR EMPLOYEES (EACH AN "INDEMNIFIED PARTY" AND COLLECTIVELY, THE "INDEMNIFIED PARTIES") FROM AND

DocuSign Envelope ID: 3C7B513F-F0C4-4D09-A2C8-ED0444C532B7

AGAINST ALL LIABILITY, DAMAGE, INJURY OR DEATH OF ANY KIND OR NATURE WHATSOEVER TO ALL PERSONS, WHETHER EMPLOYEES OF SUBCONTRACTOR OR OTHERWISE, AND TO ALL PROPERTY INCLUDING ALL SETTLEMENT SUMS, LOSSES AND EXPENSES, INCLUDING ATTORNEYS' FEES, SUFFERED BY ANY INDEMNIFIED PARTY, WHICH ARE CAUSED BY, RESULT FROM OR ARISE OUT OF SUBCONTRACTOR'S (I) PERFORMANCE OR NONPERFORMANCE OF THIS AGREEMENT AND THE WORK, (II) BREACH OF THIS AGREEMENT OR (III) VIOLATION OF ANY APPLICABLE LAW; WHETHER OR NOT SUCH CLAIMS ARE BASED UPON AN INDEMNIFIED PARTY'S ALLEGED ACTIVE OR PASSIVE SOLE NEGLIGENCE OR PARTICIPATION OR UPON ANY ALLEGED BREACH OF ANY STATUTORY DUTY OR OBLIGATION ON THE PART OF AN INDEMNIFIED PARTY, SUBCONTRACTOR AGREES TO THE AFORESAID INDEMNIFICATION.   IN ADDITION, SUBCONTRACTOR EXPRESSLY AGREES TO DEFEND, INDEMNIFY AND HOLD HARMLESS THE INDEMNIFIED PARTIES FROM AND AGAINST ANY AND ALL LIABILITIES AND CLAIMS WHICH MAY BE ASSERTED AGAINST ANY INDEMNIFIED PARTY BY AN EMPLOYEE OR FORMER EMPLOYEE OF SUBCONTRACTOR FOR WHICH SUBCONTRACTOR'S LIABILITY TO SUCH EMPLOYEE OR FORMER EMPLOYEE WOULD OTHERWISE BE LIMITED TO PAYMENTS UNDER STATE WORKERS' COMPENSATION OR SIMILAR LAWS.   IN FURTHERANCE TO, BUT NOT IN LIMITATION OF, THE INDEMNITY PROVISIONS IN THIS AGREEMENT, SUBCONTRACTOR HEREBY EXPRESSLY AND SPECIFICALLY AGREES THAT ITS OBLIGATIONS TO DEFEND, INDEMNIFY AND HOLD HARMLESS THE INDEMNIFIED PARTIES SHALL NOT IN ANY WAY BE AFFECTED OR DIMINISHED BY ANY STATUTORY OR CONSTITUTIONAL IMMUNITY IT ENJOYS FROM SUITS BY ITS OWN EMPLOYEES OR FROM LIMITATIONS OF LIABILITY UNDER STATE WORKERS' COMPENSATION LAWS.

(b)   SUBCONTRACTOR SHALL, AT ITS OWN EXPENSE, DEFEND THE INDEMNIFIED PARTIES AGAINST ANY CLAIM, OR ANY LEGAL PROCEEDING WHICH MAY INVOKE   SUBCONTRACTOR'S   OBLIGATIONS   UNDER   THIS   AGREEMENT. SUBCONTRACTOR'S DUTY TO DEFEND THE INDEMNIFIED PARTIES SHALL APPLY WHETHER SUCH CLAIM OR LEGAL PROCEEDING IS BROUGHT ONLY AGAINST ANY OR ALL OF THE INDEMNIFIED PARTIES, EITHER SEPARATELY OR JOINTLY WITH SUBCONTRACTOR.   SUBCONTRACTOR SHALL REIMBURSE EACH INDEMNIFIED PARTY FOR ANY LEGAL EXPENSES AND ATTORNEYS' FEES INCURRED IN ENFORCING SUBCONTRACTOR'S OBLIGATIONS AND/OR THE INDEMNITY GRANTED TO THEM UNDER THIS AGREEMENT.

(c)   SUBCONTRACTOR SHALL OBTAIN INSURANCE SUFFICIENT TO COVER ITS INDEMNITY OBLIGATIONS IN THIS PARAGRAPH, BUT THE COVERAGE OF ANY INSURANCE POLICY REQUIRED HEREIN OR ACTUALLY CARRIED BY SUBCONTRACTOR SHALL NOT LIMIT THE EXTENT OF SUBCONTRACTOR'S LIABILITY UNDER THE FOREGOING INDEMNITY. SUBCONTRACTOR'S OBLIGATIONS UNDER THIS SUBCONTRACT, AND SPECIFICALLY THIS PARAGRAPH, SHALL SURVIVE THE TERMINATION OF THE SUBCONTRACTOR OR THE SUBCONTRACT FOR ANY REASON.

**Section 8.**      **Contract Amount.**  Contractor shall pay Subcontractor the prices and costs for work, materials, and supplies only as set forth in Exhibit A, or as specified in a Work Order, as consideration for Subcontractor's compliance with the covenants, conditions and terms of this Agreement, including, but not limited to, Subcontractor's full performance of the Work in accordance with the Contract Documents.  Subcontractor shall not be entitled to any increase in the contract amount unless a Change Order has been accepted by the parties.  Subcontractor shall not be entitled to any increase in the contract amount due to price escalation of materials and/or labor costs.

DocuSign Envelope ID: 3C7B513F-F0C4-4D09-A2C8-ED0444C532B7

**Section 9.** **Conditions Precedent to Payment.** As a condition precedent to Subcontractor's right to receive payment:

(a)     Subcontractor shall have completed the Work in accordance with this Agreement, as determined in the sole discretion of Contractor and Project Owner, for which Subcontractor is requesting payment.

(b)     Subcontractor shall furnish Contractor with signed waivers of lien from all of its subcontractors and laborers complying with the requirements of all applicable mechanic lien laws and such other evidence as may be reasonably required by Contractor or Owner to substantiate payment.

(c)     Subcontractor shall keep full and detailed records to confirm compliance with the obligations of this Agreement in form satisfactory to Contractor.  Contractor shall be afforded access to, and shall be permitted to audit and copy, Subcontractor's records, books, correspondence, instructions, drawings, receipts, employment records, subcontracts, purchase orders, vouchers, memoranda and other data relating to this Agreement.  Subcontractor shall preserve such documents and records referred to herein for a period of three (3) years after final payment, or for such longer period as may be required by law.  Subcontractor agrees that the auditor of the state in which the Work is performed or any authorized representative of the state, and, where applicable, the Comptroller General of the United States or any other representatives of the United States Government, shall have access to and the right to examine, audit, excerpt and transcribe any directly pertinent books, documents, papers and records of Subcontractor relating to orders, invoices, payments or Subcontractor's performance pursuant to this Agreement. Subcontractor shall not impose any charges for access to its books and records regarding its performance under this Agreement, and shall fully cooperate with authorized representatives in the examination or audit of books and records.

(d)     Contractor shall have received payment from Owner for the applicable Work. In the event the Owner's nonpayment is due to Contractor's failure to meet its obligations set forth in the Primary Contract, and such failure is not due to Subcontractor's failure to meet its obligations pursuant to the Contract Documents, the Contractor accepts the risk of nonpayment by the Owner, and Subcontractor will be paid within a reasonable amount of time. In the event the Owner's nonpayment is due to any other reason, Subcontractor accepts the risk of nonpayment, and Subcontractor waives all right to commence litigation or arbitration against Contractor for any such non-payment. Subcontractor's sole and exclusive remedy for such non-payment shall be assignment to the Subcontractor of Contractor's pass-through claim against the Owner. Nothing contained in this provision affects the rights of the Contractor to assert any deductions, offsets or back charges under other provisions of this Subcontract.

(e)     Subcontractor has verified that all workers assigned to Contractor's work site have a valid driver's license, meeting all driving requirements of the issuing state and Department of Transportation ("DOT"), when applicable.

(f)     All paperwork required by Contractor from Subcontractor has been completed, submitted to, and approved by Contractor.  "Required paperwork" shall include but not be limited to (a) a Form W-9, (b) this Agreement, and (c) a proper certificate of insurance.

(g)     Subcontractor shall have procured and maintained, and ensured its subcontractors shall have procured and maintained, the proper policies of occurrence base Insurance, with coverages and limits of liability as required herein, for the full duration of the Work.

*(h)     Notwithstanding anything to the contrary contained herein, Contractor may, in its sole and absolute discretion, elect to hold all or any portion of any payments due Subcontractor for*

7

DocuSign Envelope ID: 3C7B513F-F0C4-4D09-A2C8-ED0444C532B7

*as long as Contractor feels is reasonable necessary if Subcontractor's work is substandard or defective or if Contractor reasonably believes any work performed by Subcontractor may be subject to warranty, damage or other claims by Owner or anyone having a claim against Subcontractor's performance or non-performance of the Work or its obligations under this Agreement.*

**Section 10. Payment Procedure.** Subcontractor agrees that the following payment procedure shall govern all payments made hereunder:

(a) *Invoicing.* No later than Monday of each week, Subcontractor is to submit an invoice or daily billing sheet for the portion of the Work completed through the preceding Saturday. The invoice or daily billing sheet shall be prepared in duplicate and submitted to Contractor's supervisor for review and approval. After approval, Contractor shall pay Subcontractor within thirty (30) days for the invoice generated or presented, less the amount set forth in Exhibit B (the "Retainage"). As a material part of the consideration under this Agreement, Subcontractor agrees to satisfy any Deficiencies in Retainage (as hereinafter defined) out of or from any Retainage held or owed to Contractor as a result of Work performed hereunder or being performed by Subcontractor under a separate agreement. This provision will survive the termination of this Agreement for one (1) year. Acceptance of final payment by Subcontractor shall act as a release of all claims of Subcontractor or any person claiming under or through Subcontractor against Owner, Contractor, Contractor's surety, if any, in any way related to the Work. As used herein, "Deficiencies in Retainage" shall mean an insufficient amount of Retainage withheld under this Agreement to satisfy any and all claims that result from the performance or non-performance of the Work, regardless of whether such deficiencies become known to Contractor or Owner after final acceptance of the Work. As set forth more specifically in Section 9(c) above, as a condition precedent to Contractor's payment for the invoice(s), Owner must first accept the Work performed by Subcontractor and pay Contractor for the Work. In the event Subcontractor requests payment earlier than the thirty (30) day period set forth in this paragraph, provided Contractor makes payment within ten (10) days from the approved invoice date, Contractor will be entitled to a two percent (2%) discount on each such invoice.

(b) *Payments Held in Trust.* Subcontractor shall hold all payments made to it by Contractor in a trust account to be applied first to the payment of its employees, subcontractors, laborers, and suppliers of materials or services used for or in connection with the Work, including, without limitation, any amount payable in taxes on account of the Work or labor supplied and to any applicable employee benefit plan. Subcontractor shall apply all payments from Contractor in the preceding manner before using any part thereof for any other purpose.

(c) *Joint Checks.* Contractor shall have the right, at its sole discretion, to make any payments to be made hereunder in the form of checks payable jointly to Subcontractor and any unpaid sub-subcontractor, suppliers or materialman. If Subcontractor shall fail to pay when due any payments for labor, supplies, materials or services furnished in connection with the performance of the Work, Contractor may, but shall not be obligated to, after five (5) days written notice to Subcontractor, directly pay the amount of such liabilities and recover the amount thereof from Subcontractor, directly or by the deduction of such sum from any amounts then or thereafter due to Subcontractor hereunder. If the remaining contract amount is insufficient to cover such costs, Subcontractor shall reimburse such costs to Contractor immediately upon written demand therefor.

(d) *Right to Withhold Payment for Defective Work.* In addition to Retainage, Contractor shall have the right to withhold payment for defective Work not remedied, failure of the Work to conform to the Contract Documents or other failure of Subcontractor to comply with the terms and conditions of the Contract Documents. Contractor shall be entitled to withhold such amount as may be necessary, in Contractor's good faith opinion, to protect Contractor from loss due to such defects, non-performance or failure to comply with the Contract Documents. If such deficiencies are not promptly

8

DocuSign Envelope ID: 3C7B513F-F0C4-4D09-A2C8-ED0444C532B7

corrected after Contractor provides written notice to Subcontractor, Contractor may correct such deficiencies at Subcontractor's expense and deduct all costs incurred from payment due to Subcontractor. The withholding by Contractor of any amounts otherwise due to Subcontractor shall not enable Subcontractor to stop the Work or terminate this Agreement.

(e)      *Right to Deduct Payment for Contribution to Pollution Liability Insurance Program.* For each calendar year or any part thereof that this Agreement remains in effect, Contractor reserves the right to deduct from amounts due to Subcontractor hereunder a payment for Subcontractor's contribution (the "Insurance Contribution") to a pollution liability insurance program, ("PLIP"), in such amount as Contractor deems necessary to fully reimburse Contractor for Subcontractor's pro-rata share of the cost of the PLIP. Such deduction is generally expected to be made once per calendar year, but the frequency thereof is subject to change without notice to Subcontractor. Each date on which such deduction is made is referred to as a "Deduction Date". To the extent that there are no amounts due and payable to Subcontractor on any Deduction Date, Contractor shall invoice Subcontractor for Subcontractor's Insurance Contribution and Subcontractor shall remit payment for such Insurance Contribution to Contractor within thirty (30) days of the date of such invoice. Contractor reserves the right, if deemed necessary by Contractor in its sole discretion, to deduct Subcontractor's Insurance Contribution from any Retainage held or owed to Contractor as a result of Work performed hereunder or being performed by Subcontractor under a separate agreement.

**Section 11.      Insurance.** Before Contractor makes any payment to Subcontractor under this Agreement and before Subcontractor performs any Work, Subcontractor shall deliver to Contractor certificates of insurance in accordance with the policies, coverages and limits of liability set forth on Exhibit C. Subcontractor waives all rights against Contractor and Owner, their agents, officers, directors and employees for recovery of damages to the extent these damages are covered by commercial general liability, commercial umbrella liability, business auto liability, or workers' compensation and employers' liability insurance maintained per the requirements stated in Exhibit C.

**Section 12.      Subcontractor's Covenants and Representations.** Subcontractor, in addition to its obligations as set forth in the Contract Documents, covenants, represents and warrants to Contractor that:

(a)      Subcontractor shall not permit employment either directly or indirectly of unfit persons or persons not skilled in tasks assigned to them. Subcontractor shall fully comply with any written certification policy promulgated by Contractor, whether such certification policy applies to requirements for operating certain types of equipment, performing certain kinds of tasks or any other matter. Subcontractor shall not allow any worker to perform a job for which he or she is not certified if certification is required by law. Subcontractor shall ensure that its employees, agents and representatives shall not engage in actions that may detrimentally affect Contractor's reputation. Subcontractor personnel are prohibited from carrying weapons or ammunition onto Contractor's or Owner's premises or using or carrying weapons while performing assigned work.

(b)      Subcontractor shall be exclusively responsible for the occupational safety and health of its employees and agents while engaged in the performance of the Work, shall protect against property damage and personal injury at all locations, and shall take all reasonable safety precautions with respect to its performance of this Agreement and represents that it shall take all necessary precautions while performing its work to ensure the safety of its employees, and the employees of other subcontractors or entities on the job site. Subcontractor shall follow all requirements of Contractor's and Owner's safety policies and ensure compliance with the Occupational Safety and Health Act of 1970 ("OSHA") and all regulations issued thereunder; all applicable state occupational safety and health acts and any applicable regulations promulgated thereunder; and any other lawful orders of any public authorities bearing on the safety of persons or property or their protection from damage, injury or loss; as well as any

DocuSign Envelope ID: 3C7B513F-F0C4-4D09-A2C8-ED0444C532B7

safety or health programs published by Contractor or Owner. Contractor reserves the right to give Subcontractor notice of any unsafe employees from the job site and Subcontractor shall remove such employees within the time specified by such notice. Contractor shall have the right to stop the Work and/or correct such practices, equipment or devices at Subcontractor's expense. Subcontractor shall employ competent persons on each job site capable of identifying unsafe hazards and whose duty shall be to ensure that OSHA and the regulations issued under OSHA and all other laws, regulations, customs and practices are followed and that all reasonable steps necessary to avoid or abate any hazards associated with the Work are taken. Such persons shall have the authority to take prompt corrective measure to correct such hazards, to receive notices of unsafe work practices, equipment, devices or employees as provided herein and to carry out the responsibilities of a "competent" or "qualified" person as required by law or regulation.

(c)     If hazardous substances of a type of which an employer is required by law to notify its employees are being used by Subcontractor, its sub-subcontractors or anyone directly or indirectly employed by them, Subcontractor shall, prior to harmful exposure of any employees on the site to such substance, give written notice of the chemical composition thereof to Contractor in sufficient details and time to permit compliance with such laws by Contractor and other contractors and subcontractors and other employers on the site.

(d)     In the event Subcontractor encounters on the site materials reasonably believed to be asbestos or polychlorinated biphenyl (PCB) which have not been rendered harmless, Subcontractor shall immediately stop its work in the area affected and report the condition to Contractor in writing. Subcontractor's work in the affected area shall resume in the absence of asbestos or PCB, or when it has been rendered harmless by Owner, by written agreement of Contractor and Subcontractor, or in accordance with final determination by Owner.

(e)     Without limiting and in addition to the indemnity described in Section 7, Subcontractor agrees to indemnify and hold harmless Contractor for all claims, citations, complaints, damages, fines, penalties, attorney fees and costs arising under or connected with OSHA and the regulations issued thereunder, or any of the other laws, regulations, customs, and practices associated therewith, which amounts may be deducted from monies due Subcontractor. If the remaining contract amount is insufficient to cover such costs, Subcontractor shall reimburse such costs to Contractor immediately upon written demand therefor.

(f)     Subcontractor shall maintain any applicable state contractor's license necessary to perform the Work and, upon Contractor's request, provide Contractor with evidence of such license.

(g)     Subcontractor affirms that all employees, laborers and contractors rendering services to Contractor have completed IRCA I-9 verification and that Subcontractor is responsible for re-verifying employment eligibility per the Form I-9 where applicable.

(h)     All individuals performing Work have valid drivers' licenses, meeting all federal (including DOT where applicable), state, and local laws.

(i)     For each of the employees that Subcontractor wishes to assign to perform Work for Contractor, Subcontractor shall certify to Contractor that it has conducted (or caused to be conducted) a background check as described herein (collectively referred to as "background checking"). For purposes of this Section 12(i) and its related subsections below, "employee" shall include Subcontractor's employees and any of Subcontractor's contract personnel; and "assign" shall include training for Work to be provided to Contractor, unless otherwise agreed to by Contractor. Where permitted by law and to the extent required by Owner, Subcontractor shall conduct one or more of the following: (i) a Federal and state check for felony and misdemeanor criminal convictions (or the equivalent thereof under relevant

DocuSign Envelope ID: 3C7B513F-F0C4-4D09-A2C8-ED0444C532B7

law) in all locations where the assigned employee has resided, has been employed, or has attended school in the immediately preceding seven (7) years, (ii) a check of U.S. Government Specially Designated National (OFAC) and export denial lists, (iii) a check of the employee against the National/State Sex Offender Registry, (iv) drug testing consisting of an eleven-panel urine analysis drug screen, (v) verification of the highest college diploma, degree or certificate earned, (vi) verification of employment history, (vii) verification of the name to which the employee's Social Security Number is attributed and (viii) verification of the employee's legal right to work.

      i.  Subcontractor shall comply with all applicable laws in conducting the background check specified in this Section 12(i), including but not limited to securing from each employee who performs Work for Contractor such employee's written consent to perform the background checking specified in this Section 12(i) and to disclose the results thereof to Contractor upon Contractor's request.

      ii.  Without prior review and consent of Contractor, Subcontractor shall not assign any employee to perform Work for Contractor if such employee (a) has been convicted of a felony within the last seven (7) years or a misdemeanor (or the equivalent thereof under relevant law) within the last three (3) years, which, following a review under applicable law and considering all relevant facts and circumstances, Subcontractor concludes the circumstances of which are directly job-related to the assignment at the Contractor and therefore makes the employee unsuitable for that assignment at the Contractor, or is on the national or any state Sex Offender Registry, or for whom a warrant is outstanding, or for whom a felony or misdemeanor charge is currently pending, or is on a U.S. Government Specially Designated National or export denial list, or (b) has a confirmed positive test result from the drug screening in Section 12(i)(iv) above, or (c) does not have the legal right to work in the jurisdiction in which the employee will be performing Work for Contractor.

      iii.  Subcontractor understands and agrees that in accordance with Section 13(d), to the extent that the Contract Documents (including specifically, any requirements of Owner set forth therein with respect to background checks), provide for any background check procedures which are more restrictive than the background check procedures set forth above, such more restrictive background check procedures shall govern Subcontractor's obligations with respect thereto.

      (j)  Should the Work involve excavation or construction, Subcontractor shall timely notify all utility companies and others who may have underground facilities in the vicinity of the Work. Subcontractor shall obtain appropriate information on the location of buried cable and utilities prior to performing any Work.  Subcontractor shall locate, expose, and protect from damage all existing underground facilities, including electrical, telephone, water, gas, sewer or other utilities.  Subcontractor has assumed the risk of damage to underground facilities in its price and shall not beentitled to any extra or additional compensation with respect thereto.  Subcontractor is responsible for maintaining locate tickets until the Work is complete.  Subcontractor must notify Contractor and the owner of the damaged facility as soon as possible after damage occurs.  Subcontractor shall comply with all federal, state, and local laws regarding the location of underground utilities, as well as excavation or construction services.

      (k)  Subcontractor hereby absolutely waives and releases any and all liens, claims or right to file a lien on all Contractor or Owner properties, real and personal, including, but not limited to, equipment, buildings, lines, and poles, upon which Subcontractor or its employees, agents or subcontractors have performed labor or supplied material (or both), pursuant to statutes of the state where the Work was performed relating to mechanic's liens.  At any time, as a condition precedent to any payment to Subcontractor, Contractor may require Subcontractor to execute or have executed by any of its sub-subcontractors, suppliers or materialman, a lien or bond waiver form.

11

DocuSign Envelope ID: 3C7B513F-F0C4-4D09-A2C8-ED0444C532B7

(l)      In the event that any lien or other encumbrance of any kind is placed on the materials or Work provided by Subcontractor or any person acting at Subcontractor's direction or directly or indirectly on Subcontractor's behalf, such occurrence shall be deemed a breach of this Agreement. In such case, Contractor may terminate this Agreement without any liability to Subcontractor, except for Work already furnished and accepted by Contractor. Subcontractor agrees to reimburse Contractor for any additional costs incurred by Contractor due to such occurrence, in addition to Subcontractor's obligations under Section 7 herein.

(m)      Subcontractor understands that the laws, requirements, and provisions from the Primary Contract flow down and are applicable to Subcontractor, the Work, Subcontractor's employees, Subcontractor's subcontractors, and their work. Subcontractor understands and agrees that such laws, requirements, and provisions cannot be amended or modified by Contractor or Subcontractor, unless done in writing and unless such modification does not conflict with the laws, requirements, and provisions applicable to the Primary Contract. Subcontractor further represents that it is not relying on Contractor regarding what federal, state, county, municipal, and local laws, ordinances, rules, regulations, codes, and any other orders of governmental or public authorities apply to the Work. Subcontractor further represents that it has had an opportunity to seek advice of counsel regarding what the laws may be and how to comply with such laws. Subcontractor also represents that it knows and understands that the laws may be amended and/or change from time to time, and that it is Subcontractor's responsibility to maintain compliance with the laws.

(n)      Subcontractor agrees to comply with Contractor's Supplier Code of Conduct and Contractor's Sustainable Procurement Policy, as each of the same may be updated from time to time.

**Section 13.      Subcontractor Submittals.**   Contractor may, at any time in its sole discretion, require from Subcontractor and Subcontractor shall submit to Contractor any of the following submittals (collectively, "Submittals") in a form satisfactory to Contractor:

(a)      Certificates from providers evidencing that all bonds and insurance required by the Contract Documents are in full force and effect;

(b)      Satisfactory evidence that Subcontractor is in compliance with all government, administrative, reporting or accounting requirements of the Contract Documents;

(c)      Satisfactory evidence that neither Subcontractor nor any person or entity claiming under or through Subcontractor has placed or has the right to maintain a lien or other claim against Owner, Contractor, Contractor's surety, if any, or the Work, including a sworn certification of payment and releases of liens filed by suppliers or persons working under or on behalf of Subcontractor on forms specified by Contractor;

(d)      Satisfactory evidence that all individuals performing Work have completed a background check and drug test in accordance with the terms herein and the Contract Documents;

(e)      Affidavit stating that all persons working for Subcontractor have been paid in full for any labor, materials, supplies or services provided in connection with the Work, including, without limitation, any taxes, benefits or government charges with respect thereto; and

(f)      Contractor may withhold payment of any invoice until Subcontractor provides a requested Submittal.

DocuSign Envelope ID: 3C7B513F-F0C4-4D09-A2C8-ED0444C532B7

**Section 14.**     **Assignment.**  Subcontractor shall not assign this Agreement nor subcontract the whole or any part of the Work or this Agreement without the written consent of Contractor. Subcontractor shall not assign any amounts due or that may become due under this Agreement without the written consent of Contractor.  Any such assignment without the consent of Contractor shall be void, and Contractor, at its option, may terminate this Agreement.  Contractor shall have the right to approve and/or remove any and all subcontractors of Subcontractor.

**Section 15.**     **Termination:**

(a)     *Termination for Cause.*  Subcontractor shall perform the Work in accordance with this Agreement and the Contract Documents so that the result contracted for is reasonably satisfactory to Contractor and Owner.  If Subcontractor fails within seven (7) calendar days following written notice by Contractor to fulfill Subcontractor's obligations under this Agreement, Contractor, in addition to any lawful remedies, may terminate this Agreement or Contractor may complete the Work or correct any deficiencies by alternate means.  As to the latter, if the expenses or costs borne or incurred by Contractor to complete the Work or correct any deficiencies exceed any amount due Subcontractor from Contractor under this Agreement, Contractor has the right to offset the amount due by excess expenses and seek any balance from Subcontractor.  Upon receipt of a written notice of termination, Subcontractor shall (i) suspend all operations at the site as directed by Contractor in the notice, (ii) take such action as is necessary or otherwise directed by Contractor to protect and preserve the Work, and (iii) to the extent possible without committing an act of breach, terminate all existing sub-subcontracts and purchase orders and refrain from entering into additional sub-subcontracts and purchase orders.

(b)     *Termination for Convenience.*  Contractor may terminate this Agreement if(i)Owner terminates the Primary Contract, or(ii)for Contractor's convenience. In the event of either (i) or (ii) above, Subcontractor's exclusive remedy shall be to receive payment for all conforming and accepted Work performed by Subcontractor up to the effective date of the termination.  Subcontractor shall not be entitled to receive payment for any work not performed and shall not be entitled to profit or overhead on work not performed.

(c)     Contractor may elect at any time to convert a termination for convenience into a termination for cause.

(d)     In the event Contractor terminates this Agreement for cause and it is later shown that Subcontractor was not in default as claimed by Contractor, such termination shall be converted to a termination for convenience as set forth in Section 15(b) and Subcontractor shall not be entitled to recover from Contractor any costs, fees, or any other expense which are not expressly allowed therein.

**Section 16.**     **Limitation on Remedy.**  In the event of a breach of this Agreement by Contractor, Subcontractor agrees that its sole and exclusive remedy shall be the recovery of actual and direct damages only.  In no event shall Contractor be responsible for consequential, multiple, indirect, incidental, exemplary, or punitive damages, or for any special statutory remedies, penalties or attorneys fees.

**Section 17.**     **Non-Competition and Non-Solicitation:**

(a)     For so long as Subcontractor is performing the Work and for a period of two (2) years after Subcontractor ceases performing the Work, for any reason whatsoever, Subcontractor shall not, either directly or indirectly, on Subcontractor's own behalf, or, on behalf of others, (i) engage in, own any interest in, manage, operate, gain control of, consult with, finance or otherwise participate in,(ii) solicit to or on behalf of any Competing Business (as hereinafter defined), or (iii) attempt to solicit, divert,

13

DocuSign Envelope ID: 3C7B513F-F0C4-4D09-A2C8-ED0444C532B7

or appropriate to or on behalf of any Competing Business, any business of Contractor from any customer of Contractor with whom Subcontractor has had material contact in furtherance of Contractor's business during the last two (2) years within which Subcontractor was performing the Work.

      (b)     The territory covered by this Section is the state or states in which Contractor, or its affiliates or subsidiaries, as applicable, conduct business.

      (c)     For the purposes of this Section:(i) "customer" shall mean a customer who has obtained products or services from Contractor within the last two (2) years and has not advised Contractor of a decision to no longer obtain products or services from Contractor, (ii)"material contact" shall mean contact between Subcontractor and the Customer that was intended to further the business relationship between Contractor and the customer, and (iii) "Competing Business" means any business organization of whatever form engaged, in whole or in relevant part, in any business or enterprise which is the same as, or substantially the same as, the business of Contractor, or any of Contractor's affiliates or subsidiaries, as applicable.

      (d)     Should any portion of this Section 17 be judicially held to be invalid or wholly or partially unenforceable, such holding shall not invalidate or void the remainder of this Section 17, the parties hereby agreeing that the part so held to be invalid or unenforceable shall be revised and reduced in scope so as to be valid and enforceable, or if such is not possible, then such part shall be deemed to have been stricken herefrom and the remainder of the document remain in place with the same force and effect as if such part or parts had never been included herein.

**Section 18.**    **Confidential Information and Trade Secrets:**

      (a)     Subcontractor will hold all Confidential Information (as hereinafter defined) in trust and strictest confidence, and will not use, reproduce, distribute, disclose, or otherwise disseminate Confidential Information, or any physical embodiments thereof, and may in no event take any action causing or fail to take action necessary in order to prevent any Confidential Information disclosed to or developed by Contractor to lose its character or cease to qualify as Confidential Information. This obligation commences when Subcontractor first comes into possession of Confidential Information and continues for a period of four (4) years after Subcontractor ceases performing the Work for which such Confidential Information was provided to or developed by Subcontractor or Contractor under this Agreement.

      (b)     During the term of this Agreement and following termination of it (until such time as they are no longer Trade Secrets under applicable state laws), Subcontractor will hold all Trade Secrets (as hereinafter defined) in trust and strictest confidence, and will not use, reproduce, distribute, disclose or otherwise disseminate the Trade Secrets, or any physical embodiments thereof, and may in no event take any action causing or fail to take action necessary in order to prevent any Trade Secrets disclosed to or developed by Subcontractor to lose its character or cease to qualify as Trade Secrets.

      (c)     "Confidential Information" means information related to the operation and business of Contractor, which derives economic value, actual or potential, from not being generally known to or readily ascertainable by others, and which is not a Trade Secret. Assuming the foregoing criteria are met, Confidential Information includes, but is not limited to, the following: compilations of information concerning pending or potential transactions within the business of Contractor that if pursued by Contractor would or could result in a fee or income to Contractor; compilations of information concerning Contractor's customers and prospective or potential customers; compilations of service manuals; Contractor's pricing information; compilation of information related to Contractor's vendors and suppliers, including the identity of Contractor's vendors and suppliers; compilation of Contractor's vendor

DocuSign Envelope ID: 3C7B513F-F0C4-4D09-A2C8-ED0444C532B7

and supplier pricing; Contractor's financial, marketing and sale information; proposals submitted to customers or potential customers of Contractor, including the services requested or preferred by Contractor's customers; Contractor's methods and procedures of operation; the composition, description, schematic or design of software or other products, future products or equipment of Contractor; communication systems, audio systems, system designs and related documentation; systems, processes and methodologies used by Contractor to conduct the business of Contractor; and the amounts paid by Contractor's customers for services rendered by Contractor.   Confidential Information shall also include information which has been disclosed to Contractor by any third party, and, as to which, Contractor has an obligation to the third party to treat as confidential.

(d)     "Trade Secrets" means all information that constitutes trade secrets as defined by the Uniform Trade Secrets Act and other applicable laws of the state where the Work is conducted.

**Section 19.     Notices.** All notices, requests, claims, demands, and other communications under this Agreement shall be in writing and shall be given by delivery in person, facsimile or registered or certified mail to the respective parties at the following addresses:

<u>If to Contractor:</u>

Ervin Cable Construction, LLC

P. O. Box 10 – 450 Pryor Blvd

Sturgis, KY 42459

| | |
|---|---|
| Attention: | Brad Ervin |
| Office: | 270-333-3366 |
| Fax: | 714-276-6176 |
| Email: | bervin@ervincable.com |

<u>If to Subcontractor:</u>

Executive Vice President

(Name of Company)

Address:
425 Griffin Road

Youngsville, LA 70592

| | |
|---|---|
| Attention: | Jody Broussard |
| Office: | 337-857-6000 |
| Fax: | 337-857-6001 |
| Email: | jjbroussard@qualitycompanies.com |

**Section 20.     Amendment.** This Agreement may be amended only by a written instrument signed by Contractor and Subcontractor.

**Section 21.     Waiver of Breach.** The waiver by either party of a breach of any provision in this Agreement shall not operate or be construed as a waiver by such party of any subsequent breach.

**Section 22.     Headings.** The descriptive headings in this Agreement are included for convenience of reference only and shall not affect in any way the meaning or interpretation of this Agreement.

**Section 23.     Counterparts.** This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which taken together shall constitute one and the same Agreement.

15

DocuSign Envelope ID: 3C7B513F-F0C4-4D09-A2C8-ED0444C532B7

**Section 24.     Entire Agreement.** This Agreement constitutes the entire agreement between the parties concerning the subject matter of this Agreement and supersedes any and all prior and contemporaneous agreements between the parties relating to the subject matter of this Agreement. There are no courses of dealing, courses of performance or usages of trade which constitute a portion of the parties' agreement-in-fact.

**Section 25.     Governing Law.**   The interpretation, construction and enforcement of this Agreement shall be governed by the laws of the jurisdiction where the Work is to be performed under this Agreement.

**Section 26.     Facsimile Signature.**   Any party transmitting its signature by facsimile or portable document format (".pdf") shall be deemed to have accepted and adopted such facsimile or .pdf signature as such party's original signature and that same is sufficient to bind such party to this Agreement as if such party's original handwritten signature is attached hereto. It is the intention of the parties, however, that a facsimile or .pdf signature is binding from the time it is telecopied or transmitted for attachment to this Agreement and that any person may rely on the authority thereof for implementing the provisions of this Agreement.

**Section 27.     Remedies.** Duties and obligations imposed by this Agreement and the Contract Documents, and the rights and remedies available thereunder, shall be in addition to, and not a limitation of, duties, obligations, rights and remedies otherwise imposed or available by law. Contractor's remedies shall be cumulative and Contractor's failure to exercise a particular remedy shall not constitute a waiver of a right or duty afforded Contractor herein or pursuant to applicable law. Subcontractor agrees that the covenants contained in this Agreement are reasonable and necessary to protect and preserve the interests and properties of Contractor and the business of Contractor; and that irreparable loss and damage will be suffered by Contractor should Subcontractor breach any of such covenants. Therefore, Subcontractor agrees and consents that, in addition to all the remedies provided at law or in equity, Contractor shall be entitled in a court of law to a temporary restraining order and temporary and permanent injunctions to prevent a breach or threatened breach of any of the covenants. Subcontractor waives and will not (i) assert any defense that Contractor has an adequate remedy at law with respect to the breach, (ii) require that Contractor submit proof of the economic value of any Trade Secret or Confidential Information, or (iii) require Contractor to post a bond or any other security. Further, Contractor and Subcontractor acknowledge and agree that any claims by Subcontractor against Contractor hereunder or otherwise shall not constitute a defense to injunctive relief as to the enforcement of this Agreement. In the event that Contractor is forced to bring suit to enforce the provisions of this Agreement, Contractor shall be entitled to recover attorneys' fees and costs of litigation in addition to all other remedies available at law or in equity.

**Section 28.     Survival.** As set forth herein, the following clauses shall survive the termination of this Agreement or the completion of the Work:  Section 3 - Warranty; Section 7 - Indemnity/Duty to Defend; Section 9 - Conditions Precedent to Payment; Section 17 - Non-Competition and Non-Solicitation; and Section 18 -Confidential Information and Trade Secrets.

**Section 29.     Severability.** Contractor and Subcontractor agree that each of the provisions included in this Agreement is separate, distinct, and severable from the other and remaining provisions of this Agreement, and that the invalidity or unenforceability of any Agreement provision shall not affect the validity or enforceability of any other provision or provisions of this Agreement. If any provision of this Agreement is found by any court with jurisdiction to be less than fully enforceable, then each such provision shall be deemed amended or modified to the fullest extent permitted under applicable law. The existence of any claim, demand, action, or cause of action of Subcontractor against Contractor shall not

16

DocuSign Envelope ID: 3C7B513F-F0C4-4D09-A2C8-ED0444C532B7

constitute a defense to the enforcement by Contractor of any of the covenants or obligations of Subcontractor set forth in this Agreement.

      **Section 30.**     **Waiver.** The waiver by Contractor of any breach hereof by Subcontractor shall not constitute a waiver of any subsequent breach of the same or any other provision.

      The parties have executed this Agreement as of the date indicated above.

CONTRACTOR:                   SUBCONTRACTOR: Executive Vice President

ERVIN CABLE CONSTRUCTION, LLC

By: _Brad Ervin_                By: _Jody Broussard_

Name: Brad Ervin                 Name: Jody Broussard

Title: President                    Title: Executive Vice President

Date Signed: 6/12/2017           Date Signed: 6/12/2017

                                           Subcontractor's Taxpayer Identification Number: 52-2363317

DocuSign Envelope ID: 3C7B513F-F0C4-4D09-A2C8-ED0444C532B7

## Exhibit A

### Retainage

(a)     In accordance with Section 10, Contractor shall pay Subcontractor for each invoice presented, less 10 %[1] (the "Retainage").  Payment of Retainage (less any amounts previously withheld or deducted) shall be made within thirty (30) days after all of the following conditions precedent are satisfied:

(i)     Completion of the Work in accordance with this Agreement, as determined in the sole discretion of both Contractor and Owner; and

(ii)     Final payment made to Contractor by Owner of all sums owed to Contractor under the Primary Contract and any amendments thereto.

(b)     Subcontractor agrees that Contractor may use all or any portion of the Retainage to satisfy any and all claims, including without limitation claims for workmanship, that result from the performance or non-performance of the Work.

(c)     If the amount in the introductory paragraph of this Exhibit is left blank, the parties agree that no Retainage will be held.

---

[1] 10% Retainage is strongly recommended in light of the provisions of §53.101 of the Texas Property Code.

DocuSign Envelope ID: 3C7B513F-F0C4-4D09-A2C8-ED0444C532B7

**Exhibit B**

**Pricing**

See Attached Pricing.

DocuSign Envelope ID: 3C7B513F-F0C4-4D09-A2C8-ED0444C532B7

## Exhibit C

### Subcontractor Insurance Requirements

(a)     Subcontractor shall procure and maintain at its expense during the term of this Agreement the following policies, coverages and limits of liability in all states where Work is to be performed from an insurer (or insurers) with Bests Rating "A-VIII" or better and otherwise acceptable to the Contractor and licensed to do business in such state(s). The Contractor specifically reserves the right to reject coverage provided by certain insurance companies not acceptable to the Contractor.  If the Primary Contract requires additional coverage or limits higher than those stated below, then the insurance requirements of the Primary Contract will apply:

(i)     *Workers' Compensation and Employers Liability Insurance*  in all jurisdictions in which Subcontractor will be performing work or operations will be conducted, by "All States Endorsement," with the following minimum limits of liability and coverage endorsements:

Workers Compensation - Coverage A - Statutory Coverage Employers Liability

- $1,000,000 each accident
- $1,000,000 each employee by disease
- $1,000,000 policy limit by disease

If applicable, the policy shall be endorsed to contain the following coverage endorsements:

- United States Longshoreman's and Harbor Workers (USL&H) coverage endorsement
- waiver of subrogation where permitted by law
- alternate employer endorsement

Subcontractor shall furnish to Contractor the "Declaration" or "Information" page from Subcontractor's workers compensation policy evidencing, in items 3(a) and (c) on the page, the states in which Subcontractor has workers compensation coverage on an ongoing basis. Subcontractors who fail to provide the Declaration or Information page listing the required workers compensation coverage will not be approved for work on Contractor's or Project Owner's projects.

(ii)    *Commercial General Liability* with broad form coverage, which includes coverage for settlement, collapse, explosion, underground hazards, bodily injury and property damage, personal/advertising injury, contractual liability and product/completed operations, with the following minimum limits of liability and coverage endorsements:

- $1,000,000 each occurrence
- $2,000,000 general aggregate
- $2,000,000 products/completed operations aggregate
- $1,000,000 personal injury and advertising injury liability

The policy shall be endorsed to contain the following coverage endorsements:

- waiver of subrogation (CG 24 04 or an equivalent form)
- severability of interest (separation of insureds)

DocuSign Envelope ID: 3C7B513F-F0C4-4D09-A2C8-ED0444C532B7

(iii)    *Commercial Automobile Liability* with the following minimum limits of liability and coverage endorsements:

- $1,000,000 Combined Single Limit (each accident)

The policy shall be endorsed to contain the following coverage endorsements:

- coverage must be included for owned, leased and non-owned vehicles *(an "any auto" policy)*
- waiver of subrogation
- severability of interest (separation of insureds to be included in the definition of "Insured")

(b)       The insurance limits set forth in this Exhibit may be satisfied by a combination of Primary and Umbrella or Excess Liability Policies. All policies (except the Workers' Compensation and Employers' Liability Policy) shall name (i) Contractor, its direct and indirect parent(s), subsidiary(ies) and affiliated companies, their respective officers, directors, stockholders, employees, and agents, and (ii) Owner, in each case as an Additional Insured. The General Liability and any Umbrella or Excess Liability policies shall utilize form CG 20 10 or an equivalent form (Additional Insured endorsement applicable to ongoing operations) and the current edition of form CG 20 37 or an equivalent form (Additional Insured endorsement applicable to completed operations). The policies shall be endorsed to provide coverage to these additional insureds on a primary (non-contributory) basis without seeking contribution from any other insurance or self insurance available to the Additional Insured. If any Umbrella or Excess Liability Policies are used to satisfy the insurance requirements, they must be specifically endorsed to state that their coverage is primary and non-contributory to any insurance carried by the additional insured. This must be so stated on the certificate of insurance as required by (d) below.

(c)       If any Work is to be conducted within fifty (50) feet of a railroad or railroad right of way, any exclusions relating to railroads must be deleted from both the exclusions section and the definition of an insured contract. Evidence that the exclusions have been deleted (attach form CG 24 17 or an equivalent form) must be provided to Contractor.

(d)       Prior to commencement of any Work, Subcontractor shall furnish to Contractor insurance certificates in a form acceptable to Contractor evidencing compliance with the foregoing requirements and stating that the insurers will provide thirty (30) day written notice of cancellation or material alteration in any of the required policies of insurance. ***Copies of all endorsements, including, but not limited to, the Additional Insured endorsements shall be attached to the certificate of insurance.*** A copy of the schedule of forms from the General Liability policy must be attached to the certificate of insurance. The contractor reserves the right to reject any insurance coverage that contains forms or exclusions that are not acceptable to the contractor. All policies shall be written on an occurrence basis. If requested by Contractor, Subcontractor will provide Contractor with certified copies of the policies within thirty (30) days of the request. The provision of the foregoing insurance requirements shall be a condition precedent to any obligation of Contractor to make payment to Subcontractor.

(e)       If any of the policies required by this Exhibit contain deductibles or self insured retentions, the deductibles or self insured retentions will be the sole responsibility of Subcontractor and coverage will apply to Contractor, Owner and all Additional Insureds, all as though the policies were written on a "first dollar" basis.

DocuSign Envelope ID: 3C7B513F-F0C4-4D09-A2C8-ED0444C532B7

(f)     If any Work is to be performed in a jurisdiction where Subcontractor is insured for workers compensation through an "assigned risk pool", the certificate provided to Contractor shall indicate that the coverage is provided through the "assigned risk pool".

(g)     Contractor reserves the right to adjust insurance coverage requirement limits to comply with specific limits established from time to time by Owner.

(h)     All policies shall be written on an occurrence basis; claims made policies are not acceptable.

(i)     Any amendment to the "standard exclusion f." of the Commercial General Liability Form is not acceptable.

(j)     Contractor reserves the right to reject any insurance coverage that contains forms or exclusions that are not acceptable to Contractor.

Subcontractor hereby authorizes and grants to Contractor the unequivocal right to contact Subcontractors insurance agent(s) or underwriter(s) and to discuss any aspect of Subcontractors insurance policies, limits of liability, coverage endorsements and/or any requirements hereunder. Notwithstanding Contractors right to contact and discuss the insurance requirements, Contractor assumes no responsibility or liability for Subcontractors compliance or noncompliance with Contractor's or Project Owner's insurance requirements which may be established from time to time. It is and shall remain Subcontractors sole responsibility to comply with any and all insurance requirements and provide the appropriate coverage limits.

Any subcontractor or other party performing Work on the Project under Subcontractor shall, in addition to securing its or their own policy of insurance with the types and limits described hereinabove, also provide the following insurance coverage naming Contractor and Project Owner as additional insureds:

*Contractor's Pollution Liability* covering environmental liability arising out of the Work and/or as might be required by federal, state, regional, municipal or local laws, including damages arising out of "bodily injury" or "property damage" "clean-up costs", civil fines, civil penalties, and civil assessments. With the following minimum limits of liability and coverage endorsements:

- $1,000,000 Each Incident
- $1,000,000 Aggregate

DocuSign Envelope ID: 3C7B513F-F0C4-4D09-A2C8-ED0444C532B7

## EXHIBIT D

## UNCONDITIONAL LIEN WAIVER

The undersigned, _____("Subcontractor") pursuant to that certain Subcontractor Agreement dated _____ by and between Subcontractor and ERVIN CABLE CONSTRUCTION, LLC to perform certain work for _____ (Name of Project Owner or Project) in connection with Job No._____, for and in consideration of One Dollar ($1.00) and other valuable consideration, the receipt and sufficiency of which is hereby acknowledged, does hereby absolutely waive and release any and all liens, claims or right to file a lien on all properties of whatsoever description and kind, real and personal, including, but not limited to, equipment, buildings, lines and poles, upon which Subcontractor or its employees, agents or subcontractors have performed labor or supplied material (or both), pursuant to statutes of the state where the work was performed relating to Mechanic's Liens, from the date of the Agreement through _____, 20__.    This waiver shall not release ERVIN CABLE CONSTRUCTION, LLC from its contractual obligations to Subcontractor, but Subcontractor agrees to absolutely and unconditionally waive any right to a Mechanic's Lien or other claim against _____(Name of Project Owner or Project), its affiliates or subsidiaries.

WITNESS our hands this ___ day of _____, 20__.

### SUBCONTRACTOR:

_____

(print name of your company)

By:_____
     Signature

Title:_____

WITNESS

_____

ACORD CERTIFICATE OF LIABILITY INSURANCE

QUALI-3  OP ID: MICA

DATE (MM/DD/YYYY): 06/12/2017

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW.  THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: Mica Baudoin |
|---|---|
| Howard Risk Advisors, LLC | PHONE (A/C, No, Ext): 337-704-0610  FAX (A/C, No): 337-704-0417 |
| 201 West Vermilion, Ste. 200 | |
| Lafayette, LA 70501 | E-MAIL ADDRESS: mbaudoin@howardrisk.com |
| Judi Louviere | |

| | INSURER(S) AFFORDING COVERAGE | NAIC # |
|---|---|---|
| | INSURER A : Liberty Mutual Insurance Co. | 23043 |
| INSURED  Quality Companies USA, LLC; | INSURER B : Navigators Insurance Co | |
| Quality Construction & | INSURER C : Manufacturers Alliance/ALMA | |
| Production LLC; Quality | INSURER D : Houston Specialty Insurance Co | 12936 |
| Production Management LLC ; | INSURER E : AGCS Marine Insurance Company | 22837 |
| Traco Production Services Inc | INSURER F : Mitsui Sumitomo Insurance | 20362 |
| P.O. Box 1139 | | |
| Youngeville, LA 70592 . | | |

COVERAGES  CERTIFICATE NUMBER:  REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED.  NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| A | X COMMERCIAL GENERAL LIABILITY | X | X | TRC-407521 | 01/01/2017 | 01/01/2018 | EACH OCCURRENCE | $ 1,000,000 |
| | CLAIMS-MADE X OCCUR | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ 100,000 |
| | 30 DNOC | | | | | | MED EXP (Any one person) | $ 5,000 |
| | | | | | | | PERSONAL & ADV INJURY | $ 1,000,000 |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | GENERAL AGGREGATE | $ 2,000,000 |
| | POLICY X PRO-JECT LOC | | | | | | PRODUCTS - COMP/OP AGG | $ 2,000,000 |
| | OTHER: | | | | | | | $ |
| D | AUTOMOBILE LIABILITY | X | X | HSLR18-01683-05 | 01/01/2017 | 01/01/2018 | COMBINED SINGLE LIMIT (Ea accident) | $ 1,000,000 |
| | X ANY AUTO | | | | | | BODILY INJURY (Per person) | $ |
| | ALL OWNED AUTOS SCHEDULED AUTOS | | | | | | BODILY INJURY (Per accident) | $ |
| | X HIRED AUTOS X NON-OWNED AUTOS | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| B | X UMBRELLA LIAB X OCCUR | X | X | HO17LIA15478901/02 | 01/01/2017 | 01/01/2018 | EACH OCCURRENCE | $ 25,000,000 |
| | EXCESS LIAB CLAIMS-MADE | | | | | | AGGREGATE | $ 25,000,000 |
| | DED X RETENTION $ 25,000 | | | | | | | $ |
| C | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY  Y/N | Y | N/A | X Z01701-0709B16Y | 01/01/2017 | 01/01/2018 | X PER STATUTE OTH-ER | |
| | ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? | | | MARITIME INCLUDED | 01/01/2017 | 01/01/2018 | E.L. EACH ACCIDENT | $ 1,000,000 |
| | (Mandatory in NH) | | | | | | E.L. DISEASE - EA EMPLOYEE | $ 1,000,000 |
| | If yes, describe under DESCRIPTION OF OPERATIONS below | | | | | | E.L. DISEASE - POLICY LIMIT | $ 1,000,000 |
| E | Equipment Floater | | | MXI93083796 | 01/01/2017 | 01/01/2018 | Per Item | 300,000 |
| | Rented/Leased | | | | | | Per Occ | 600,000 |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)
Any request for special coverages which are specifically required by
contract or minimum insurance requirements should be forwarded to this
office for review.  (SEE ATTACHED NOTEPAD)

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| ERVIN01 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. |
| Ervin Cable Construction LLC | |
| PO Box 10 | |
| Sturgis, KY 42459 | AUTHORIZED REPRESENTATIVE |
| | Judi I. Louviere |

© 1988-2014 ACORD CORPORATION. All rights reserved.

ACORD 25 (2014/01)  The ACORD name and logo are registered marks of ACORD

# 2019-72194 / Court: 151



EXHIBIT
C

**ACORD**     CERTIFICATE OF LIABILITY INSURANCE

QUALI-3   OP ID: MICA

DATE (MM/DD/YYYY) 06/12/2017

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: Mica Baudoin |
|---|---|
| Howard Risk Advisors, LLC<br>201 West Vermilion, Ste. 200<br>Lafayette, LA 70501<br>Judi Louviere  | PHONE (A/C, No, Ext): 337-704-0610   FAX (A/C, No): 337-704-0417 |
| | E-MAIL ADDRESS: mbaudoin@howardrisk.com |

| | INSURER(S) AFFORDING COVERAGE | NAIC # |
|---|---|---|
| | INSURER A : Liberty Mutual Insurance Co. | 23043 |
| INSURED   Quality Companies USA, LLC;<br>Quality Construction &<br>Production LLC; Quality<br>Production Management LLC ;<br>Traco Production Services Inc<br>P.O. Box 1139<br>Youngsville, LA 70592 | INSURER B : Navigators Insurance Co | |
| | INSURER C : Manufacturers Alliance/ALMA | |
| | INSURER D : Houston Specialty Insurance Co | 12936 |
| | INSURER E : AGCS Marine Insurance Company | 22837 |
| | INSURER F : Mitsui Sumitomo Insurance | 20362 |

**COVERAGES**    CERTIFICATE NUMBER:    REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| A | X COMMERCIAL GENERAL LIABILITY<br>□ CLAIMS-MADE X OCCUR<br>X 30 DNOC | X | X | TRC-407521 | 01/01/2017 | 01/01/2018 | EACH OCCURRENCE | $ 1,000,000 |
| | | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ 100,000 |
| | | | | | | | MED EXP (Any one person) | $ 5,000 |
| | | | | | | | PERSONAL & ADV INJURY | $ 1,000,000 |
| | GEN'L AGGREGATE LIMIT APPLIES PER:<br>□ POLICY X PROJECT □ LOC<br>OTHER: | | | | | | | GENERAL AGGREGATE | $ 2,000,000 |
| | | | | | | | PRODUCTS - COMP/OP AGG | $ 2,000,000 |
| | | | | | | | | $ |
| D | AUTOMOBILE LIABILITY<br>X ANY AUTO<br>X ALL OWNED AUTOS   □ SCHEDULED AUTOS<br>X HIRED AUTOS X NON-OWNED AUTOS | X | X | HSLR18-01883-05 | 01/01/2017 | 01/01/2018 | COMBINED SINGLE LIMIT (Ea accident) | $ 1,000,000 |
| | | | | | | | BODILY INJURY (Per person) | $ |
| | | | | | | | BODILY INJURY (Per accident) | $ |
| | | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| B | X UMBRELLA LIAB X OCCUR<br>X EXCESS LIAB □ CLAIMS-MADE<br>DED X RETENTION $ 25,000 | X | X | HO17LIA15476901/02 | 01/01/2017 | 01/01/2018 | EACH OCCURRENCE | $ 25,000,000 |
| | | | | | | | AGGREGATE | $ 25,000,000 |
| C | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY Y/N<br>ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? Y<br>(Mandatory in NH)<br>If yes, describe under DESCRIPTION OF OPERATIONS below | N/A | X | 201701-0709818Y<br>MARITIME INCLUDED | 01/01/2017<br>01/01/2017 | 01/01/2018<br>01/01/2018 | X PER STATUTE □ OTH- ER<br>E.L. EACH ACCIDENT | $ 1,000,000 |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $ 1,000,000 |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ 1,000,000 |
| E | Equipment Floater<br>Rented/Leased | | | MXI8306379G | 01/01/2017 | 01/01/2018 | Per Item | 300,000 |
| | | | | | | | Per Occ | 600,000 |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)

Any request for special coverages which are specifically required by contract or minimum insurance requirements should be forwarded to this office for review. (SEE ATTACHED NOTEPAD)

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| ERVIN01<br>Ervin Cable Construction LLC<br>PO Box 10<br>Sturgis, KY 42459 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS.<br><br>AUTHORIZED REPRESENTATIVE<br>Judi I. Louviere |

© 1988-2014 ACORD CORPORATION. All rights reserved.

ACORD 25 (2014/01)     The ACORD name and logo are registered marks of ACORD

2019-72194 / Court: 151

# Taylor Book



EXHIBIT
D

MICHAEL P. MORRIS
Partner
BOARD CERTIFIED - PERSONAL INJURY TRIAL LAW
TEXAS BOARD OF LEGAL SPECIALIZATION
mmorris@taylorbook.com

Houston Office

September 30, 2019

Liberty Mutual Insurance Company                    *Via CM/RRR 7013 1710 0001 3126 1486*
175 Berkeley St.
Boston, Massachusetts 02116-5066

C/O Registered Agent and Attorney for Service       *Via CM/RRR 7013 1710 0001 3126 1493*
Corporation Service Company
211 East 7th Street, Suite 620
Austin, Texas 78701-3218

Colleen Patterson                                   *Via Email: colleen.patterson@libertymutual.com*

Re:     Cause No. 2019-48050; *Martin Villareal vs. MCImetro Access
        Transmission Services Corp., et al,* In the 151st Judicial District Court of
        Harris County, Texas

To Whom It May Concern:

It is my understanding that Liberty Mutual Insurance Company issued a policy of commercial general liability insurance, policy number TRC-407521, to named insured Quality Construction & Production LLC for policy year January 1, 2017 to January 1, 2018. A copy of the Certificate of Insurance (COI) provided by Quality Construction & Production LLC to Ervin Cable Construction LLC is attached. If another Liberty International Underwriters company actually issued the policy referenced in the COI please notify me immediately.

The undersigned represents Defendants MCImetro Access Transmission Corp. (d/b/a Verizon Access Transmission Services) (Verizon) and Ervin Cable Construction LLC (Ervin Cable) in the above captioned lawsuit brought by Martin Villarreal arising out of work being performed by Quality Construction & Production LLC (Quality Construction) on or about the evening of September 21, 2019 when Quality Construction equipment being operated by its employees Daniel Cudzilo and Daniel Valle in the course and scope of their work for Quality Construction struck a gas pipeline. Mr. Villarreal alleges that he was injured on September 22, 2017 while responding to and performing emergency repairs to the gas pipeline struck by Quality Construction employees.

On behalf of Ervin Cable, I recently filed a Motion for Leave to add Quality Construction as a third-party defendant for contribution and indemnity as Quality Construction agreed to contractually indemnify Ervin Cable and Verizon for bodily injury claims arising out of Quality

September 30, 2019
Page 2

Construction's work and to make both Ervin Cable and Verizon additional insureds on its Liberty Mutual Insurance Company policy. A copy is attached.

Plaintiff Villarreal recently amended his petition to add Quality Construction and its employees, Mr. Cudzilo and Mr. Valle, as named Defendants. A copy of the Plaintiff's First Amended Petition is attached.

As Liberty Mutual Insurance Company is no doubt aware, Texas follows the complaint allegation or eight corners rule and the allegations contained in Plaintiff's First Amended Petition and the Motion for Leave to file Third Party Action against Quality Construction make clear that the occurrence made the basis of Mr. Villarreal's bodily injury claim arose out of Quality's work for Ervin Cable.

Demand is hereby made on Liberty Mutual Insurance Company to recognize Verizon and Ervin Cable as additional insureds and to defend and indemnify Verizon and Ervin Cable in the above captioned lawsuit

If you have any questions or comments, please don't hesitate to contact me.

Very truly yours,

Mike Morris

9/10/2019 2:43 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 36681715
By: TERESA KIRBY
Filed: 9/10/2019 2:43 PM

CAUSE NO. 2019-48050

| | | |
|---|---|---|
| MARTIN VILLAREAL | § | IN THE DISTRICT COURT OF |
| *Plaintiff* | § | |
| | § | |
| VS. | § | HARRIS COUNTY, TEXAS |
| | § | |
| MCIMETRO ACCESS TRANSMISSION | § | |
| SERVICES, CORP., FUTURE TELECOM, | § | |
| LLC, ERVIN CABLE CONSTRUCTION | § | |
| LLC DBA ERVIN CABLE | § | |
| CONSTRUCTION OF FLORIDA, LLC, | § | |
| and CENTERPOINT ENERGY | § | |
| HOUSTON ELECTRIC, LLC | § | |
| *Defendants* | § | 151ˢᵗ JUDICIAL DISTRICT |

## MOTION FOR LEAVE TO FILE THIRD-PARTY PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, **Ervin Cable Construction, LLC** (**"Ervin Cable"**), one of the

Defendants in the above entitled and numbered cause, and requests leave of this Court to file a

third-party petition against Quality Construction & Production, LLC ("Quality Construction"),

an entity not now a party to this action, under the provisions of Rule 38 of the Texas Rules of

Civil Procedure, on the following grounds:

I.

## PLEADINGS IN THE UNDERLYING ACTION

By Original Petition filed in the above-captioned lawsuit, the Plaintiff Martin Villareal

has alleged that:

"On or about September 22, 2017, the Defendants MCImetro, Future Telecom and/or
Ervin Cable (hereinafter referred to as "cable defendants") were excavating to install
underground fiber optic cable at or near 7303 Beechnut, Houston, Texas 77074, when
they negligently ruptured a gas and/or electric utility line. Plaintiff, who worked for
Centerpoint Energy Resources Corp., was called out to the scene to repair the gas line.
During Plaintiff's work in repairing the damaged utility line, an explosion occurred
which seriously and permanently injured the Plaintiff."

Plaintiff further alleges that "cable defendants" were negligent and a proximate cause of Plaintiff's alleged injuries and claimed damages. See Plaintiff's Original Petition filed July 16, 2019.

Defendant Ervin Cable denies that it is in any way legally responsible for allegedly contacting a gas and/or electric utility line as alleged by Plaintiff Villareal. Ervin Cable subcontracted with Quality Construction before the accident made the basis of Plaintiff Villareal's claims. Quality Construction employees apparently struck an underground gas line during the course of its excavation work. Centerpoint Energy Resources Corp. was contacted and apparently sent its employee Plaintiff Villareal to investigate and/or repair the damaged underground gas line. Plaintiff Villareal claims that he was injured during the process of that investigation and/or repairing of the gas line previously struck by Quality Construction during its excavation, when Plaintiff Villareal came into contact with an energized electrical line.

## II.

## THIRD-PARTY DEFENDANT'S LIABILITY

Third-Party Defendant Quality Construction agreed to defend, indemnify and hold harmless Defendant/Third-Party Plaintiff Ervin Cable and Defendant MCImetro Access Transportation Services Corp. ("MCImetro") from the claims asserted by Plaintiff Villareal. Despite written demand on Quality Construction to honor its contractual indemnity obligation, Quality Construction has refused to defend and indemnify Defendant/Third-Party Plaintiff Ervin Cable and Defendant MCImetro. Accordingly, Third-Party Defendant Quality Construction has breached its subcontract by not defending and indemnifying Defendant/Third-Party Plaintiff Ervin Cable and Defendant MCImetro.

Additionally, Third-Party Defendant Quality Construction was performing the excavation

at the time an underground gas line was struck. Accordingly, if any defendant was negligent and a proximate cause of Plaintiff's alleged injuries and claimed damages, Third-Party Defendant Quality Construction, and not Third-Party Plaintiff Ervin Cable or Defendant MCImetro is liable to Plaintiff. Accordingly, Third-Party Plaintiff or Defendant MCImetro is entitled to indemnity and/or contribution in accordance with the provisions of Chapter 32 or Chapter 33 of the Texas Civil Practice & Remedies Code.

### III.

### COPY OF THIRD-PARTY PETITION

A true and correct copy of the proposed Third-Party Petition is attached to this motion and incorporated by reference as Exhibit A.

WHEREFORE, PREMISES CONSIDERED, Defendant and now Third-Party Plaintiff, Ervin Cable Construction, LLC, requests that this Court grant Third-Party Plaintiff's permission to file the Third-Party Petition in the form attached to this motion against Third-Party Defendant Quality Construction & Production, LLC, and that the Court grant such other and further relief, both general and special, at law and inequity to which Third-Party Plaintiff and Defendant MCImetro may show themselves justly entitled.

Respectfully submitted,

Taylor, Book, Allen & Morris, L.L.P.

Mike Morris
State Bar No. 14495800
1221 McKinney, Suite 4300
Houston, Texas 77010
(713) 222-9542
(713) 655-7727 - Fax
mmorris@taylorbook.com

3

*Attorney for Defendant and Third-Party*
*Plaintiff Ervin Cable Construction, LLC*

## CERTIFICATE OF CONFERENCE

On August 23, 2019, the undersigned had a conference with Plaintiff's attorney Andrew Seerden regarding the Motion for Leave to File Third-Party Action against Quality Construction & Production, LLC. Mr. Seerden is unopposed on behalf of Plaintiff to this motion being granted.

Defendant Centerpoint Energy Houston Electric, LLC's attorney Erin Lunceford is unopposed to this motion being granted.

Defendants Future Telecom, LLC's attorney Brian Judis is likewise unopposed to this motion being granted.

## CERTIFICATE OF SERVICE

I do hereby certify that a true and correct copy of the above and foregoing document has been forwarded by e-mail to all counsel of record and electronically e-Served by File & Serve Express on this *10*th day of September, 2019.

M. Andrew Seerden
THE SEERDEN LAW FIRM, PLLC
603 W. 11th St., Suite 200
Houston, Texas 77008
(713) 526-6700
(713) 526-6704 – Fax
Andrew.seerden@seerden-law.com
*Attorney for Plaintiff*

Brian J. Judis
THE LAW OFFICE OF BRIAN J. JUDIS
Plaza of the Americas, North Tower
700 N. Pearl Street, Suite 425
Dallas, Texas 75201
Brian.judis@cna.com
dallassco@cna.com
*Attorney for Defendant Future Telecom, LLC*

Erin Lunceford
Stacey L. Severovich
Norton Rose Fulbright US LLP
1301 McKinney, Suite 5100
Houston, Texas 77010-3095
erin.lunceford@nortonrosefulbright.com
stacey.severovich@nortonrosefulbright.com
*Attorneys for Defendant Centerpoint*
*Energy Houston Electric, LLC*

Mike Morris

4

CAUSE NO. 2019-48050

| | | |
|---|---|---|
| MARTIN VILLAREAL | § | IN THE DISTRICT COURT OF |
| *Plaintiff* | § | |
| | § | |
| VS. | § | HARRIS COUNTY, TEXAS |
| | § | |
| MCIMETRO ACCESS TRANSMISSION | § | |
| SERVICES, CORP., FUTURE TELECOM, | § | |
| LLC, ERVIN CABLE CONSTRUCTION | § | |
| LLC DBA ERVIN CABLE | § | |
| CONSTRUCTION OF FLORIDA, LLC, | § | |
| and CENTERPOINT ENERGY | § | |
| HOUSTON ELECTRIC, LLC | § | |
| *Defendants* | § | 151ˢᵗ JUDICIAL DISTRICT |

### THIRD-PARTY PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Ervin Cable Construction, LLC ("Ervin Cable"), Defendant and now Third-Party Plaintiff, complaining of and about Quality Construction & Production, LLC ("Quality Construction"), Third-Party Defendant, and for cause of action would respectfully show unto the Court as follows:

### I.  JURISDICTIONAL/AMOUNT CLAIMED/PARTIES/SERVICE OF CITATION

1.     This Court has jurisdiction over the parties and the third-party claims made by Third-Party Plaintiff Ervin Cable against Third-Party Defendant Quality Construction. Pursuant to Texas Rule of Civil Procedure 47, the monetary relief of over $1,000,000 claimed by Plaintiff Martin Villareal is within the jurisdictional limits of this Court. Accordingly, Third-Party Plaintiff's claims for contribution and/or indemnity are within the jurisdictional limits of this Court.

2.     Third-Party Plaintiff Ervin Cable Construction, LLC is a Delaware Limited Liability Company doing business in the state of Texas and has made an appearance in the above-captioned lawsuit.

EXHIBIT

A

ALL-STATE LEGAL®

3.      Third-Party Defendant Quality Construction & Production, LLC is a Louisiana Limited Liability Company doing business in Texas and can be served with citation by serving its registered agent Cade Evans at its registered office of 5703 Rittiman Plaza, San Antonio, Texas 78218. Issuance of citation is requested at this time.

## II.    DISCOVERY

4.      Pursuant to Texas Rule of Civil Procedure 190.1, Third-Party Plaintiff requests that this case be designated as a Level 3 case in accordance with the discovery control plan tailored to the circumstances of this specific suit.

5.      Pursuant to Texas Rule of Civil Procedure 194, Third-Party Plaintiff requests that Third-Party Defendant disclose within fifty (50) days of service of this request, the information set forth in Rule 194.2.

## III.    JURISIDICTION AND VENUE

7.      This Court has jurisdiction over the subject matter of this lawsuit because the amount in controversy is within the jurisdictional limits of this Court. Additionally, the Court has both general and specific personal jurisdiction over Third-Party Defendant Quality Construction as Quality Construction's business activities were purposefully directed to the state of Texas and the dispute between Plaintiff Martin Villareal, Defendant and Third-Party Plaintiff Ervin Cable, and Third-Party Defendant Quality Construction arise from and are related to those business activities.

8.      Venue is proper in Harris County pursuant to provisions of Section 15.002(a)(1) of the Texas Civil Practice & Remedies Code because all or a substantial part of the events giving rise to Plaintiff's claim occurred in Harris County, Texas. Venue is also proper pursuant to Section

2

15.062(a) in that venue of the main action shall establish venue of a third-party claim properly joined under the Texas Rules of Civil Procedure or any applicable statute.

### IV.    FACTUAL BACKGROUND

9.      MCImetro contracted with Ervin Cable. Ervin Cable then subcontracted with Quality Construction. Quality Construction struck a gas line. Plaintiff Martin Villareal, an employee of Centerpoint Energy Resources Corp., was called out to investigate, inspect, and/or repair the gas line that was inadvertently struck by employees of Quality Construction. Plaintiff Villareal alleges that in the process of investigating, inspecting, and/or repairing the damaged utility line he received an electric shock.

10.     Plaintiff Villareal has sued Defendant/Third-Party Plaintiff Ervin Cable and Defendant MCImetro Access Transportation Services Corp. ("MCImetro") for negligence and negligence per se based on alleged acts and omissions set forth in Plaintiff's petition which Plaintiff Villareal alleges proximately caused the occurrence made the basis of his suit and the resulting injuries and damages he allegedly suffered.

11.     Defendant/Third-Party Plaintiff Ervin Cable and Defendant MCImetro deny that they were negligent, negligent per se, or a cause of the occurrence and resulting injuries and damages claimed by Plaintiff Villareal or otherwise liable in any way to Plaintiff Villareal.

### V.    CLAIM FOR CONTRIBUTION

12.     In the unlikely event that Defendant/Third-Party Plaintiff Ervin Cable and Defendant MCImetro are mistakenly found liable to Plaintiff Villareal for any judgment, Ervin Cable as Third-Party Plaintiff and MCImetro are entitled to contribution pursuant to Chapter 32 and/or Chapter 33 of the Texas Civil Practice & Remedies Code from Third-Party Defendant Quality Construction and its employees, agents, and servants in the course and scope of their

3

employment, whose negligence and negligence per se was a proximate cause and/or sole proximate cause and/or caused or contributed to the occurrence, alleged injury, and claimed damages sought by Plaintiff Villareal.

## VI.    CLAIM FOR CONTRACTUAL INDEMNITY

13.    Third-Party Defendant Quality Construction contractually obligated itself to indemnify and defend Defendant/Third-Party Plaintiff Ervin Cable and Defendant MCImetro against the claims asserted by Plaintiff Villareal. Third-Party Plaintiff has previously made a demand on Third-Party Defendant to acknowledge its obligation to defend and indemnify. Third-Party Defendant Quality Construction has breached its contract by failing to defend and indemnify Third-Party Plaintiff Ervin Cable and Defendant MCImetro. Accordingly, Third-Party Plaintiff Ervin Cable seeks to recover from Third-Party Defendant Quality Construction all defense costs and expenses incurred to defend the claims asserted by Plaintiff Villareal. Additionally, should a judgment be mistakenly entered in favor of Plaintiff Villareal against Defendant/Third-Party Plaintiff Ervin Cable and/or Defendant MCImetro, Third-Party Plaintiff Ervin Cable seeks to recover the full amount of such judgment from Third-Party Defendant Quality Construction.

## VII.    SELF-AUTHENTICATION OF DOCUMENTS

14.    Pursuant to Texas Rule of Civil Procedure 193.7, Third-Party Plaintiff hereby gives notice of its intent to utilize documents produced by Third-Party Defendant Quality Construction against Third-Party Defendant Quality Construction at pre-trial proceedings and at trial as self-authenticated documents.

## VIII.   JURY DEMAND

15.   Pursuant to Texas Rule of Civil Procedure 216(a), Third-Party Plaintiff respectfully requests a trial by jury. A jury fee is being paid by Third-Party Plaintiff simultaneously with this request for jury trial.

## IX.   CONCLUSION AND PRAYER

WHEREFORE, PREMISES CONSIDERED, Third-Party Plaintiff Ervin Cable Construction, LLC respectfully requests that Third-Party Defendant Quality Construction & Production, LLC, be cited to appear and answer, and that upon final jury trial, that Third-Party Plaintiff have judgment against Third-Party Defendant for all relief requested, and for such other and further relief both general and special, at law and in equity, to which Third-Party Plaintiff show itself justly entitled.

Respectfully submitted,

**Taylor, Book, Allen & Morris, L.L.P.**

Mike Morris
State Bar No. 14495800
1221 McKinney, Suite 4300
Houston, Texas 77010
(713) 222-9542
(713) 655-7727 - Fax
mmorris@taylorbook.com
*Attorney for Defendant/Third-Party*
*Plaintiff Ervin Cable Construction, LLC*

## CERTIFICATE OF SERVICE

I do hereby certify that a true and correct copy of the above and foregoing document has been forwarded by e-mail to Plaintiffs' counsel of record and electronically e-Served by File & Serve Express on this _____th day of September, 2019.

M. Andrew Seerden
THE SEERDEN LAW FIRM, PLLC
603 W. 11th St., Suite 200
Houston, Texas 77008
(713) 526-6700
(713) 526-6704 — Fax
Andrew.seerden@seerden-law.com
*Attorney for Plaintiff*


Brian J. Judis
THE LAW OFFICE OF BRIAN J. JUDIS
Plaza of the Americas, North Tower
700 N. Pearl Street, Suite 425
Dallas, Texas 75201
Brian.judis@cna.com
dallassco@cna.com
*Attorney for Defendant Future Telecom, LLC*

Erin Lunceford
Stacey L. Severovich
Norton Rose Fulbright US LLP
1301 McKinney, Suite 5100
Houston, Texas 77010-3095
erin.lunceford@nortonrosefulbright.com
stacey.severovich@nortonrosefulbright.com
*Attorneys for Defendant Centerpoint*
*Energy Houston Electric, LLC*


_____
Mike Morris

6

2088/17403

RECEIVED

SEP 13 2019

CAUSE NO. 2019-48050

| | | |
|---|---|---|
| MARTIN VILLAREAL, | § | IN THE DISTRICT COURT OF |
| *Plaintiff* | § | |
| | § | |
| | § | |
| VS. | § | HARRIS COUNTY, TEXAS |
| | § | |
| MCIMETRO ACCESS TRANSMISSION | § | |
| SERVICES CORP., FUTURE TELECOM, | § | |
| LLC, ERVIN CABLE CONSTRUCTION | § | |
| LLC DBA ERVIN CABLE | § | |
| CONSTRUCTION OF FLORIDA, LLC, | § | |
| CENTERPOINT ENERGY HOUSTON | § | |
| ELECTRIC, LLC, QUALITY | § | |
| CONSTRUCTION & PRODUCTION, | § ' | |
| L.L.C., DANIEL CUDZILO and DANIEL | § | |
| VALLE | § | |
| *Defendants* | § | 151ˢᵗ JUDICIAL DISTRICT |

### PLAINTIFF'S FIRST AMENDED ORIGINAL PETITION AND REQUEST FOR DISCLOSURE

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Plaintiff, MARTIN VILLAREAL, in the above-styled and numbered cause, complaining of Defendants, MCIMETRO ACCESS TRANSMISSION SERVICES CORP., FUTURE TELECOM, LLC, ERVIN CABLE CONSTRUCTION LLC DBA ERVIN CABLE CONSTRUCTION OF FLORIDA, LLC, CENTERPOINT ENERGY HOUSTON ELECTRIC, LLC, QUALITY CONSTRUCTION & PRODUCTION, L.L.C., DANIEL CUDZILO and DANIEL VALLE, and for cause of action would respectfully show unto this Honorable Court the following:

I.

### DISCOVERY CONTROL PLAN

1.1    Discovery is intended to be conducted under Level 2 of Texas Rules of Civil Procedure 190.

II.
PARTIES

2.1    Plaintiff, MARTIN VILLAREAL, is an individual residing in Harris County, Texas.

2.2    Defendant, MCIMETRO ACCESS TRANSMISSION SERVICES CORP., is a foreign company registered to do business and doing business in the state of Texas, who may be served with process through its registered agent, C T Corporation System, 1999 Bryan St., Suite 900, Dallas, Texas 75201. Defendant has been served with process and has appeared and filed an Answer herein.

2.3    Defendant, FUTURE TELECOM, LLC, is a domestic company with its principal place of business in the state of Texas, who may be served with process by serving its registered agent, Donald R. Riggs, at 1800 Bruton Road, Balch Springs, Texas 75180, or wherever he may be found. Defendant has been served with process and has appeared and filed an Answer herein.

2.4    Defendant, ERVIN CABLE CONSTRUCTION LLC DBA ERVIN CABLE CONSTRUCTION OF FLORIDA, LLC, is a foreign company registered to do business and doing business in the state of Texas, who may be served with process by serving its registered agent, C T Corporation System ,1999 Bryan St., Suite 900, Dallas, Texas 75201. Defendant has been served with process and has appeared and filed an Answer herein.

2.5    Defendant, CENTERPOINT ENERGY HOUSTON ELECTRIC, LLC, is a domestic company with its principal place of business in the state of Texas, who may be served with process by serving its registered agent, C T Corporation System ,1999 Bryan St., Suite 900, Dallas, Texas 75201. Defendant has been served with process and has appeared and filed an Answer herein.

2.6    Defendant, QUALITY CONSTRUCTION & PRODUCTION, L.L.C., is a foreign limited liability company that was qualified to do business and was doing business in Texas when the events giving rise to this lawsuit occurred. Defendant may be served with process by and through its registered agent, Cade Evans, 5703 Rittiman Plaza, San Antonio, Texas 78218. A tax forfeiture occurred against Defendant on January 25, 2019. Therefore, in addition to and/or in the alternative to the above, Defendant may be served with process by and through Secretary of State via certified mail, return receipt requested, to Service of Process, Secretary of State, P.O. Box 12079, Austin, Texas 78711-2079. For purposes of service of process by and through Secretary of State, the most recent address of the entity on file with the secretary of state is Quality Construction & Production, L.L.C., 425 Griffin Road, Youngsville, Louisiana, 70592. Further, in addition to and/or in the alternative to the above, Defendant may be served with process by and through its governing member Energy Service Note Acquisition, L.L.C. by serving that entity's member, Fortunato Martinez, Energy Service Note Acquisitions, L.L.C., 4232 Bluebonnet Blvd., Baton Rouge, Louisiana, 70809. Issuance of citations are requested at this time.

2.7    Defendant, DANIEL CUDZILO, is a Texas resident who may be served at his residence located at 141 Ashwood N., Kyle, Texas 78640. Issuance of citation is requested at this time.

2.8    Defendant, DANIEL VALLE, is a Texas resident who may be served at his residence located at 14222 Kimberly Ln., Apt. 412, Houston, Texas 77079. Issuance of citation is requested at this time.

2.9    Plaintiff specifically invokes the right to institute this suit against whichever Defendants' entities were conducting business using the assumed or common names of Defendants with regard to the events described in this Petition. Plaintiff expressly invokes his right under Rule

28 of the Texas Rules of Civil Procedure to have the true names of the parties substituted at a later time upon the motion of any party or of the Court.

## III.
## VENUE AND JURISDICTION

3.1     Venue is proper in Harris County, Texas, pursuant to Tex.Civ.Prac. & Rem. Code 15.002, as all or a substantial part of the events giving rise to this claim occurred in Harris County.

3.2     The Court has jurisdiction over the controversy because the suit arises under the laws of the State of Texas, and because Plaintiffs suffered damages within the jurisdictional limits of the Court.

## IV.
## FACTS

4.1     On or about September 22, 2017, Defendants MCI METRO, FUTURE TELECOM, ERVIN CABLE and/or QUALITY CONSTRUCTION & PRODUCTION, L.L.C. (hereinafter referred to as "cable defendants") were excavating to install underground fiber optic cable at or near 7303 Beechnut, Houston, Texas 77074, when they negligently ruptured a gas and/or electric utility line.  Plaintiff, who worked for CenterPoint Energy Resources Corp., was called out to the scene to repair the gas line.  During Plaintiff's work in repairing the damaged utility line, an explosion occurred which seriously and permanently injured Plaintiff.

## V.
## NEGLIGENCE OF CABLE DEFENDANTS

5.1     The injuries and damages suffered by Plaintiff were directly and proximately caused by the negligence of Defendants MCI METRO, FUTURE TELECOM, ERVIN CABLE and/or QUALITY CONSTRUCTION & PRODUCTION, L.L.C.  At the time and place in question, Defendants were guilty of many acts of negligence, each of which jointly and severally proximately

caused the serious, painful and permanent injuries and damages suffered by Plaintiff, including but not limited to the following acts and/or omissions:

a.    In failing to adequately and safely inspect the area for hazards, including the existence of utility lines;

b.    In failing to follow proper procedures in identifying and locating existing utility lines prior to excavation and installing conduit and fiber optic cable lines;

c.    In failing to adequately monitor the work site;

d.    In failing to have adequate supervision;

e.    In failing to comply with applicable safety standards;

f.    In failing to adequately train its employees;

g.    In failing to provide a safe environment for workers;

h.    In failing to provide and enforce safety rules and regulations; and

i.    Any and all other relevant acts which may be shown during the trial of this cause of action.

5.2    Each of these acts and omissions, singularly or in combination with others, constituted negligence and/or negligence per se on the part of DEFENDANTS. Such acts and omissions proximately caused the occurrence made the basis of this suit and the resulting injuries and damages suffered by Plaintiff.

5.3    Additionally and/or in the alternative, under any applicable doctrines or theories of respondeat superior and/or agency, Defendants are vicariously liable for the aforementioned acts and/or omissions of Defendants' agents, employees and representatives who were acting in the course and scope of their employment with Defendants at the time of the incident made the basis of this lawsuit.

VI.
NEGLIGENCE OF CENTERPOINT ENERGY HOUSTON ELECTRIC, LLC

6.1     The injuries and damages suffered by Plaintiff were directly and proximately caused by the negligence of Defendant CENTERPOINT ENERGY HOUSTON ELECTRIC, LLC. At the time and place in question, Defendant was guilty of many acts of negligence, each of which jointly and severally proximately caused the serious, painful and permanent injuries and damages suffered by Plaintiff, including but not limited to the following acts and/or omissions:

    a.     In failing to adequately and safely inspect the area for hazards, including the existence of utility lines;

    b.     In failing to follow proper procedures in identifying and locating existing utility lines;

    c.     In failing to properly and adequately respond to a request to locate and identify utility lines in the subject area;

    d.     In failing to comply with applicable safety standards;

    e.     In failing to adequately train its employees;

    f.     Any and all other relevant acts which may be shown during the trial of this cause of action.

6.4     Each of these acts and omissions, singularly or in combination with others, constituted negligence and/or negligence per se on the part of Defendants. Such acts and omissions proximately caused the occurrence made the basis of this suit and the resulting injuries and damages suffered by Plaintiff.

6.5     Additionally and/or in the alternative, under any applicable doctrines or theories of respondeat superior and/or agency, Defendant is vicariously liable for the aforementioned acts and/or omissions of Defendant's agents, employees and representatives who were acting in the course and scope of their employment with Defendant at the time of the incident made the basis of this lawsuit.

VII.
## NEGLIGENCE OF DANIEL CUDZILO AND DANIEL VALLE

7.1    At the time and on the occasion in question, CUDZILO and VALLE were employed by Quality Construction & Production, L.L.C. and one of his duties was to make sure the work site was safe and secure, including inspecting, locating, identifying and marking gas and electrical lines in the excavation area. However, CUDZILO and VALLE failed to take reasonable steps to inspect, locate, identify and mark the utility lines. CUDZILO and VALLE'S independent acts of negligence thus caused the utility line rupture which caused severe injuries to Plaintiff.

7.2    Defendants CUDZILO and VALLE owed independent duties of care to Plaintiff and breached those duties. They undertook to provide specific services– making sure that the excavation area was safe, secure and free from any utility lines or other hazards prior to excavation. Defendants CUDZILO and VALLE breached their independent duties of care to Plaintiff by performing the services in a negligent manner in failing to adequately inspect, locate, identify and mark the subject utility lines which caused the subject explosion. They are thus independently liable for their tortious acts which they directed and participated in.

7.3    Defendants were independently negligent by each of the following acts and/or omissions, among others to be proven at trial. Taken singularly or combined, these acts and/or omissions constitute negligence by Defendants and were a proximate cause of the incident in question and resulting damages to Plaintiff. These independent acts include, but are not limited to, the following:

1.  Causing the subject utility line to rupture;

2.  Failing to use ordinary care in inspecting, locating, identifying and marking the subject area for utility lines or other dangerous conditions;

3.  Failure to have and utilize adequate assistance in inspecting, locating, identifying and marking the subject area for utility lines or other dangerous conditions;

4.  Failure to use reasonable care towards Plaintiff; and

5.  Other acts of negligence to be sown at trial.

7.4     Each of these acts and omissions, singularly or in combination with others, constituted negligence and negligence per se which proximately caused the occurrence made the basis of this action and Plaintiff's injuries and damages.

VIII.
DAMAGES

8.1     As a result of the negligent conduct of Defendants, Plaintiff suffered severe bodily injuries.  As a further result of the nature and the consequence of his injuries, Plaintiff has suffered great physical and mental pain, suffering and anguish, and in all reasonable probability he will continue to suffer in this manner for a long time into the future, if not for the balance of his natural life.  As a result of Defendants' actions, omissions and failure to exercise reasonable care, Plaintiff seeks damages including the following:

a.     pain and suffering, past and future;

b.     mental anguish, past and future;

c.     disfigurement, past and future;

d.     physical impairment, past and future;

e.     lost earning capacity, past and future;

f.     medical treatment, past and future;

g.     costs of court; and

h.     prejudgment and post judgment interest at the maximum rate allowed by law.

8.2    Pursuant to T.R.C.P. 47, at this time Plaintiff seeks monetary relief over $1,000,000. Plaintiff reserves the right to amend as to the amount of damages Plaintiff seeks to recover.

## IX.
## JURY DEMAND

9.1    Plaintiff demands a trial by jury.

## X.
## INTEREST

10.1    Plaintiff seeks to recover pre-judgment and post-judgment interest as allowed by law.

## XI.
## REQUEST FOR DISCLOSURE

11.1    Pursuant to Rule 194 of the Texas Rules of Civil Procedure, Defendants are requested to disclose the information and material described in Rule 194.2 within fifty (50) days of the service of this request.

## XII.
## PRAYER

12.1    WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully requests that Defendants be cited to appear and answer herein, and that upon final trial thereof, Plaintiff have judgment against Defendants for those damages described above and in the full amount allowed by law, for compensatory damages, reasonable attorney's fees incurred and to be incurred, costs of court, taxable costs incurred and to be incurred, pre- and post-judgment interest at the maximum legal rate; and for such other and further relief, both at law and in equity, to which Plaintiff may be justly entitled.

Respectfully submitted,

THE SEERDEN LAW FIRM, PLLC


*/s/ M. Andrew Seerden*

M. Andrew Seerden
State Bar No. 24008007
603 W. 11th St., Suite 200
Houston, Texas 77008
713.526.6700
713.526.6704 Facsimile
Andrew.seerden@seerden-law.com

ATTORNEY FOR PLAINTIFF


## CERTIFICATE OF SERVICE

Pursuant to Rule T.R.C.P 21, I certify that a true and correct copy of the above and foregoing instrument has been sent to all counsel of record by mail, telecopy, hand delivery and/or certified mail, return receipt requested, on this the 13th day of September, 2019.

*Via E-Service: dallassco@cna.com*
THE LAW OFFICE OF BRIAN J. JUDIS
Brian J. Judis
Plaza of the Americas, North Tower
700 N. Pearl Street, Suite 425
Dallas, TX 75201
*Attorney for Defendant Future Telecom, LLC*

*Via E-Service: mmorris@taylorbook.com*
Taylor, Brook, Allen& Morris, L.L.P.
Mike Morris
1221 McKinney, Suite 4300
Houston, TX 77010
*Attorney for Defendants Ervin Cable Construction, LLC and MCImetro Access Transmission Services Corp.*

*Via E-Service: erin.lunceford@nortonrosefulbright.com and Stacey.severovich@nortonrosefulbright.com*
NORTON ROSE FULBRIGHT US LLP
Erin Lunceford
Stacey L. Severovich
1301 McKinney, Suite 5100
Houston, TX 77010-3095
*Attorneys for Defendant Centerpoint Energy Houston Electric, LLC*


*/s/ M. Andrew Seerden*

M. Andrew Seerden

*ACORD®*

# CERTIFICATE OF LIABILITY INSURANCE

QUALI-3   OP ID: MICA

DATE (MM/DD/YYYY): 06/12/2017

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | | CONTACT NAME: Mica Baudoin |
|---|---|---|
| Howard Risk Advisors, LLC 201 West Vermilion, Ste. 200 Lafayette, LA 70501 Judi Louviere | *Mica* | PHONE (A/C, No, Ext): 337-704-0010  FAX (A/C, No): 337-704-0417 E-MAIL ADDRESS: mbaudoin@howardrisk.com |
| | | INSURER(S) AFFORDING COVERAGE | NAIC # |
| | | INSURER A: Liberty Mutual Insurance Co. | 23043 |
| INSURED: Quality Companies USA, LLC; Quality Construction & Production LLC; Quality Production Management LLC ; Taco Production Services Inc P.O. Box 1139 Youngsville, LA 70592 . | | INSURER B: Navigators Insurance Co | |
| | | INSURER C: Manufacturers Alliance/AI.MA | |
| | | INSURER D: Houston Specialty Insurance Co | 12936 |
| | | INSURER E: AGCS Marine Insurance Company | 22837 |
| | | INSURER F: Mitsui Sumitomo Insurance | 20362 |

## COVERAGES          CERTIFICATE NUMBER:          REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| A | X COMMERCIAL GENERAL LIABILITY  ☐ CLAIMS-MADE X OCCUR  30 DNOC | X | X | TRG-407821 | 01/01/2017 | 01/01/2018 | EACH OCCURRENCE | $ 1,000,000 |
| | | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ 100,000 |
| | | | | | | | MED EXP (Any one person) | $ 5,000 |
| | | | | | | | PERSONAL & ADV INJURY | $ 1,000,000 |
| | GEN'L AGGREGATE LIMIT APPLIES PER:  X POLICY ☐ PRO-JECT ☐ LOC  OTHER: | | | | | | GENERAL AGGREGATE | $ 2,000,000 |
| | | | | | | | PRODUCTS - COMP/OP AGG | $ 2,000,000 |
| | | | | | | | | $ |
| D | AUTOMOBILE LIABILITY  X ANY AUTO  ☐ ALL OWNED AUTOS ☐ SCHEDULED AUTOS  X HIRED AUTOS X NON-OWNED AUTOS | X | X | HSLR18-01983-05 | 01/01/2017 | 01/01/2018 | COMBINED SINGLE LIMIT (Ea accident) | $ 1,000,000 |
| | | | | | | | BODILY INJURY (Per person) | $ |
| | | | | | | | BODILY INJURY (Per accident) | $ |
| | | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| B | X UMBRELLA LIAB X OCCUR  X EXCESS LIAB ☐ CLAIMS-MADE  DED X RETENTION $ 25,000 | X | X | HO17LIA15470901/02 | 01/01/2017 | 01/01/2018 | EACH OCCURRENCE | $ 25,000,000 |
| | | | | | | | AGGREGATE | $ 25,000,000 |
| | | | | | | | | $ |
| C | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY  ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? (Mandatory in NH) Y/N [N/A]  If yes, describe under DESCRIPTION OF OPERATIONS below | | | Z01701-0709818Y  MARITIME INCLUDED | 01/01/2017  01/01/2017 | 01/01/2018  01/01/2018 | X PER STATUTE ☐ OTH-ER | |
| | | | | | | | E.L. EACH ACCIDENT | $ 1,000,000 |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $ 1,000,000 |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ 1,000,000 |
| E | Equipment Floater  Rental/Leased | | | MXI03083786 | 01/01/2017 | 01/01/2018 | Per Item | 300,000 |
| | | | | | | | Per Occ | 600,000 |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)

Any request for special coverages which are specifically required by contract or minimum insurance requirements should be forwarded to this office for review. (SEE ATTACHED NOTEPAD)

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| ERVIN01  Ervin Cable Construction LLC PO Box 10 Sturgis, KY 42459 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS.  AUTHORIZED REPRESENTATIVE  *Judi J. Louviere* |

© 1988-2014 ACORD CORPORATION. All rights reserved.

ACORD 25 (2014/01)          The ACORD name and logo are registered marks of ACORD

11/13/2019 4:44 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 38474764
By: SHANNON NORTH-GONZALEZ
Filed: 11/13/2019 4:44 PM

## CAUSE NO. 2019-72194

| | | |
|---|---|---|
| **ERVIN CABLE CONSTRUCTION, LLC** | § | **IN THE DISTRICT COURT** |
| | § | |
| **V** | § | **151ST JUDICIAL DISTRICT** |
| | § | |
| **LIBERTY MUTUAL INSURANCE** | § | |
| **COMPANY** | § | **HARRIS COUNTY, TEXAS** |

### LIBERTY MUTUAL INSURANCE COMPANY'S ORIGNAL ANSWER

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW LIBERTY MUTUAL INSURANCE COMPANY, Defendant in the above entitled and numbered cause of action, and files its Original Answer, and in so filing, would respectfully show unto the Court as follows:

## I.
## ANSWER

1.      Pursuant to Rule 92 of the Texas Rules of Civil Procedure, Defendant denies generally each and every, all and singular, the allegations contained in the Plaintiff's Original Petition and demands strict proof thereof by a preponderance of the evidence in accordance with the laws of the State of Texas.

Further answering, Defendant asserts the following affirmative defenses:

2.      Plaintiff's Original Petition fails to state a claim against Defendant upon which relief can be granted.

3.      Plaintiff's Original Petition fails to state a cause or right of action against Defendant.

4.      Pleading further and in the alternative, Defendant aver that Plaintiff has failed to fully and properly mitigate his damages.

5.      Plaintiff's claim for coverage as an additional insured is barred by § 151.104 of

3548133-1

the Texas Insurance Code.

     6.     Defendant hereby reserve all rights to plead further herein.

**II.**
**REQUEST FOR DISCLOSURE**

     19.     Pursuant to Texas Rules of Civil Procedure 194, Defendant request that Plaintiff disclose, within 30 days of the service of this request, the information or material described in Rule 194(a)-(l).

**III.**
**RULE 193.7 NOTICE**

     20.     Pursuant to Rule 193.7 of the Texas Rules of Civil Procedure, Defendant hereby gives notice that all documents produced by any party to this case may be used at any pretrial proceeding or at the trial of this matter.

     WHEREFORE, PREMISES CONSIDERED Defendant respectfully request that this Honorable Court enter a judgment in this case as follows:

     1.     Dismissing the Plaintiff's claims against Defendant, with prejudice;

     2.     Awarding Defendant their costs incurred in connection with this case including attorney's fees; and

     3.     Granting Defendant such other and further relief, at law or in equity, general or special, to which they may show themselves justly entitled.

     Respectfully submitted,

     **CHAFFE MCCALL, L.L.P.**

     */s/ Harold K. Watson*
     HAROLD K. WATSON
     Texas State Bar No. 20938500
     Lisa M. Kaufmann
     Texas State Bar No. 24072841
     801 Travis Street, Suite 1910

2

Houston, Texas 77002
Telephone:  713.546.9800
Facsimile:   713.546.9806
Email: watson@chaffe.com
        kaufmann@chaffe.com

**ATTORNEYS FOR DEFENDANT,
LIBERTY MUTUAL INSURANCE COMPANY**

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that a true and correct copy of the foregoing document has been sent to the following counsel of record by electronic filing, hand delivery, facsimile transmission, and/or regular or certified mail, return receipt requested and/or any other method available under the Texas Rules of Civil Procedure on this 13th day of November, 2019.

Mike Morris
Taylor Book Allen & Morris LLP
1221 McKinney, Suite 4300
Houston, Texas 77010
**Attorneys for Plaintiff, Ervin Cable Construction LLC**


        */s/ Harold K. Watson*
        HAROLD K. WATSON

3

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **ERVIN CABLE CONSTRUCTION, LLC** | § | |
| | § | **ADMIRALTY RULE 9(H)** |
| **V** | § | |
| | § | **CIVIL ACTION NO. _____** |
| **LIBERTY MUTUAL INSURANCE** | § | |
| **COMPANY** | § | |

<u>**LIST OF COUNSEL OF RECORD**</u>

| | |
|---|---|
| **Counsel for Plaintiff:** | Mike Morris |
| | mmorris@taylorbook.com |
| | TAYLOR BOOK ALLEN & MORRIS, LLP |
| | 1221 McKinney, Suite 4300 |
| | Houston, Texas 77010 |
| | Telephone:  (713) 222-9542 |
| | Facsimile:  (713) 655-7727 |
| | |
| **Counsel for Defendant** | Harold K. Watson |
| **Liberty Mutual Insurance** | watson@chaffe.com |
| **Company** | Lisa M. Kaufmann |
| | kaufmann@chaffe.com |
| | CHAFFE MCCALL, L.L.P. |
| | 801 Travis Street, Suite 1910 |
| | Houston, Texas 77002 |
| | Telephone:  (713) 546-9800 |
| | Facsimile:  (713) 546-9806 |

3550900-1